STATE OF WISCONSIN          CIRCUIT COURT          POLK COUNTY

STATE OF WISCONSIN,

      Plaintiff,                          Case No. 2015 CF 159

v.

DARRYL L. CHRISTENSEN
935 Sunflower Way
Amery, WI 54001                          **FILED**
DOB: 5/26/1966,
                                         APR 13 2015

      Defendant.                      Clerk of Circuit Court
                                         Jobie Bainbridge-Polk County

## CRIMINAL COMPLAINT

Complainant, Joseph Welsch, Special Agent for the Wisconsin Department of Justice, Division of Criminal Investigation Unit, being duly sworn on oath, and based upon information and belief, states as follows:

### COUNT 1:   SECOND DEGREE SEXUAL ASSAULT: SEXUAL CONTACT OR INTERCOURSE BY A CORRECTIONAL STAFF MEMBER

The above-named defendant, on or about between August 2012 and October 30, 2014, in Polk County, Wisconsin, did have sexual intercourse, that is, inserting his fingers into the vagina of JKJ, an individual who was confined in a correctional institution, the Polk County Jail, where the defendant was a staff member, contrary to § 940.225(2)(h) of the Wisconsin Statutes, a Class C felony, and upon conviction may be fined not more than One Hundred Thousand Dollars ($100,000), or imprisoned for not more than 25 years, or both.

**COUNT 2:   SECOND DEGREE SEXUAL ASSAULT: SEXUAL CONTACT OR INTERCOURSE BY A CORRECTIONAL STAFF MEMBER**

The above-named defendant, on or about between September 8, 2104 and September 22, 2014,  in Polk County, Wisconsin, did have sexual contact, that is, intentionally touching the

breasts of SER, an individual who was confined in a correctional institution, the Polk County Jail, where the defendant was a staff member, contrary to § 940.225(2)(h) of the Wisconsin Statutes, a Class C felony, and upon conviction may be fined not more than One Hundred Thousand Dollars ($100,000), or imprisoned for not more than 25 years, or both.

**COUNT 3:   SECOND DEGREE SEXUAL ASSAULT: SEXUAL CONTACT OR INTERCOURSE BY A CORRECTIONAL STAFF MEMBER**

The above-named defendant, on or about between August 28 and November 12, 2014, in Polk County, Wisconsin, did have sexual intercourse, that is, inserting his fingers into the vagina of SAL-M, an individual who was confined in a correctional institution, the Polk County Jail,  where the defendant was a staff member, contrary to § 940.225(2)(h) of the Wisconsin Statutes, a Class C felony, and upon conviction may be fined not more than One Hundred Thousand Dollars ($100,000), or imprisoned for not more than 25 years, or both.

## COUNT 4:   SECOND DEGREE SEXUAL ASSAULT: SEXUAL CONTACT OR INTERCOURSE BY A CORRECTIONAL STAFF MEMBER

The above-named defendant, on or about between August 27 and October 8, 2014, in Polk County, Wisconsin, did have sexual intercourse, that is, inserting his fingers into the vagina of SLC, an individual who was confined in a correctional institution, the Polk County Jail, where the defendant was a staff member, contrary to § 940.225(2)(h) of the Wisconsin Statutes, a Class C felony, and upon conviction may be fined not more than One Hundred Thousand Dollars ($100,000), or imprisoned for not more than 25 years, or both.

## COUNT 5:   SECOND DEGREE SEXUAL ASSAULT: SEXUAL CONTACT OR INTERCOURSE BY A CORRECTIONAL STAFF MEMBER

The above-named defendant, on or about between November 3, 2011 and January 22, 2014, in Polk County, Wisconsin, did have sexual intercourse, that is, inserting his fingers and penis into the vagina of MJJ, an individual who was confined in a correctional institution, the Polk County Jail, where the defendant was a staff member, contrary to § 940.225(2)(h) of the Wisconsin Statutes, a Class C felony, and upon conviction may be fined not more than One Hundred Thousand Dollars ($100,000), or imprisoned for not more than 25 years, or both.

