## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

J.K.J.,

        Plaintiff,                              Civil Action No. 15-cv-428-wmc

v.

POLK COUNTY SHERIFF'S DEPARTMENT
and DARRYL L. CHRISTENSEN,

        Defendants.

## AMENDED COMPLAINT

For her Complaint, plaintiff J.K.J. hereby states and alleges as follows:

### JURISDICTION AND VENUE

1.    This is an action for money damages for injuries sustained by Plaintiff as a result of non-consensual sexual assault and coercion in violation of Plaintiff's constitutional and state rights by Defendant Christensen.  Plaintiff also asserts a claim against the Polk County Sheriff's Department pursuant to 42 U.S.C. §§ 1983, 1986, and 1988, the Eighth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1342(3).  The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

2.    The Court has jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

3.    The amount in controversy exceeds $75,000, excluding interest and costs.

4.    A jury trial is demanded.

### PARTIES

5.    Plaintiff is and was, at all times material herein, a citizen of the United States, a resident of the State of Wisconsin, and a prisoner in the State of Wisconsin.

6.     Defendant Darryl L. Christensen (" Defendant Christensen"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Wisconsin, and was employed by Defendant Polk County Sheriff's Department ("Defendant Sheriff") acting as a jailer at the Polk County Jail.

7.     Defendant Sheriff operates the Polk County Jail which is where Defendant Christensen sexually assaulted Plaintiff while she was an inmate.

8.     Defendant Christensen is being sued in both his individual and official capacities as to all counts, federal and state.

9.     Defendant Sheriff is being sued on a theory of direct liability with regards to Plaintiff's federal law claims.

10.     Defendant Sheriff is being sued on theories of both direct liability as well as *respondeat superior* with regards to to Plaintiff's pendent state law claims. At all times relevant herein, Defendant Christensen was employed by the Defendant Sheriff as a jail officer at the Polk County Jail. All acts alleged herein by Defendant Christensen were committed within the scope of his employment, under the authority of the Defendant Sheriff, while Defendant Christensen was actively on duty in the Polk County Jail and performing tasks specifically authorized and ratified by the Defendant Sheriff, including observing and monitoring the actions of the Plaintiff.

## FACTUAL ALLEGATIONS

11.     Defendant Christensen sexually assaulted numerous inmates, including Plaintiff while working in his capacity as a jailer at the Polk County Jail.

12.     Upon information and belief, within the Polk County Jail there are 3 different housing areas; a maximum security area, a medium security area, and a minimum security area.

2

13.     The only areas of the Polk County Jail with cameras were the minimum security pod and some of the hallways of the jail.

14.     The maximum security area consists of a "bubble," which is where the jailers are housed to watch over the inmates, the "bubble" is surrounded by a hallway. Branching out from the hallway are various housing units which each hold multiple inmates as well as other rooms. There is one way glass comprising the outside of the housing units such that jailers can see inside the housing units but inmates cannot see into the hallway and/or the "bubble."

15.     One of the rooms off of the hallway in the maximum security housing area is called the "X-room." This is a conference room that the inmates could use for classes or to walk around to get exercise.  This room did not have cameras.

16.     The maximum security area is self-contained and access is severely restricted.

17.     Upon information and belief, a jailer from inside the "bubble" is responsible for opening all doors to get into maximum security housing area. Generally, no one can enter the max housing area without being let in from someone inside the "bubble."

18.     When Defendant Christensen worked alone in the "bubble" he was able to refuse or delay entry of other jailers into the maximum security housing area.

19.     Upon information and belief, there are no cameras showing recording in the "bubble," the hallway surrounding it, or in the maximum security housing units.

20.     The various housing units consisted of female and male inmates.

21.     Polk County Jail had a custom that allowed one opposite-sex jailer to watch over all opposite sex inmates, alone. Upon information and belief, this would occur when other jailers would take lunch breaks, when jailers would bring inmates to court, and for various other reasons.

22.     Defendant Christensen could see on the camera when someone was attempting to enter through the maximum security doors.

23.     Defendant Christen was able to refuse or postpone entry into the maximum security area while he was assaulting female inmates.