### FACTS:

On November 12, 2014, your complainant, an agent of the Wisconsin Department of Justice, Division of Criminal Investigation, was assigned by Special Agent in Charge Robert Powell to follow up on an investigation begun by the Polk County Sheriff's Office regarding reports to them of sexual contact by one of their jailers with female inmates.

Your complainant reviewed a report prepared by Chief Deputy Steven Moe. Chief Deputy Moe identified the defendant herein, Darryl Lynn Christensen as a Polk County Jailer. Your complainant has reviewed records made and kept in the regular course of the business of the Polk County Sheriff's Office which reflect that the defendant has been a jailer in the Polk County Jail since July 30, 1995. Records further reflect that at all times indicated below regarding events in the Polk County Jail, the defendant was assigned to be working in the jail. Your complainant knows that the Polk County Jail is in Balsam Lake, Polk County, Wisconsin.

### COUNT 1:   JKJ

On November 19, 2014, your complainant spoke to JKJ in the Polk County Jail whose person matched the photo of her maintained with her records in the regular course of the business of the jail. Your complainant told JKJ he was there to speak with her about a jailer: she said she knew that the interview would be about jailer Christensen; she began to cry, saying she did not want to talk about it and that she was afraid she would get into trouble. Your complainant assured her that if she told the truth she would not get into any trouble.

JKJ told your complainant that there were several times when she was in the Polk County Jail that she was sexually assaulted by the defendant. During her incarceration between July 1, 2012 and August 31, 2012, the defendant started by directing sexual comments towards her. Eventually the comments began to bother her. In August 2012, the first sexual intercourse between them occurred. The defendant called her over the

- 4 -

intercom and directed her to step out of her cellblock in the maximum security area of the jail. There are no monitoring cameras in the maximum security area of the jail.

The defendant directed JKJ to an area near the medical isolation cell and what is designated in the jail as the "X" room, or conference room, directly off from the "bubble" or control booth where the defendant was assigned to be working. As she stood there the defendant began to "make out" with her, eventually touching her beneath her underwear and putting his finger into her vagina. There was a dolly type cart in a corner there with a telephone on it. J█████ leaned over the cart with the defendant behind her. He inserted his penis into her vagina.   After she was returned to her cellblock, the defendant again called her out of her cellblock, and said to her, "You're not going to say anything, right?" JKJ told him she would not say anything.

JKJ explained to your complainant that the defendant was able to do this even though other jail employees were working and there were other inmates in the cellblock because when the defendant works in the bubble he is able to close all of the doors, so the only way for someone to enter the cellblock is if the defendant opens the door for them. The other inmates are not able to see out of their cellblock into the main area because the glass is a mirrored one-way glass.  When the defendant took JKJ into the X room he would prop the door so that they would not get locked into the room.

On another occasion after their first intercourse as described above, still in August 2012, the defendant again called JKJ out of her cell and told her to go to the X room. She went into the X room and waited for the defendant.  The defendant waited for the other jail employees to leave the cell block, closed all the doors and came into the X room.

The defendant started making out with JKJ, put his hand under her jail uniform and underwear and put his fingers into JKJ's vagina and then licked his fingers. JKJ told your complainant she thought that was very disgusting that the defendant licked his fingers after he had put them into her vagina. The defendant pulled down his pants and JKJ performed fellatio on him. This happened for a short time and then the defendant was called on the jail radio.

When JKJ was again incarcerated between March and June 2013, the defendant again began making sexual remarks towards her. They made out in the X room when she was in maximum security and he exposed his penis to her when she was housed in minimum security when other inmates were sleeping. On one occasion during this time when she in the booking area retrieving personal property, she found the defendant, unbeknownst to her, was working in the booking area. The defendant took her behind a shower curtain in the booking area and kissed her and fondled her breasts under her shirt and bra.

JKJ was again incarcerated between February 18 and June 4, 2014 and again the defendant made sexual comments to her, over the cell block phone. The defendant made out with JKJ near the medical isolation cells at least 5 to 10 times. One time she touched his penis over his uniform. On two other occasions she performed fellatio on him. On two of these occasions of making out, the defendant put his fingers into her vagina.