24.     Defendant Christensen knew there were no cameras and would sexually take advantage of inmates in particular areas. In the maximum security area, those areas included near the "bubble," the adjoining hallway, and the "X-room." In the maximum security area, not only were there no cameras, but he "held the key" for anyone else to enter.

25.     Defendant Christensen would also sexually take advantage of inmates in other areas without cameras such as the medium security pod, holding cells, various hallways and corners of hallways just out of camera sight.

26.     Polk County Jail's policy of having one jailer on duty, combined with other facts including inaction on behalf of Polk County Jail for responding to warning signs, allowed and encouraged Defendant Christensen's sexual misconduct.

**A.  Unconsented Contact with Plaintiff**

27.     Jennifer Johnson was incarcerated at the Polk County Jail, on and off, between August of 2012 to the time of Defendant Christensen's resignation.

28.     The first initiation of sexual intercourse with Plaintiff was in August of 2012 when Defendant Christensen called Plaintiff over the intercom and asked Plaintiff to step out of her cell block.

29.     Defendant Christensen took Plaintiff to an area described near the "X–room". Defendant Christensen began to "make out" with Plaintiff, began feeling under her underwear, and put his fingers into her vagina. Defendant Christensen proceeded to have non-consensual

sexual intercourse. Shortly after the incident Defendant Christensen called Plaintiff back out from her cell block stating, "You're not going to say anything right?" Plaintiff felt compelled to agree.

30.     Defendant Christensen initiated sexual contact a second time when he again called Plaintiff out of her cell and told her to go to the "X–room".

31.     Defendant Christensen started "making out" with Plaintiff, put his hand under her jail uniform and put his fingers into Plaintiff's vagina. Defendant Christensen then licked his fingers, pulled down his pants, and he put his penis into Plaintiff's mouth.

32.     Upon information and belief, this interaction stopped when Defendant Christensen was being called to respond to a radio.

33.     On another occasion Defendant Christensen called Plaintiff out of her cell into the "X–room" and made out with her.

34.     When everyone in the block but Plaintiff was sleeping, Defendant Christensen would approach the block and expose his penis to Plaintiff. He would also masturbate putting his penis against the glass from the outside. This would be in an area where the camera was not able to see.

35.     On another occasion, Plaintiff went to the booking area to retrieve personal property. Defendant Christensen was working in this area and brought her behind a shower curtain, where there were no cameras, and he kissed Plaintiff, felt her breasts underneath her shirt and bra.

36.     On various other occasions Defendant Christensen would put his fingers into Plaintiff's vagina and his penis into Plaintiff's mouth.

37.     While in the "bubble," Defendant Christensen would direct Plaintiff's attention to the "bubble" and she could see Defendant Christensen masturbating underneath a lamp.

38.     Because of cameras in minimum security, when Plaintiff was classified at this level, Defendant Christensen did not engage in any sexual relations with Plaintiff.

39.     However, even while in minimum security, Defendant Christensen would grab Plaintiff's butt when she walked out for medications where the camera's couldn't see him.

40.     Defendant Christensen would also expose his penis to Plaintiff from the hallway outside of the cellblock.

41.     During the course of the sexual relations, Defendant Christensen promised and brought Plaintiff coffee, candy, and indicated he would bring her $150 for rent, but he resigned before that happened.

42.     Defendant Christensen told Plaintiff on numerous occasions not to tell anyone what happened.

43.     Plaintiff felt obligated, controlled, compelled, and pressured by Defendant Christensen to engage in the sexual acts. Plaintiff felt powerless given that she was an inmate and that Defendant Christensen had authority over her as a jailer.

44.     Plaintiff was employed in the past and this may impact her ability to return to gainful employment and may result in a loss of future earnings.

45.     Based on the statements of inmates, the Wisconsin Department of Justice ("WDOJ") initiated an investigation into Defendant Christensen's sexual conduct.

46.     In addition to the non-consensual sexual acts perpetrated on Plaintiff, according to WDOJ's investigation, Defendant Christensen had non-consensual sexual relations with at least 4 other inmates under circumstances that were similar, if not identical, to those perpetrated on the Plaintiff during the same time period.