From his post in the bubble, the defendant was able to alert JKJ to look at him under the light in the bubble, where she could see that he was masturbating, and he directed her to do this on at least two occasions.

Once JKJ was reclassified to the minimum security wing, the defendant was no longer able to have sexual contact with her because of the security cameras there.

When JKJ was reincarcerated beginning in October of 2014, near the end of that month, in the maximum security area, the defendant from the bubble asked her to step out of her cell while another jailer named Mike was getting sheets for other inmates. The defendant made out with JKJ, put his hand under her shirt and bra, touching her breasts, and put his fingers into her vagina.

JKJ told your complainant that as the sexual encounters continued, she felt obligated, then controlled by the defendant; she further described that she felt "powerless."

## COUNT 2:   SER

On November 20, 2014, your complainant spoke to SER whose person matched the photo of her maintained with her records in the regular course of the business of the Polk County Jail. Your complainant spoke with SER in the Sauk County Jail.

One occasion SER was incarcerated in the Polk County Jail was between August 22, 2014 and September 22, 2014. Once she was assigned to the maximum security area, the defendant began making sexual comments to her, including asking her to put on a "show" for him which she interpreted as meaning she should show him her breasts, which she did on a couple of occasions.

On September 7, 2014, the defendant told SER that he would be taking her to court the next day. On September 8, 2014, the defendant called SER out of her cell, shackled her, handcuffed her and walked her to court. On the way to court, the defendant grabbed SER's buttocks over her jail uniform. When she was done with court, the defendant escorted her out of the courtroom. She was carrying paperwork from the case. SER was talking to the defendant

about her case and immediately upon exiting the courtroom, the defendant told SER to step into a corner located directly outside of the doors to the courtroom. This area is also located near the holding cells outside the courtroom. The location he directed her to down the short hallway was out of view of the security camera outside the courtroom. Once she was in the corner, the defendant put his hand down her jail uniform pants and underneath her underwear and put his fingers inside her vagina. He then escorted her to the open holding cell.

Your complainant confirmed through records made and kept in the regular course of the business of the Polk County Circuit Court that SER had a court appearance on September 8, 2014. Your complainant viewed the security camera video from September 8, 2014 from the security camera directly above the courtroom entrance and at time 1 minute and 14 second on the video your complainant observed SER and the defendant enter the courtroom. At time 16 minutes and 45 seconds on the recording SER exits the courtroom handcuffed, with paperwork in her hand, and escorted by the defendant. They walk to the corner adjacent to the holding cell, out of view of the camera. At 19 minutes and 20 seconds into the recording, the defendant and SER leave from the corner area and return to the view of the camera.

After the defendant escorted SER back to her jail cell pod, she told your complainant, the defendant removed her shackles and while doing so pressed his body against, hers, reached around the front of her and felt her breasts underneath her jail uniform and bra. SER said the defendant did this directly outside of the maximum security female pod. The defendant told SER not to tell the other girls in the cell about what had happened or he would end up in jail like her.

On another date sometime between September 8, 2014 and September 22, 2014, the defendant called her on the intercom phone between the bubble and her jail cell and told her that he would signal her and the other girls in the pod to get naked and put a show on for him. When

the defendant signaled them, she and SAL-M, another female inmate, went into SAL-M's jail cell and took off their jail uniforms and were completely naked. SER and SAL-M then came out of the cell, kissed and rubbed their breasts against each other. They then went back into SAL-M's cell and put their jail uniforms back on.

### COUNT 3:   SAL-M

On December 1, 2014 your complainant spoke to SAL-M, whose person matched the photo of her maintained with her records in the regular course of the business of the Polk County Jail. Those records show that SAL-M began this incarceration in the Polk County Jail on August 28, 2014 and was released on November 12, 2014. SAL-M told your complainant that when she arrived, she was housed with SER and SLC in the maximum security area. She said the defendant was a jailer there who would often flirt with her.