**B.  Statements from other Polk County Jailers**

47.     As part of the WDOJ's investigation, numerous jailers were interviewed with regards to Christensen's conduct. Portions of their statements are identified, below.

48.     Michael Ottosen was a jailer employed by Defendant Sheriff at the Polk County Jail for over 10 years and worked frequently with Defendant Christensen.

49.     Jailer Ottosen was asked to describe observations of Defendant Christensen while working together at the jail.

50.     Jailer Ottosen indicated that he recalled an incident where he was providing a roll of toilet paper to a female inmate (of which he cannot remember which inmate) and Defendant Christensen stood in the "bubble" with his hands on his hips staring at the inmate.

51.     Jailer Ottosen stated that Defendant Christensen was always flirting with the inmates. On one occasion Defendant Christensen brought in a new Harley Davidson jacket and paraded it around for the female inmates.

52.     Jailer Ottosen indicated that approximately 6 times while working master control he would transfer a call to Defendant Christensen in the max pod and that Defendant Christensen would not respond which caused the call to be transferred back to master control.

53.     The standard procedure for the jailer in the max pod is to notify master control of unavailability if a short break was needed away from the radio. This procedure was to be followed even for a restroom break. It is clear that Defendant Christensen did not follow this procedure.

54.     Scott Pittman was a jailer employed by Defendant Sheriff at the Polk County Jail and had been on the same shift and rotation, working 3 days per week with Defendant Christensen, for the past 5 years prior to Defendant Christensen's resignation.

55.    Jailer Pittman indicated that there were 3 times when he returned from lunch when Defendant Christensen was working in the "bubble." Pittman requested the door to be opened to the max pod, which was controlled from the "bubble" and there was a delay for Defendant Christensen to open the door.

56.    Johnson- Scott Pittman felt that Defendant Christianson would, "pay more attention to Plaintiff than other inmates."

57.    Lawrence Bergeron was a jailer employed by Defendant Sheriff at the Polk County Jail for approximately 13 years and worked the same shift as Christensen.

58.    Plaintiff- Bergeron noticed that Defendant Christensen would talk to Plaintiff more than other female inmates.

59.    Lori Flandrena was a jailer employed by Defendant Sheriff at the Polk County Jail for approximately 12 years and she worked the same shift as Christensen 3 days per week.

60.    Flandrena heard Defendant Christensen call Plaintiff "gorgeous."

61.    On one occasion Flandrena requested Defendant Christensen, then working in the "bubble", to open the door to the maximum security pod. After 3-4 minutes of Defendant Christensen not responding, Flandrena requested master control to override the "bubble" and to open the door for her. As the door opened and Flandrena entered the maximum security pod, she heard the "bubble" door slam. She knew that Defendant Christensen was somewhere outside the "bubble", not using the restroom, but that she did not ask him any questions. This was clearly against department policy.

62.    In addition, Flandrena states that there were numerous other times where Defendant Christensen failed to answer the radio when he was working in the "bubble".

63.     Jailer Stacey Ptacek was a jailer employed by Defendant Sheriff at the Polk County Jail and would work with Defendant Christensen from time to time. She indicated that Defendant Christensen often flirted with female inmates.

64.     Jailer William G. Briggs was a jailer employed by Defendant Sheriff at the Polk County Jail and worked with Defendant Christensen for a year prior to his resignation working 3 days out of 6 on the same shift.

65.     Jailer Briggs indicated that Defendant Christensen paid a lot more attention to female inmates.

66.     Jailer Briggs also indicated that on more than one occasion when Defendant Christensen was in the "bubble" in max pod, he requested Defendant Christensen to open the door and felt he had to wait an excessive amount of time before Defendant Christensen finally opened the door.

67.     Jailer Lorraine Beyl was a jailer employed by Defendant Sheriff at the Polk County Jail and for 1.5 years prior to Defendant Christensen's resignation, worked the same shift 6 days per week.