One day, the defendant contacted her on the phone in the cell block and told her to come to the bubble door. SAL-M left the pod and met the defendant at the bubble door. The defendant opened the bubble door for her and directed her inside the bubble door. He reached underneath her jail uniform and started touching her breasts with his hands. He then reached down into her uniform pants and put his finger into her vagina underneath her underwear. The defendant asked SAL-M if she liked it and then told her to grab him on his groin area. SAL-M grabbed the defendant in the groin area on the outside of his uniform pants. The defendant told SAL-M that she could not tell anyone that this had happened because he would get into trouble. As SAL-M started to leave the bubble, the defendant asked her where she was going. She said she was going to return to the pod. The defendant told her to stand and wait for him outside the bubble. She did. The defendant went back into the bubble and closed the door. She continued to wait. The defendant then opened the bubble door, kept the bubble door open and started

touching her again.   He touched SAL-M under her uniform shirt, touching her breasts and touching her under her uniform pants and underwear inserting his finger into her vagina. She was not wearing a bra.   When he heard someone coming, the defendant told SAL-M she'd better return to her pod.

The next day SAL-M could see the defendant touching himself over his uniform groin area in the bubble underneath the lamp; he directed her to lift up her shirt, so she pulled up her shirt to "flash" him her breasts.   SAL-M said she didn't want to be locked down or get into trouble, so she did what the defendant told her to do.

On another day, the defendant spoke to SER on the cell block phone.   He told SER that when he signaled them with the light in the bubble, she and SAL-M should get naked and touch each other.   When he turned the light off that meant someone was coming and they should stop. Both SAL-M and SER went to SAL-M's cell and got completely naked.   They then went outside the cell and SER fondled and kissed SAL-M's breasts and they then returned to SAL-M's cell and got dressed.

### COUNT 4:   SLC

On December 1, 2014, your complainant spoke to SLC whose person matched the photo of her maintained with her records in the regular course of the business of the Polk County Jail. Records show that she was incarcerated in the Polk County Jail between August 27, 2014 and October 8, 2014.   It was during this most recent incarceration that something happened between her and the jailer Darryl while she was in the maximum security area.

One time during her incarceration, the defendant told SER over the cellblock phone that her and SAL-M should get naked for him and make out.   SLC told your complainant that SER and SAL-M got naked and "made out" for the defendant.   When the defendant was making his

rounds of the cells, he would ask SLC to suck his dick and she would say, "no", SLC told your complainant.

Toward the end of SLC's incarceration in the Polk County Jail, on two occasions, the defendant asked SLC to come downstairs to meet him. SLC came out of the pod and met with the defendant and he directed her to an area just outside the bubble door. The defendant touched SLC 's breasts under her jail uniform and bra and put his fingers inside her vagina under her jail uniform and underwear. This happened when the other jailers were on break or taking other inmates to court. The defendant told SLC not to tell anyone what he had done. He told her if she told anyone he could get into a lot of trouble and lose his job.

### COUNT 5:    MJJ

On December 8, 2014, your complainant spoke to MJJ whose person matched the photo of her maintained with her records in the regular course of the business of the Polk County Jail. MJJ said that she has been incarcerated in the Polk County Jail on numerous occasions, so it would be difficult for her to recall every incident which happened between her and the defendant who she knew as jailer Darryl Christensen.

The first incidents she described occurred during her time in jail after November 3, 2011. Between November 3, 2011 and January 22, 2014, in the course of her 9 incarcerations during that time, the defendant kissed her and then would put his hand under her jail uniform, underneath her underwear and insert his fingers into her vagina and he did this more than 24 times but less than 100 times. This happened in the place outside the bubble door and near the medical cells. Many times during these same incidents the defendant would pull his penis out of his uniform pants and have MJJ touch his penis. From this position the defendant would be able

to see if anyone was entering through the maximum security doors so that he would know to stop. The defendant told MJJ not to tell anyone what he had done or he would lose his job.

Between November 3, 2011 and January 22, 2014 MJJ told your complainant that she performed fellatio on the defendant an estimated two dozen to a maximum of 50 times while he was a jailer in the Polk County jail and she was an inmate.