68.     Jailer Beyl indicated that Defendant Christensen paid a lot more attention to Plaintiff than any other inmate.

69.     According to Jailer Beyl, on approximately 12 different occasions when Defendant Christensen was assigned to the booking area of the Jail, he would come into the minimum security wing and requested Plaintiff and another female inmate to clean the booking area.  Jailer Beyl stated that it was **not** common to request a specific inmate to do the cleaning.

70.     Jailer Beyl also stated that approximately 2-3 times after she had lunch and returned to the maximum security pod she had to wait a long time for Defendant Christensen, who was working in the "bubble," to open the security door.

71.     One time when Jailer Beyl was waiting outside the security door to the non-minimum security pod, she heard the door slam to the "bubble" and then her door opened. It was apparent to her that Defendant Christensen was outside the "bubble".

72.     On February 20, 2014, Defendant Christensen missed training on the Prison Rape Elimination Act from Captain Nargis. Captain Nargis meeting minutes specifically note that there was to be, "No inappropriate contact between staff and inmates."

73.     Captain Nargis has no proof that Defendant Christensen would have ever read the policy regarding Fraternization with Inmates and the Prison Rape Elimination Act.

74.     As a result of the sexual assault from Defendant Christensen, Plaintiff has suffered and will continue to suffer great damages including physical injury; severe mental anguish, stress, embarrassment, humiliation, inconvenience, wage loss, and pain and suffering causing symptomatic reaction, including but not limited to: depression, nervousness, inability to sleep, nightmares, and severe anxiety impacting Plaintiff's daily living activities, loss of enjoyment of life and other nonpecuniary injury.

75.     On February 19, 2015 Defendant Sheriff, via the Chief Deputy Steven Moe, was personally served with a notice of claim pursuant to Wisconsin Statute §893.80.

76.     To date, the Plaintiff has received no response to the §893.80 notice of claim.

## CAUSES OF ACTION

## AS TO ALL FEDERAL CHARGES

77.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

78.    At all times relevant the conduct of Defendants were subject to 42 USC §1983 and §1986.

79.    In committing the acts complained herein, Defendants, and each of them, acted under color of Wisconsin law, statute, ordinance, and/or regulation and/or pursuant to customs to deprive Plaintiff of her constitutionally protected right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendment to the Constitution of the United States.

80.    Defendants' acts and omissions, and each of them, separately and/or in concert demonstrated their deliberate indifference to, and conscious disregard for the health, safety and welfare of Plaintiff and caused and/or permitted the continuation of Defendant Christensen's sexual misconduct, thereby resulting in the violation of Plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

81.    Defendants' acts and omissions, and each of them separately and/or in concert disregarded Plaintiff's constitutional rights as described herein and thus violates 42 USC §1983 and §1986.

82.    As a direct and proximate result of the Defendants' violation of Plaintiff's constitutional rights, Plaintiff suffered physical injury and severe mental anguish and emotional trauma.

83.    As a direct and proximate result of the acts of Defendant Christensen, Plaintiff has suffered physical injury and mental anguish and is therefore damaged in an amount in excess of

seventy-five thousand dollars ($75,000) and further demands judgment against each Defendant, jointly and severally, for attorney's fees and the costs of this action under 42 U.S.C. §1988, together with any further relief as the Court deems equitable and just.

84.    Punitive damages are also properly awardable against Defendant Christensen and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983) and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Wis. Stat. § 895.043.

**COUNT ONE- Federal Claim**
**VIOLATION OF 8TH AMENDMENT**
**AS TO DEFENDANT CHRISTENSEN AND DEFENDANT SHERIFF**

85.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

86.    Defendant Christensen's conduct constituted prohibited sexual abuse and cruel and unusual punishment of Plaintiff. Such conduct is outrageous, reckless, malicious, and sadistic and for the very purpose of causing harm which constitutes cruel and unusual punishment.

87.    No officer in Defendant Christensen's position could have believed that sexual intercourse with an inmate placed in the care and control of the jailer was reasonable, justified, and constitutional.