The defendant also engaged in penis to vagina intercourse with MJJ in the jail. The first time happened when she was arrested for operating a motor vehicle while intoxicated on November 3, 2013. MJJ told your complainant that she was arrested at about 2 AM, then booked into the Polk County (records show she was booked into the jail at 2:08 AM), and placed into a holding cell. MJJ was given a jail uniform top by jail staff but was never given jail uniform pants. MJJ was wearing blue jeans with the jail uniform top. Later in the morning, just after she woke up, the defendant came into her cell at the beginning of his work shift. She was still very intoxicated. The defendant asked her if she wanted to change into her jail uniform pants. The defendant handed her the jail uniform pants and asked her if she wanted him to step out of the cell. MJJ started to change into the jail uniform pants in front of the defendant, when the defendant asked her if she wanted to have sex with him right there. The defendant opened the top of his pants, without removing them, and he put his penis into her vagina and they had sexual intercourse. She then put on her uniform pants, and the defendant exited the holding cell. He did not seem concerned to MJJ about being caught having sex with her in the holding cell. He told her that she should not tell anyone because he can lose his job and lose his wife. The defendant's work records show that he worked that day starting at 6:00 AM in jail booking until 2:30 PM.

According to Polk Jail records, MJJ was jailed last prior to November 3 2013, between June 27, 2013 and July 5, 2013. MJJ was then incarcerated again in the Polk County Jail from November 3, 2013 through January 22, 2014. During this last incarceration period, MJJ had sexual intercourse with the defendant on other occasions. On two occasions on separate dates, and MJJ did not recall the specific dates, the defendant called MJJ out of her pod and she had contact with him near the entrance door to the bubble. The defendant kissed MJJ, put his hands down her pants underneath her underwear and put his fingers into her vagina. The defendant then had MJJ perform fellatio on him. She then pulled her jail uniform pants and underwear down, the defendant opened his uniform pants and they had sexual intercourse with MJJ bent over with her head toward the glass enclosure to the bubble.

The final time the defendant had intercourse with MJJ in the jail occurred in the bathroom with the X room. MJJ said the X room is a room next to the maximum security block where inmates can go to look at the law books and have meetings. MJJ went into the X room to walk laps around the room for exercise. From the bubble the defendant directed MJJ to put on a show for him. The defendant eventually came into the X room, used his keys to open the bathroom door in the X room and dimmed the lights in the X room. The defendant then took MJJ into the bathroom, he shut off the lights in the bathroom and they had sexual intercourse up against the wall, the defendant putting his penis into MJJ's vagina.

During MJJ's incarceration within the Polk County Jail, between November 3, 2013 and January 22, 2014, the defendant's actions and comments seemed to be becoming even more blatant. When she would go to pick up medications at the medications cart, the defendant would tell her to put her hand on his crotch, outside his uniform pants. She did what he told her to do between 12 and 24 times.

- 13 -

She saw him masturbate under the light of the bubble when he would direct her attention toward him by shining the light from the bubble into her cell to get her attention. He would pull his penis out of his pants and masturbate where she could watch him. She estimated the defendant did this between 12 and 24 times.

This complaint is based on the information and belief of your complainant who is an agent for the Division of Criminal Investigation of the Department of Justice and who learned of these events from his interviews with JKJ, SER, SAL-M, SLC and MJJ which persons your complainant believes to be truthful, accurate and reliable inasmuch as they are citizen informants and witnessed the events described.

Further your complainant believes that information furnished by records made and kept in the regular course of the business of the Polk County Sheriff's Office and the Polk County Circuit Court to be truthful accurate and reliable in as much as they are regularly relied upon by law enforcement officers to be truthful accurate and reliable.

Dated this 8th day of April, 2015.

JOSEPH WELSCH,
SPECIAL AGENT

Subscribed and sworn to before me and
approved for filing this 8th day of April, 2015.

Robert J. Kaiser, Jr.
Assistant Attorney General
   Special Prosecutor for Polk County
State Bar No. 1011333
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-3863 – (telephone)
(608) 267-2778 – (facsimile)

- 14 -