88.    Defendant Sheriff negligently, grossly negligently, recklessly, willfully, wantonly, maliciously, and/or intentionally sexually assaulted Plaintiff by and through Defendant Christensen's conduct. Defendant Christensen's sexual assault of Plaintiff was performed with reckless or callous disregard for Plaintiff's right to be free from cruel and unusual punishment, as guaranteed under the Eighth Amendment to the United States Constitution, as applied to Plaintiff

through the Fourteenth Amendment to the United States constitution and was committed under the color of state law.

89.    Defendant Sheriff knew of the risk posed from Defendant Christensen given his neglected training, flirting with female inmates, continuous breaking of jail policies, and other conduct alleged, *supra*, and acted with deliberate indifference when it failed to take reasonable measures to abate that risk.

90.    As a result of Defendant Christensen's unwanted and unlawful sexual contact with Plaintiff, Defendant Christensen caused pain, physical injury, mental anguish, and emotional trauma to the Plaintiff, identified *supra*.

### COUNT TWO- Federal Claim
### VIOLATION OF 42 U.S.C. §1983 & 1986
### AS TO DEFENDANT CHRISTENSEN AND DEFENDANT SHERIFF

91.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

92.    Defendant Christensen violated the Plaintiff's rights pursuant to 42 U.S.C. §1983 while acting under the color of law, as a representative of Defendant Sheriff,

93.    The conduct described *supra* will establish that Defendant Christensen, in his individual capacity, violated Plaintiff's Eighth Amendment right against cruel and unusual punishment, by sexually assaulting her during her incarceration.

94.    By the actions described above, Defendant Christensen, under color of state law and in his official capacity as jail guard, violated and deprived Plaintiff of her clearly established and well-settled civil right to be free from sexual assault by a supervising jail guard.

95.    Defendant Christensen subjected Plaintiff to these deprivations of constitutional rights either maliciously, intentionally, deliberately, willfully, or by acting with reckless disregard for whether Plaintiff's civil rights would be violated by his actions.

96.    As a direct and proximate result of the acts of Defendant Christensen, Plaintiff has suffered physical injury and mental anguish and is therefore damaged in an amount in excess of seventy-five thousand dollars ($75,000).

97.    Punitive damages are also properly awardable against Defendant Christensen and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983) and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Wis. Stat. § 895.043.

98.    Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**a)  Failure to train and supervise Christensen:**

99.    Defendant Sheriff was negligent in training Defendant Christensen.

100.   Given the actions of Defendant Christensen that were identified by numerous jailers that he worked with, including but not limited to comments that inmates were "gorgeous," continued delay in opening the "bubble" door, flirting with female inmates, and requesting specific inmates for tasks, Defendant Sheriff knew or should have known that Defendant Christensen would confront the choice of engaging in sexual comments and contact with female inmates.

101.   Defendant Christensen's conduct and choices could of and would have been different had it been for appropriate training on the Prison Rape Elimination Act from Defendant Sheriff.

102.    Defendant Christensen missed this training and it cannot be shown that he has reviewed the training and policies relating to the Prison Rape Elimination Act or the Polk County Jail's policy regarding jailers fraternization with inmates.

103.    The Defendant Sheriff, knowing or having reason to know that Defendant Christensen specifically needed additional training and/or supervision in this area, acted with a deliberate indifference when they failed to provide appropriate supervision and training on the Prison Rape Elimination Act to Defendant Christensen.

104.    Defendant Christensen's engaging in sexual comments, sexual contact, and sexual exploitation of female inmates has led to the deprivation of constitutional rights of female inmates, specifically, Plaintiff.

**b)  Failure to supervise and train all jailers:**

105.    Defendant Sheriff failed to train all jailers working with Defendant Christensen to recognize and report warning signs, policy/custom violations, comments, and actions from Defendant Christensen.

106.    Given the actions of Defendant Christensen that were identified by numerous other jailers that he worked with, including but not limited to comments that inmates were "gorgeous," continued delay in opening the "bubble" door, flirting with female inmates, and requesting specific inmates for tasks, Defendant Sheriff knew or should have known that Defendant Christensen would confront the situation of sexual comments, sexual contact, and sexual exploitation with female inmates.

107.    Defendant Sheriff failed to train and supervise the jailers on warning signals as well as the requirement that when department policies or customs are broken that they are to report to superiors.

108.   There were department policies and/or customs which stated that if a jailer was to leave the "bubble", even for a restroom break, they were to let master control know.

109.   Defendant Christensen broke this policy/custom time and time again according to other jailers.

110.   A failure of Defendant Sheriff to train officers to report improper conduct caused, allowed, and encouraged continued unlawful sexual contact and comments from Defendant Christensen.

111.   Although each of the identified jailers recognized actions and warning signs they did nothing.

112.   The Defendant Sheriff acted with deliberate indifference when they created an atmosphere that allowed for continuous violations of department policies without repercussions and failed to train and/or supervise the jailers with regards to these issues.

113.   Because Defendant Sheriff failed to train and supervise all jailers on these issues, Defendant Christensen was given the opportunity, encouragement, and ability to continue his sexual exploitation of female inmates.

**c)   Custom of allowing one male officer to supervise females without cameras and the ability to prevent entrance of other jailers**

114.   Defendant Sheriff did not have a custom or policy that required segregation of correctional officers from opposite-sex inmates. At a minimum, Defendant Sheriff failed to require a minimum of two correctional officers whenever acting with inmates of the opposite sex.

115.    Whether a jailer left to bring an inmate to court, went to lunch, took a bathroom break, or for whatever reason, one jailer was often left alone to supervise inmates of the opposite sex. There was a custom within the Jail that this was acceptable.

116.    In addition, the only cameras in the entire jail were located in the minimum security area as well as a few hallways. There were no cameras in the booking areas, there were no cameras in the maximum and medium housing units, and there were no cameras in various hallways.

117.    Finally, to add another element of indifference, when in the max pod, jailers within the pod had the ability to seal out **all other jailers** from being able to enter the area.

118.    This trifecta gave Defendant Christensen the perfect opportunity and encouraged Defendant Christensen to sexually assault female inmates. Defendant Sheriff acted with deliberate indifference when they failed not only to recognize the warning signs and inadequacies of Defendant Christensen's conduct, but also when this was coupled with the custom of allowing one opposite sex supervisor with no cameras and with the ability to lock all other jailers out of certain areas.

## <u>AS TO ALL STATE CLAIMS:</u>

119.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

120.    On February 19, 2015 Defendant Sheriff, via the Chief Deputy Steven Moe, was personally served with a notice of claim pursuant to Wisconsin Statute §893.80.

121.    To date, the Plaintiff has received no response to the §893.80 notice of claim.

122.   Defendant Christensen was acting in his official capacity with the Defendant Sheriff when he engaged in sexual contact with the Plaintiff and caused the Plaintiff physical and emotional harm.

123.   Upon information and belief, Defendant Christensen's conduct occurred during working hours while conducting official business.

124.   Defendant Christensen misused and abused the official power granted to him by Defendant Sheriff within the scope of his official duties, thereby causing harm to Plaintiff.

125.   As a direct and proximate result of Christensen's conduct and actions, the Plaintiff has suffered damages, including but not limited to sever mental and emotional distress, as well as economic loss.

<u>**COUNT THREE- State Claim**</u>
**CIVIL ASSAULT AND BATTERY**
**AS TO DEFENDANT CHRISTENSEN IN HIS INDIVIDUAL AND OFFICIAL**
**CAPACITY**

126.   Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

127.   Defendant Christensen intentionally inflicted unauthorized offensive sexual contact upon Plaintiff, which caused bodily harm to her including but not limited to sexual touching, penile sexual intercourse, oral sexual intercourse, and digital penetration, as alleged *supra*.

128.   Plaintiff did not consent to the offensive contact alleged herein, constituting assault and battery upon her.

129.   Defendant Christensen's actions were an unlawful civil assault of and battery upon Plaintiff.

130.    As a direct and proximate result of the assault and sexual battery of Plaintiff, Plaintiff suffered physical injury, pain and suffering, mental anguish and humiliation as alleged in this Complaint.

131.    The conduct of Defendant Christensen was done with actual malice and displayed such a deliberate and reckless indifference to Plaintiff's rights which actually and proximately caused her damage and entitling her to an award of punitive damages.

**COUNT FOUR- State Claim**
**2ND DEGREE SEXUAL ASSAULT: SEXUAL CONTACT OR INTERCOURSE BY A CORRECTIONAL STAFF MEMBER**
**AS TO DEFENDANT CHRISTENSEN IN HIS INDIVIDUAL AND OFFICIAL CAPACITY**

132.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

133.    By engaging in non-consensual sexual contact with Plaintiff while she was incarcerated and Defendant Christensen was a jail guard supervising her incarceration, Defendant Christensen is in violation of Wis. Stat. § 940.225(2)(h).

134.    As a direct and proximate result of Defendant Christensen's sexual assault, Plaintiff suffered physical injury, pain and suffering, mental anguish and humiliation in excess of seventy-five thousand dollars ($75,000).

135.    The conduct of Defendant Christensen was done with actual malice and displayed such a deliberate and reckless indifference to Plaintiff's rights which actually and proximately caused her damage and entitling her to an award of punitive damages.

**COUNT FIVE- State Claim**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**AS TO DEFENDANTS CHRISTENSEN IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AND DEFENDANT SHERIFF**

136.   Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

137.   Defendant Christensen intended to initiate and did, in fact, initiate non-consensual sexual contact with Plaintiff including but not limited to sexual touching, penile sexual intercourse, oral sexual intercourse, and digital penetration, as alleged *supra*.

138.   By making threats, Defendant Christensen knew or should have known that his initiation of sexual contact would cause emotional distress.

139.   Defendant Christensen's initiation of sexual relations has caused emotional distress to Plaintiff which has been extreme and disabling as alleged, *supra*.

140.   Defendant Christensen was employed by Defendant Sheriff and operating within his scope of employment when he committed the negligent infliction of emotional distress such that Defendant Sheriff is vicariously liable for the actions of Defendant Christensen under the theory of *respondeat superior*.

141.   Defendant Christensen's conduct occurred during working hours and while conducting official business. Defendant Sheriff knew or should have known of such conduct based on the allegations alleged, *supra*.

142.   The Conduct of Defendant Sheriff, by and through the conduct described *supra* of its employee, Defendant Christensen, was done with actual malice and displayed such a deliberate and reckless indifference to Plaintiff's rights which actually and proximately caused her damage and entitling her to an award of punitive damages.

**COUNT SIX- State Claim**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AS TO DEFENDANT CHRISTENSEN IN HIS INDIVIDUAL AND OFFICIAL**
**CAPACITY**

143.   Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

144.   Defendant Christensen purposefully engaged in extreme and outrageous conduct that was intended to and did cause extreme and disabling emotional distress to the Plaintiff by engaging in the conduct including but not limited to sexual touching, penile sexual intercourse, oral sexual intercourse, and digital penetration, as alleged *supra*.

145.   As a direct and proximate result of Defendant Christensen's intentional infliction of emotional distress upon Plaintiff, she has sustained injuries and damages which have been extreme and disabling as alleged, *supra*.

146.   The conduct of Defendant Christensen was done with actual malice and displayed such a deliberate and reckless indifference to Plaintiff's rights which actually and proximately caused her damage and entitling her to an award of punitive damages.

**COUNT SEVEN- State Claim**
**NEGLIGENT SUPERVISION AND TRAINING OF DEFENDANT CHRISTENSEN**
**AS TO DEFENDANT SHERIFF**

147.   The Defendant Sheriff was negligent in the training Defendant Christensen.

148.   The Defendant Sheriff knew or had reason to know that Defendant Christensen engaged in inappropriate conduct with female inmates. Numerous Polk County Jailers gave statements that Defendant Christensen favored female inmates, that he would flirt with female inmates, and that he would make requests specifically for certain inmates, that he called certain inmates "gorgeous," and that he violated Jail customs, among other things.

149.   On February 20, 2014, Defendant Christensen missed training on the Prison Rape Elimination Act from Captain Nargis. Captain Nargis meeting minutes specifically note that there was to be, "No inappropriate contact between staff and inmates."

150.   Captain Nargis has no proof that Defendant Christensen would have ever read the policy regarding Fraternization with Inmates and the Prison Rape Elimination Act.

151.   The Defendant Sheriff, knowing or having reason to know that Defendant Christensen specifically needed additional training and/or supervision in this area, negligently failed to provide appropriate supervision and training.

152.   The negligent supervision and training of Defendant Christensen by Defendant Sheriff caused the sexual assault and battery to the Plaintiff.

## COUNT EIGHT- State Claim
## NEGLIGENT SUPERVISION AND TRAINING OF JAIL EMPLOYEES AS TO DEFENDANT SHERIFF

153.   The Defendant Sheriff was negligent in the training their jail employees.

154.   The Defendant Sheriff knew or had reason to know that Defendant Christensen engaged in inappropriate conduct with female inmates. Various Polk County Jailers gave statements that Defendant Christensen favored female inmates, that he would flirt with female inmates, and that he would make requests specifically for certain inmates, that he called certain inmates ""gorgeous"," among other things.

155.   In addition, various Polk County Jailers indicated that they had waited unusually long periods for Defendant Christensen to open the door into the housing pod when he was operating the "bubble". Although each of the employees experienced these delays they did nothing to bring the issue up to superiors which could have prevented sexual assaults.

156.   There were department policies and/or customs which stated that if a jailer was to leave the "bubble", even for a restroom break, they were to let master control know.

157.   Defendant Christensen broke this policy/custom time and time again according to other jailers.

22

158.   Defendant Sheriff failed to train and supervise the jailers on warning signals as well as the requirement that when department policies or customs are broken that they are to report to superiors.

159.   Because the jail failed to train and supervise on these issues, Defendant Christensen was given the opportunity and ability to continue his sexual exploitation of female inmates.

## COUNT NINE- State Claim
## WIS. STAT. 895.46- STATE AND POLITICAL SUBDIVISIONS THEREOF TO PAY JUDGMENTS TAKEN AGAINST OFFICERS
## AS TO DEFENDANT SHERIFF

160.   Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

161.   Defendant Christensen was acting within his scope of employment through Defendant Sheriff when he engaged in sexual contact with the Plaintiff and caused the Plaintiff physical and emotional harm in each of the aforementioned counts.

162.   Thus, if damages are found against Defendant Christensen which exceed applicable insurance, Defendant Sheriff is responsible for and must pay all remaining damages to the Plaintiff.

## RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor as follows:

1.      That the practices and conduct of Defendant Christensen complained of herein be adjudged in violation of the rights secured by Plaintiff under 42 U.S.C. §1983 and §1988 and the Eighth Amendment.

2.      That the practices and conduct of Defendant Sheriff complained herein be adjudged in violation of the rights secured by Plaintiff under 42 U.S.C. §1983 and §1988 and the Eighth Amendment.

3.      That the practices and conduct of Defendant Christensen and Defendant Sheriff complained of herein be adjudged violations of Wisconsin law.

4.      That Plaintiff is awarded compensatory damages in an amount to be established at trial.

5.      That Plaintiff is awarded damages for mental anguish and pain and suffering in an amount to be established at trial.

6.      That Plaintiff is awarded punitive damages against Defendant Christensen under the Civil Rights Act of 1871, and 42 U.S.C. § 1983 and Wisconsin law.

7.      That Defendant Sheriff is responsible for all remaining damages which exceed applicable insurance, including punitive damages.

8.      That the Court award Plaintiff her attorneys' fees and costs and expenses of this action and prejudgment interest pursuant to 42 U.S.C. §§ 1983 and 1988 and Wisconsin law.

9.      For such other and further relief as this Court deems just and equitable.

**ECKBERG, LAMMERS, BRIGGS,**
**WOLFF & VIERLING, PLLP**

Dated:   December 31, 2015          By:   s/Thomas J. Weidner
                                         Thomas J. Weidner (1082013)
                                         Lida M. Bannink (1088518)
                                         430 Second Street
                                         Hudson, Wisconsin 54016
                                         (715) 386-3733
                                         tweidner@eckberglammers.com
                                         lbannink@eckberglammers.com

24