—Prepared by Laurel Dean, RPR—

1    STATE OF WISCONSIN:   CIRCUIT COURT: POLK COUNTY

2

3     STATE OF WISCONSIN,                    )

4                        Plaintiff          )

5                                           )    Case No. 15-CF-159

6          vs.                              )

7                                           )

8     DARRYL L. CHRISTENSEN,                )

9                        Defendant.         )

10   _____

11   DATE:              November 30, 2015

12   BEFORE:            The Hon. Eugene Harrington
                        Circuit Judge

13

     APPEARANCES:       Robert J. Kaiser, Jr.
14                      Assistant Attorney General
                        State of Wisconsin
15                      Department of Justice
                        17 W. Main Street
16                      Madison, WI  53707-7857
                        For the Plaintiff
17

                        Aaron A. Nelson
18                      Doar, Drill & Skow
                        103 N. Knowles Avenue
19                      New Richmond, WI  54017
                        For the Defendant
20

21                      The Defendant appeared in person

22

23            **TRANSCRIPT OF PROCEEDINGS**

                        (Plea Hearing)
24

25

EXHIBIT
6

Christensen
EXHIBIT NO. ___12___
5-18-16___ RPTR CH
For the Record, Inc.
(608) 833-0392

—1—

—Prepared by Laurel Dean, RPR—

1          THE COURT:  This is State of Wisconsin versus Darryl

2    Christensen.  Darryl, D-A-R-R-Y-L.  Christensen is

3    C-H-R-I-S-T-E-N-S-E-N.  Polk County, 15-CF-159.  Mr. Christensen

4    appears in person with Aaron Nelson.  Mr. Kaiser from the

5    Attorney General's office represents the State of Wisconsin.

6    BY THE COURT:

7    Q.  Mr. Christensen, I have a plea questionnaire and waiver of

8        rights form.  Is this your signature on the back side?

9    A.  Yes, sir.

10   Q.  Did you sign this of your own free will, act, and deed?

11   A.  Yes, sir.

12   Q.  Anyone make any threats or promises to get you to sign this?

13   A.  No, sir.

14   Q.  Do you understand the plea?

15   A.  Yes, sir.

16   Q.  What is your understanding of the plea?

17   A.  Plead guilty to all five counts.

18   Q.  Five counts.  Second-degree sexual assault.  Contact or

19       intercourse by a correctional staff officer.  Is that your

20       understanding?

21   A.  Correct.

22   Q.  Those are the counts?

23   A.  Yes, sir.

24   Q.  Maximum penalty for each count is a $100,000 fine, 40 years

25       imprisonment.  Do you understand those maximums?

1 A. Yes, sir.

2 Q. Those maximum imprisonment is divided by 25 years of extended

3   supervision and 15 years on -- strike that.  25 years of

4   confinement in a correctional facility; 15 years of extended

5   supervision.  Those are the maximum penalties.  Is that

6   correct?

7 A. Yes, sir.

8 Q. Those are felonies.  If you plead guilty to a felony, and you

9   are not a citizen of the United States, your plea could result

10   in deportation, exclusion of admission, or denial of

11   naturalization under federal law.  Do you understand that?

12 A. Yes, sir.

13 Q. If you are convicted of a felony, you lose your right to vote

14   until your civil rights are restored.  You lose your right to

15   vote in all elections in the State of Wisconsin until your

16   civil rights are restored.  Do you understand that consequence?

17 A. Yes, sir.

18 Q. If you are convicted of a felony or felonies, you lose your

19   right to possession a firearm for the rest of your natural life

20   in the United States of America, unless you receive a pardon

21   from the president or the governor of this state.  Do you

22   understand that?

23 A. Yes, sir.

24 Q. It doesn't say this on the plea questionnaire, but I think this

25   constitutes a serious sex offense.  You may be required to

Prepared by Laurel Dean, RPR

1    register as a sex offender for the rest of your life as well.

2    Do you understand that?

3  A. Yes, sir.

4  Q. All right.  49 years of age.  12 years of education.  Do you

5    read, write, and understand the English language?

6  A. Yes, sir.

7  Q. You're presently receiving treatment for post-traumatic stress

8    disorder and depression?

9  A. Yes, sir.

10 Q. What is the post-traumatic stress?

11 A. From 28 years of working emergency services as a fire

12    fighter/EMT.

13 Q. Taking any medication for PTSD?

14 A. Citalopram.

15 Q. Have you taken the citalopram pursuant to the doctor's

16    recommended dosage?

17 A. Yes, sir.

18 Q. Today?

19 A. Yes, sir.

20 Q. Taking it precisely according to the doctor's dosage?

21 A. Yes, sir.

22 Q. And you're suffering from depression.  You're taking -- what is

23    this?

24 A. Same thing.  The citalopram.

25        MR. NELSON:  The other one, I believe, Judge, is

─Prepared by Laurel Dean, RPR─

```
 1       for --
 2                   THE DEFENDANT:  Acid reflux.
 3       BY THE COURT:
 4    Q.  Do any of those medications impair your ability to understand
 5        the everday affairs of life?
 6    A.  No, sir.
 7    Q.  I have to make a finding you understand your rights, that
 8        you're not suffering from depression or some other illness,
 9        whether it be physical or mental, and that your decision today
10        is a thought-out decision after consultation with your lawyer,
11        and you know what you're pleading to, and you know what the
12        consequences may be.  Make I make that finding today?
13    A.  Yes, sir.
14    Q.  Constitutional rights.  Have you consumed any alcohol or drugs
15        other than the medication?
16    A.  No, sir.
17    Q.  Do you suffer from any other ailments other than those
18        disclosed?
19    A.  No, sir.
20    Q.  Your constitutional rights are outlined on the form.  First of
21        all, you have the right to a trial; a trial by judge or jury.
22        We are scheduled for two weeks, beginning one week from today.
23        Do you understand what the concept of a jury trial is?
24    A.  Yes, sir.
25    Q.  Tell me what you understand it to be.
```

─5─

1    A.  The State has to prove beyond a reasonable doubt to --

2    Q.  Stop.  Jury trial.  How many people on the jury?

3    A.  12.

4    Q.  You've gone through the jury questionnaires with Mr. Nelson, I

5        trust?

6    A.  Yes, sir.

7    Q.  At least in part, perhaps?

8    A.  Correct.

9    Q.  You understand that from those 285 persons that received those

10       questions, we would pare those down.  And, actually, that's

11       what we had intended to do today.  From that we would summon

12       about 100 folks in next Monday.  We would ask them a series of

13       questions.  Mr. Kaiser and Mr. Nelson might ask a few questions

14       themselves.  But at the end of the day, we would have about 35

15       folks.  You and Mr. Nelson would make some strikes, along with

16       Mr. Kaiser.  We would reduce that panel from about 30 to 16.

17   A.  Yes, sir.

18   Q.  We would need four extra jurors in the event someone had an

19       illness or family emergency over the next two weeks.  Do you

20       understand?

21   A.  Yes, sir.

22   Q.  If you plead guilty or no contest, we will not go through that

23       process.  Do you understand?

24   A.  Yes, sir.

25   Q.  A jury of 12 people ultimately would decide your guilt or

Prepared by Laurel Dean, RPR

1    innocence.  Those 12 jurors have to decide guilt or innocence

2    by unanimous verdict.  Tell me what the word "unanimous" means.

3    A.  All 12.

4    Q.  All 12 have to agree that you're --

5    A.  Guilty.

6    Q.  Or?

7    A.  Not guilty.

8    Q.  Anything other than 12 to 0 either way is what?

9    A.  Not guilty.

10   Q.  Hung jury.  We start all over again.  Do you understand?

11   A.  Yes.

12   Q.  If you plead guilty or no contest, you irrevocably waive your

13       right to a 12-person jury and a unanimous verdict from those 12

14       people.

15   A.  Yes.

16   Q.  You also have the right to a court trial.  Tell me what's

17       encompassed in a court trial.

18   A.  Is this where the State has to prove --

19   Q.  No.  Court trial is a judge.  Judge decides.  Judge is

20       unanimous of one.  You could have a trial where I would be not

21       only the judge, but also the finder of fact to determine your

22       guilt or innocence.  Burden of proof is the same.

23           Do you understand by pleading guilty you lose your

24       opportunity to have me decide your guilt or innocence with the

25       same legal standards?  Do you understand that?

Prepared by Laurel Dean, RPR

1    A.  Yes, sir.

2    Q.  You have the right to remain silent.  Tell me what that means

3        to you.

4    A.  I do not have to speak during the trial.  My right to remain

5        silent cannot be used against me.

6    Q.  That's correct.  Is there anyone that can force you to testify

7        at a trial?

8    A.  You, sir?  No.

9    Q.  My job is to make sure you understand your right between

10       remaining silent and testifying because you can't do both at

11       the same time.  Do you understand?

12   A.  Yes, sir.

13   Q.  Do you understand your right to remain silent?

14   A.  Yes, sir.

15   Q.  If you had a trial to a jury, and you decided to remain silent

16       and not testify, there is a jury instruction that I am

17       obligated to read to the jury.  It tells the jury that

18       essentially they may not form any conclusion about your guilt

19       or innocence merely because you remain silent.  It is a

20       valuable instruction.

21            Do you understand that if you plead guilty or

22       otherwise waive your right to a jury trial, you lose that

23       opportunity to have me read that instruction to the jury and

24       have the jury follow that instruction?

25   A.  Yes, sir.

─Prepared by Laurel Dean, RPR─

1  Q. You have the right to testify and present evidence.  Tell me
2     what that means to you.
3  A. I have a right to take the oath, sit on the witness stand, tell
4     my side of the story.
5  Q. Correct.  If you plead guilty or no contest, for the most part,
6     you lose your opportunity to tell your version of the events
7     about these five counts alleged in this Information.  Do you
8     understand that?
9  A. Yes, sir.
10         MR. NELSON:  Judge, I, frankly, disagree.  I think
11     he still has the opportunity to tell his side of the story.  Not
12     as it relates to his guilt or innocence, but as to his
13     culpability at sentencing.
14         THE COURT:  I was going to get to that, Mr. Nelson.
15         MR. NELSON:  Thank you.  I know that was something
16     Darryl and I talked about, so I wanted to make sure he
17     understood.
18     BY THE COURT:
19  Q. So you understand, you do get an opportunity to tell the author
20     of the presentence investigation your version of the events,
21     but from a fact-finding perspective, your opportunity to have a
22     fact-finding, whether it's a jury or a judge, decide which
23     version that fact finder is going to believe is gone.  Do you
24     understand that?
25  A. Yes, sir.

─9─

1  Q. Testify and present evidence at trial.  What is present

2     evidence at trial?  You are limited just to your testimony.

3  A. Any other witnesses, interviews, photographs, that we may have.

4  Q. Correct.  You understand if you plead guilty, you lose your

5     opportunity to present all of your evidence as it relates to

6     guilt or innocence?  Do you understand that, sir?

7  A. Yes, sir.

8  Q. During the course of pre-trial motions, Mr. Nelson filed on

9     your behalf a motion to suppress.  Mr. Kaiser filed a motion in

10    response to that.  Mr. Kaiser's response was essentially there

11    aren't any statements.  Are there any statements that are

12    incriminating?

13             MR. KAISER:  No, Your Honor.  Not any statements

14    taken by police officers as a result of the Defendant's arrest

15    or as a result of an interrogation of him by police.

16             THE COURT:  Agreed, Mr. Nelson?

17             MR. NELSON:  That's complicated.  I might be aware

18    of some other things, so I'm not --

19             THE COURT:  Are they going to be part of the basis

20    for a finding of guilt?

21             MR. NELSON:  I understand if we had the trial next

22    week that the State, through the Attorney General's office,

23    would not be presenting any statements made by Darryl

24    Christensen that he made to law enforcement officers once this

25    investigation began.

—10—

Prepared by Laurel Dean, RPR

1          MR. KAISER:  Correct.

2          THE COURT:  So there aren't any incriminating

3    statements we have to worry about in the first instance,

4    correct?

5          MR. NELSON:  To my understanding, that's correct.

6          MR. KAISER:  Correct.

7          THE COURT:  So noted.

8    BY THE COURT:

9    Q.  Mr. Christensen, do you know what a subpoena is?

10   A.  Yes.

11   Q.  Tell me what you understand it to be.

12   A.  A legal document served by someone from law enforcement or

13       somebody that is sworn, served to a person acquiring their

14       presence at a court hearing.

15   Q.  It's a court order requiring someone to appear and either

16       testify or present evidence.

17   A.  Correct.

18   Q.  Do you understand that your constitutional right includes the

19       right to subpoena witnesses?  Do you understand that?

20   A.  Yes.

21   Q.  And it becomes my job, if you say there's someone in the

22       community or the state or in the nation that has evidence that

23       will support you in either mitigating the allegations or an

24       absolute defense, it eventually becomes my job to get those

25       folks here.  Do you understand?

Prepared by Laurel Dean, RPR

1  A.  Yes, sir.

2  Q.  If you plead guilty or no contest, you lose your opportunity to

3      require me to get those folks here by court order.  Do you

4      understand that?

5  A.  Yes, sir.

6  Q.  You have the right to confront in court the people who testify

7      against you.  What does confront in court mean?

8  A.  Question.

9  Q.  Questioning is cross-examination.  Confront in court.

10          MR. NELSON:  He will explain it to you.

11  BY THE COURT:

12  Q.  All right.  The witnesses that testify that you committed a

13      crime have to come into a public room.  Courthouse number 3, or

14      courtroom number 3, in Polk County Courthouse is a public room.

15      They have to take the oath to tell the truth, and then they

16      have to sit in the witness stand and testify in a public room

17      in front of you.  That's confront in court.  Do you understand

18      that?

19  A.  Yes, sir.

20  Q.  Do you understand why that confrontation in court is important?

21  A.  Yes, sir.

22  Q.  Tell me what you understand.

23  A.  That the accusers will be facing the accused.

24  Q.  Here's why it's important.  It is a very difficult human

25      emotion, condition, for a person to take an oath in a public

—12—

1   room and then to lie about somebody that's directly across the

2   room from them.  The configuration in this courtroom is

3   different, but people have to sit over here in the witness

4   stand, and the Defendant is either in that chair or the chair

5   that Mr. Kaiser is in.  And for a witness to tell a lie about

6   someone that is directly across the room, usually their

7   physical demeanor reveals they are not telling the whole truth.

8   Confront in court is that physical confrontation;

9   eyeball-to-eyeball confrontation.  Do you understand now?

10  A.  Yes, sir.

11  Q.  If you plead guilty or no contest, you lose that opportunity

12      for the eyeball-to-eyeball confrontation.  Do you understand,

13      sir?

14  A.  Yes, sir.

15  Q.  Cross-examination.  What is cross-examination?

16  A.  My attorney, Mr. Nelson, has the opportunity to question the

17      accusers.

18  Q.  Do you know what the purpose of cross-examination is?

19  A.  To trip them up to get the truth out of what they -- the

20      version they told Mr. Kaiser versus Mr. Nelson's questions.

21  Q.  Some of the purposes include to show ill will.  They just don't

22      like a defendant, so they, in this instance, presumably five

23      ladies previously incarcerated in the Polk County jail, got

24      together, and they didn't like you, so they concocted this

25      story, and then it becomes Aaron Nelson's opportunity to cross

1   examine them and show their story is improbable for various

2   reasons.  Ill will.  Various reasons.  That's one of the

3   purposes.  To confront a witness with an inconsistent

4   statement.  Mr. Nelson has all that stuff.  That's another

5   purpose of cross-examination, and various other purposes.

6          Oftentimes, the easiest example is a witness

7   testifies that a stop-and-go light was red, and four of the

8   witnesses say, No, it was green.  And then you confront the

9   witness that says it was red with those other statements and

10  other evidence.  That's cross.  Do you understand?

11  A.  Yes, sir.

12  Q.  Aaron Nelson is a very good lawyer.  Very good lawyer.  I've

13  seen Aaron cross-examine witnesses.  He is a very talented guy.

14  If you plead guilty or no contest, you lose the opportunity to

15  have your very talented lawyer exercise his considerable skill

16  for your benefit.  Do you understand that?

17  A.  Yes, sir.

18  Q.  Do you have any questions about those constitutional rights?

19  A.  No, sir.

20  Q.  All right.  The burden of proof is upon the State of Wisconsin

21  to prove your guilt by proof beyond a reasonable doubt.  The

22  burden of proof is outlined on various jury instructions.  This

23  particular burden is in 140.  It's the burden of proof for all

24  criminal cases.  Reasonable doubt is defined in two paragraphs.

25  I'll read both paragraphs in order, and we will talk about it.

Prepared by Laurel Dean, RPR

1    First paragraph, "The term reasonable doubt means a

2    doubt based upon reason and common sense.  It is a doubt for

3    which a reason can be given arising from a fair and rational

4    consideration of the evidence or lack of evidence.  It means

5    such a doubt as would cause a person of ordinary prudence to

6    pause or hesitate when called upon to act in the most important

7    affairs of life."

8    Any questions about that paragraph?

9  A.  No, sir.

10  Q.  Let me explain it to you.  Even though you don't have any

11    questions, there's a great deal of information in there.

12    Reasonable doubt means a doubt based upon reason and common

13    sense.  Reason.  Common sense.  Reason and common sense is the

14    most frequently expressed characteristic, human characteristic,

15    that we want jurors to apply in every criminal case that we

16    have.  Criminal.  Civil.  Children's.  Whatever.  We want

17    jurors to exercise reason and common sense.  Any questions

18    about that?

19  A.  No, sir.

20  Q.  Do you have an understanding what reason and common sense is?

21  A.  Yes, sir.

22  Q.  Second sentence, a doubt for which a reason can be given.  That

23    tells the jury to debate.  Make sure that the State has

24    presented enough evidence.  Debate the issues.  Consider these

25    things.  I worry if we send a jury back, and they are knocking

—15—

1    on the door because they are back in 10 minutes, did they

2    debate this.  Right, wrong, guilty or not guilty, did they

3    debate.  That's what that sentence tells them to do.

4           If they come back in 10 or 12 minutes, well, then we

5    have to take their plea, whichever plea it is -- or their

6    verdict.  But that's what we have to do.  Any questions about

7    that phrase?

8  A.  No, sir.

9  Q.  Reason can be given arising from a fair and rational

10    consideration of the evidence.  Fair and rational.  Fairness.

11    That's the other theme among all jury instructions of every

12    type.  Fairness.  If we selected a jury next Monday morning, I

13    probably wouldn't be on the bench all that long.  I had thought

14    through how I was going to do this.  I was going to address the

15    entire panel, and I was going to stress the jury instruction

16    and fairness and rational consideration of the evidence.  I was

17    not going to take Mr. Nelson's suggestion that I -- actually

18    was from a federal judge in Iowa.  I wasn't going to tell them

19    that; but I was going to talk about the burden of proof.

20           Fair and rational consideration of the evidence.

21    Fairness.  For the State.  For the Defendant.  To the victims.

22    Alleged victims.  Whatever we want to characterize those folks.

23    Fairness.

24  A.  Yes, sir.

25  Q.  Rational consideration of the evidence.  You've heard the term

———Prepared by Laurel Dean, RPR———

1      connecting the dots, I trust?

2  A.  Yes, sir.

3  Q.  We are going to talk about the elements of this offense.  Each

4      element has -- has to have evidence that supports every element

5      for every charge.  Connecting the dots.  There has to be

6      evidence for each one of those.  Rational consideration.

7      Rationality connecting the dots.  Do you understand?

8  A.  Yes, sir.

9  Q.  Consideration of the evidence or lack of evidence.  And that

10      lack of evidence phrase ties into the prior sentence of 140,

11      the jury instruction.  It reads to the jury, "If you can

12      reconcile the evidence upon any reasonable hypothesis

13      consistent with the Defendant's innocence, you should do so and

14      return a verdict of not guilty."

15          That's a command sentence to the jury that if there

16      isn't a rational consideration, a rational connection of the

17      evidence and the elements, the command result is not guilty.

18      Do you understand that?

19  A.  Yes, sir.

20  Q.  Sort of how all of these fit together.  Any questions about

21      that?

22  A.  No, sir.

23  Q.  It means such a doubt as would cause a person of ordinary

24      prudence.  Ordinary prudence.  I would ask questions about

25      people's perception, about their beliefs.  Is there anyone that

———17———

Prepared by Laurel Dean, RPR

1    believes they may not serve on this jury because they have a

2    personal or biblical prohibition about judging others.

3    Ordinary prudence.  We don't want hyper-technical folks.  We

4    don't want hyper-liberal folks.  We want people of ordinary

5    prudence.  Good citizens from your community, Polk County.  Do

6    you understand that?

7  A.  Yes, sir.

8  Q.  Pause or hesitate when called upon to act in the most important

9    affairs of life.  One of the real challenges about selecting a

10    jury on December 7th for a trial that ends on December 18th is

11    that if we had gone through the trial -- and we can still do

12    that because I haven't called anything off yet.  On the 18th,

13    when a jury determines your guilt or innocence, that has to be

14    the most important thing on their mind.  Okay?

15        Let's be common sensical here.  December 18th.  A lot

16    of folks might have something on their mind besides deciding

17    guilt or innocence.  It's five days before Christmas.  So the

18    most important affairs of life stresses to that panel, This is

19    the deal, can't be worried about Christmas and kids and

20    grandkids and anything else.  You decide the guilt and

21    innocence of a Defendant.  Most important affairs.  That's the

22    purpose of that phrase.  Do you understand?

23  A.  Yes, sir.

24  Q.  If you plead guilty or no contest, you give up the opportunity

25    to have the jury follow that language from a jury instruction

—18—

───── Prepared by Laurel Dean, RPR ─────

1      and apply it in your particular case.  Do you understand?

2   A. Yes, sir.

3   Q. Any questions about that?

4   A. No, sir.

5   Q. Any questions about that meaning of reasonable doubt?

6   A. No, sir.

7   Q. The jury instruction also defines what a reasonable doubt is

8      not.  That's another three sentences, and I'll read those to

9      you.

10          "A reasonable doubt is not a doubt which is based on

11     mere guesswork or speculation.  A doubt which arises merely

12     from sympathy or from fear to return a verdict of guilt is not

13     a reasonable doubt.  A reasonable doubt is not a doubt such as

14     may be used to escape the responsibility of a decision."

15     It's not based on guesswork or speculation.  Reasonable doubt

16     requires the affirmative application of reason and common sense

17     and a fair and rational consideration of evidence.  Do you

18     understand?  It's not Ouija boards.  It's not drawing straws.

19     It's not flipping coins.  Do you understand?

20  A. Yes, sir.

21  Q. It's not sympathy or fear.  They cannot look at you and your

22     family -- and if you testified, I would guess that Mr. Nelson

23     would tell that jury about your background in the community,

24     about your wife, kids, your family.  That's not what this is

25     about.  They can't say, We are going to feel sorry for

───── 19 ─────

Prepared by Laurel Dean, RPR

1   somebody, and thereby find this particular person not guilty.

2   Do you understand?

3   A. Yes, sir.

4   Q. And it's not fear.  They can't fear for what the consequences

5   might be.  They would not know the specific consequences,

6   potential penalties, but they can't say, We are afraid for

7   Mr. Christensen, or the other folks, and therefore we are going

8   to find them not guilty.  Do you understand that?

9   A. Yes, sir.

10  Q. A reasonable doubt is not a doubt such as may be used to escape

11  the responsibility of a decision.  That ties into that third

12  sentence from the first paragraph.  Most important affairs of

13  life.  Jurors can't duck.  Jurors can't duck a tough decision.

14  They can't just simply say, We are not going to make this

15  decision, we are not going to find a person guilty because it's

16  a tough deal.

17       In your case, this case, when the jury came back, I

18  could predict that at least three or four of those folks would

19  have tears in their eyes when they walk through the door

20  because it's a responsible decision.  Do you understand?

21  A. Yes, sir.

22  Q. They cannot duck because it's a tough decision.  Do you

23  understand that?

24  A. Yes, sir.

25  Q. Any questions about either of the definitions of reasonable

——— Prepared by Laurel Dean, RPR ———

1       doubt?  What it is?  What it isn't?

2  A.  No, sir.

3  Q.  Have you talked with Mr. Nelson about a reasonable doubt?

4  A.  Yes, sir.

5  Q.  Do you have any questions of him before we go further?

6  A.  No, sir.

7  Q.  The presumption of innocence.  Did you read that article that

8       Mr. Nelson sent to me from I think it was Judge Bennett?

9  A.  No, I did not.

10  Q.  Judge Bennett is a retired federal judge I think from the

11      northern district of Iowa.  He spoke November 11th at the state

12      judicial college, and he talked about those sort of things, how

13      he selects a jury in the federal court.  He expresses to the

14      panel, before people are seated in the box, the presumption of

15      innocence and what it means.

16          And here's what it means.  As you sit there this

17      moment, the law tells me that there hasn't been any evidence

18      against you about these crimes.  If Mr. Kaiser said to me,

19      Judge, I want you to make a determination as to the guilt or

20      innocence on Mr. Christenson solely on the basis of the file,

21      it would take me as long as it takes me to say not guilty as to

22      five counts.  That's how long it would be because the law

23      presumes that you're innocent.  The State has the entire burden

24      to prove your guilt.  You don't have to prove anything at a

25      trial.  Do you understand that?

Prepared by Laurel Dean, RPR

1   A.  Yes, sir.

2   Q.  I cannot find you guilty, and I will not find you guilty until

3       either a jury returns a verdict telling me that you are or that

4       you admit the various crimes.  Not only the crimes that are

5       outlined on the form, but the facts to support those crimes.

6       Only then is the presumption overcome.  And then the judge has

7       to make a determination as to your guilt or innocence.  Do you

8       understand that?

9   A.  Yes, sir.

10  Q.  Anything short of that, the presumption protects you, and you

11      would be found not guilty.  Do you understand?

12  A.  Yes, sir.

13  Q.  Any questions about the presumption of innocence whatsoever?

14  A.  No, sir.

15  Q.  I'm going to reread what I have always considered the most

16      important sentence in the burden of proof/presumption of

17      innocence instruction.  I read one.  "If you can reconcile the

18      evidence upon any reasonably hypothesis consistent with the

19      defendant's innocence, you should do so and return a verdict of

20      not guilty."

21          Pretty simple sentence.  What it says to the jury is

22      if there's a reasonable conclusion that can be drawn consistent

23      with innocence, you must -- you should find the defendant not

24      guilty.  I'm paraphrasing.  Reasonable conclusion.  That's the

25      presumption of innocence.  That's how high the burden of proof

—Prepared by Laurel Dean, RPR—

1    is on the State.

2         When I was a defense attorney, and I wasn't a

3    prosecutor before I became a judge, I used that sentence.  The

4    DA at the time was Mr. Bitney.  He is a judge.  Here's what he

5    always read, and this is important as well:  While it is your

6    duty to give the defendant the benefit of every reasonable

7    doubt, you are not to search for doubt.  You are to search for

8    the truth.  That's how you fit them all together.

9         If you plead guilty or no contest, you lose the

10   opportunity to have Mr. Nelson argue the case to the jury that

11   there are reasonable hypothesis consistent with your innocence

12   and then suggest to them that the command of that instruction

13   is, find this defendant not guilty.  Do you understand that?

14   A.  Yes, sir.

15   Q.  If you plead guilty or no contest, you lose that opportunity,

16       irrevocable.  Do you understand?

17   A.  Yes, sir.

18   Q.  We have to talk about the elements of these offenses.  We have

19       to talk about the factual basis.  Before I do that, you're

20       represented by Aaron Nelson.  I appointed Aaron Nelson

21       consistent with State versus Dean to represent you as your

22       lawyer.  You recollect all of that?

23   A.  Yes, Your Honor.

24   Q.  Are you satisfied with Mr. Nelson's representation?

25   A.  Yes, sir.

—23—

Prepared by Laurel Dean, RPR

1  Q. Now, you are going to have to repay Polk County for his

2     services, but I appointed Mr. Nelson for a couple of reasons.

3     Number one, you requested Aaron Nelson.  That's how this was

4     sent to me, via court; is that correct?

5  A. Yes, sir.

6  Q. And Mr. Nelson, you had retained him before I was assigned to

7     the case, and perhaps before the initial appearance; is that

8     correct?

9  A. Yes, sir.

10             MR. NELSON:  What was the last question, Judge?

11             THE COURT:  If his family had retained you before

12     the initial appearance.

13             MR. NELSON:  Darryl doesn't know necessarily the

14     definition of the word "retained."  Darryl and I had been

15     consulting.  I had been giving him advice.  We had met several

16     times.  There had been no fee agreement.  There had been nothing

17     along those lines that had gone on, so I was essentially acting

18     as an attorney, but I said, Once you get charged, we need to

19     sort this out financially.

20     BY THE COURT:

21  Q. Let me rephrase.  You chose Aaron Nelson to provide legal

22     services to you before you were charged with these crimes; is

23     that correct?

24  A. Yes.

25  Q. Are you satisfied with his representation?

1   A.  Yes, sir.

2   Q.  Has he been available when you needed to talk to him?

3   A.  Yes, sir.

4   Q.  Have you asked him all the questions you think are important to

5       ask your lawyer before submitting the plea?

6   A.  Yes, sir.

7   Q.  Do you need any more time with Mr. Nelson before I take your

8       plea and move on to these other issues that relate specifically

9       to the Information and your plea?

10  A.  No, sir.

11  Q.  It's contemplated you are going to plead guilty to five counts

12      of an amended Information.  Each count charges second-degree

13      sexual assault, sexual contact or intercourse by a correctional

14      staff member.  Do you understand that?

15  A.  Yes, sir.

16  Q.  The elements of those offenses, elements -- which metaphor

17      should I use?  Connecting the dots.  We talked about that

18      previously.  There are three elements to these offenses.

19      First, the State must prove that you were a correctional staff

20      officer.  Correctional staff officer means an officer, an

21      individual, who works at a correctional institution.  A jail is

22      a correctional institution.  Do you understand the element?

23  A.  Yes, sir.

24  Q.  Count 2 alleges that -- strike that.  Element two says that the

25      Defendant -- the State must prove that the Defendant had sexual

Prepared by Laurel Dean, RPR

1      intercourse or contact with persons confined to the

2      correctional staff officer, confined in the correctional

3      facility.  Do you understand that?

4   A.  Yes, sir.

5   Q.  Third element, the State must prove that the person that you

6      had intercourse or contact with was confined to a correctional

7      institution.  In this instance, the Polk County Jail.  Do you

8      understand that?

9   A.  Yes, sir.

10   Q.  Sexual intercourse is defined in the jury instruction.  Means

11      any intrusion, however slight, by any part of a person's body

12      or of an object into the genital or anal opening of another.

13      Emission of semen is not required.  Do you understand the

14      definition of intercourse?

15   A.  Yes, sir.

16   Q.  Sexual contact is an intentional touching of the breast,

17      buttocks, groin, vagina or pubic mound of one of the named

18      victims by the Defendant.  The touching may be of the breast,

19      buttocks, groin, vagina, or pubic mound directly, or it may be

20      through clothing.  Do you understand that definition?

21   A.  Yes, sir.

22   Q.  Do you understand the elements of the offense?

23   A.  Yes, sir.

24   Q.  The State must prove each element for each crime.  They must

25      prove -- since there are five counts, they must prove three

1          elements five times, or 15 total instances, proving those

2          elements.   Do you understand that?

3    A.  Yes, sir.

4    Q.  First of all, were you a correctional staff officer?

5    A.  Yes, sir.

6    Q.  Tell me how you were a correctional staff officer.

7    A.  I was hired in 1995 as a jailer/dispatcher.

8    Q.  For who?

9    A.  Polk County Sheriff's Department.

10   Q.  And you worked specifically in the Polk County Jail?

11   A.  Correct.

12   Q.  And you worked as a jailer, and that being you controlled which

13         prisoners were where and when and those sort of things?

14   A.  Yes, sir.

15   Q.  And that you admit that you were a correctional staff officer

16         between August 12th -- August of 2012 and October 30th of 2014?

17   A.  Yes, sir.

18   Q.  And you were a correctional staff officer between September 8,

19         2014, and September 22nd, 2014?

20   A.  Yes, sir.

21   Q.  Again, between August 28, 2014, and November 12, 2014?

22   A.  Yes, sir.

23   Q.  August 27th to October 8, 2014?

24   A.  Yes, sir.

25   Q.  November 3rd, 2011, to January 22nd, 2014?

———Prepared by Laurel Dean, RPR———

1   A.  Yes, sir.

2   Q.  You were specifically employed and an employee of Polk County,

3       Wisconsin; is that correct?

4   A.  Correct.

5   Q.  Were you a supervisor or just a correctional officer?

6   A.  I was a jail sergeant for two years, but that was back in the

7       early 2000s.

8   Q.  But not during these time periods?

9   A.  No, sir.

10  Q.  All right.  As to count 1, did you have sexual intercourse with

11      JKJ          :?

12  A.  Yes, sir.

13  Q.  Tell me what you did.  Tell me what was the form of intercourse

14      that you had with Ms.  JKJ

15          MR. NELSON:  Hold on a second.  Is that count 1?

16      Correct, Judge?

17      BY THE COURT:

18  Q.  Count 1.  JKJ.

19  A.  I inserted my fingers into the vaginal area of Ms.  JKJ .

20  Q.  Do you agree that constitutes sexual intercourse pursuant to

21      the definition of the jury instruction?

22  A.  Yes, sir.

23  Q.  Do you remember the specific date that you engaged in that

24      behavior with Ms.  JKJ

25  A.  No, sir.

———Prepared by Laurel Dean, RPR———

1     THE COURT:  Counsel, help me out.  What day?

2     MR. NELSON:  Did you do it sometime between August

3  of 2012 and October of 2014?

4     THE DEFENDANT:  Yes, sir.

5     THE COURT:  Satisfied that that constitutes

6  sufficient time, date, and place?

7     THE DEFENDANT:  Yes, sir.

8     THE COURT:  Mr. Nelson?

9     MR. NELSON:  Yes, sir.  That is the dates from the

10  charging document.

11  BY THE COURT:

12  Q. And between August 12th -- strike that.  August of 2012 and

13     October 30th of 2014, was Ms.          confined to the Polk

14     County Jail as a correctional institution?

15  A. Yes, sir.

16     THE COURT:  Is there otherwise a factual basis as to

17  count 1?  Mr. Kaiser?

18     MR. KAISER:  Yes.

19     THE COURT:  What is it?  Facts contained in the

20  complaint?

21     MR. KAISER:  They are.

22     THE COURT:  Mr. Nelson, stipulate to the facts in

23  the complaint?

24     MR. NELSON:  I agree that the facts in the complaint

25  support the charge, between those facts and Mr. Christensen's

———29———

—Prepared by Laurel Dean, RPR—

1    statements.

2              THE COURT:  The Court finds there is a factual basis

3    for a conviction as to count 1.  It's based upon the Defendant's

4    admissions and the facts as relevant to count 1.

5    BY THE COURT:

6    Q.  Count 2, did you have sexual contact with : _SER_

7        between September 8, 2014, and September 22nd, 2014, in the

8        Polk County Jail?

9    A.  Yes, sir.

10   Q.  Tell me what you did.

11   A.  Touched Inmate _SER_'s breast area.

12   Q.  I didn't hear you.

13   A.  Touched Inmate _SER_: breast area.

14   Q.  Was it sexual contact or sexual intercourse?

15   A.  Contact.

16   Q.  And was Ms. _SER_ confined to the Polk County Jail between

17       those two dates?

18   A.  Yes, sir.

19   Q.  Do you remember the specific date or incident?

20   A.  No, I don't.

21             THE COURT:  Stipulate to a basis?

22             MR. KAISER:  Your Honor, the only other portion of

23   that element is that the Defendant needs to be advised that he

24   is admitting that that sexual contact was done by him with the

25   intent to become sexually aroused or gratified.

—Prepared by Laurel Dean, RPR—

1    BY THE COURT:

2    Q.  Is that true?

3    A.  Yes, sir.

4    Q.  Do you understand the additional requirement, that there has to

5        be -- your purpose in touching was for sexual arousal?

6    A.  Yes, sir.

7    Q.  Was it?

8    A.  Yes, sir.

9              THE COURT:  The Court finds there's a factual basis

10       for a conviction as to count 2.  It's based upon the facts as

11       contained in the complaint and the admissions by the Defendant

12       as they relate to count 2.

13   BY THE COURT:

14   Q.  Count 3.  Between August 28, 2014, and November 12, 2014, did

15       you have intercourse with        S ALM

16

17   A.  Yes, sir.

18   Q.  Tell me what you did.

19   A.  I inserted my fingers into her vagina.

20   Q.  And was   S ALM   confined to the Polk County Jail between

21       those dates, times, and places when you engaged in that

22       behavior?

23   A.  Yes, sir.

24             THE COURT:  Is there otherwise a factual basis?

25             MR. KAISER:  Yes.

—31—

Prepared by Laurel Dean, RPR

1        THE COURT:  Agreed?

2        MR. NELSON:  Agreed, Judge.

3        THE COURT:  The Court finds there's a factual basis

4    for a conviction as to count 3 as alleged in the complaint.

5    It's based upon the admissions from the Defendant, as well as

6    the facts as relevant contained in the criminal complaint.

7    BY THE COURT:

8    Q.  Count 4, did you have sexual intercourse with   SLC

9

10   A.  Yes, sir.

11   Q.  Between August 27, 2014, and October 8, 2014?

12   A.  Yes, sir.

13   Q.  Between those dates, was Ms.  SLC  confined to the Polk County

14   Jail?

15   A.  Yes, sir.

16   Q.  And you were working as a jailer during that -- those relevant

17   times?

18   A.  Yes, sir.

19        THE COURT:  Is there otherwise a factual basis?

20   Stipulate?

21        MR. KAISER:  I don't think you asked him what act he

22   did.

23        THE COURT:  He inverted his fingers into her vagina

24   I think is what he said.

25        MR. KAISER:  Yes.  Now there's a factual basis.

—32—

Prepared by Laurel Dean, RPR

1        THE COURT:  Mr. Nelson?

2        MR. NELSON:  I agree there's a factual basis.

3        THE COURT:  The Court finds there's a factual basis

4   for a conviction as to count 4.  Factual basis is the facts

5   admitted by the Defendant and those contained in the criminal

6   complaint as relevant.

7   BY THE COURT:

8   Q.  As to count 5, between November 3, 2011, and January 22nd,

9       2014, did you have sexual intercourse with   MJJ

10

11  A.  Yes, sir.

12  Q.  Tell me what you did.

13  A.  I inserted my fingers into her vagina.

14  Q.  And was   MJJ   confined in the Polk County Jail, and you

15      were employed during those periods of time when this activity

16      occurred?

17  A.  Yes, sir.

18        THE COURT:  Is there otherwise a factual basis,

19   Mr. Kaiser?

20        MR. KAISER:  Yes.

21        MR. NELSON:  Agreed.

22        THE COURT:  The Court finds there's a factual basis

23   for count 5.  It's based upon the admissions by the Defendant,

24   as well as the facts contained in the criminal complaint.

25   BY THE COURT:

—33—

Prepared by Laurel Dean, RPR

1    Q. Maximum penalty for each offense, again, Mr. Christensen, is a

2       $100,000 fine, 40 years of imprisonment.  25 years of

3       confinement in a correctional facility, 15 years on what's

4       called extended supervision.  Do you understand the maximum

5       penalty for each offense?

6    A. Yes, sir.

7    Q. Are you prepared to submit your plea today to those charges?

8    A. Yes, sir.

9    Q. I'm about to take your plea.  This is pretty much the last

10      opportunity you have to change your mind.  Do you want to have

11      any more opportunity to chat with Mr. Nelson or anyone else in

12      the world before I take your plea?

13   A. No, sir.

14   Q. Are you sure?  I'll give you every opportunity to talk to

15      Mr. Nelson or anybody else you want to talk to, within reason.

16              MR. NELSON:  Can I have a couple of minutes?

17              THE COURT:  Sure.  We are in recess.  Room is across

18      the hall, Mr. Nelson.

19              (Short break taken.)

20   BY THE COURT:

21   Q. All right.  You've had an opportunity to chat with Mr. Nelson.

22      Ready to go forward with your plea?

23   A. Yes, sir.

24              THE COURT:  The Court finds the Defendant

25      understands his rights and freely and intelligently waives

1    those.  The Court finds there's a factual basis for all the

2    elements as it relates to counts 1 through 5 of the amended

3    Information.

4    BY THE COURT:

5    Q.  Count 1, second-degree sexual assault, contact or intercourse

6        by a correctional staff member.  Maximum penalty, $100,000,

7        40 years imprisonment.  What's your plea?

8    A.  Guilty.

9    Q.  Upon your plea of guilty, the Court finds you guilty and orders

10       a Judgment of Conviction as to count 1.  Count 2, second-degree

11       sexual assault, contact or intercourse by a correctional staff

12       member.  Maximum penalty, $100,000, 40 years imprisonment.

13       What's your plea?

14    A.  Guilty.

15    Q.  Upon your plea of guilty, the Court finds you guilty and orders

16       a Judgment of Conviction as to count 2.  Count 3, second-degree

17       sexual assault, contact or intercourse by a correctional staff

18       member.  Sexual contact or intercourse.  Again, the maximum

19       penalty, $100,000, 40 years imprisonment.  What's your plea?

20    A.  Guilty.

21    Q.  Upon your plea of guilty, the Court finds you guilty and orders

22       a Judgment of Conviction as to count 3.  Count 4, second-degree

23       sexual assault, sexual contact or intercourse by a correctional

24       staff member.  Again, the maximum penalty is a $100,000 fine,

25       40 years imprisonment.  What is your plea?

Prepared by Laurel Dean, RPR

1    A.  Guilty.

2    Q.  Upon your plea of guilty, the Court finds you guilty and

3        directs a Judgment of Conviction to count 4.  Count 5,

4        second-degree sexual assault, sexual contact or intercourse by

5        a correctional staff member.  Again, maximum penalty, $100,000,

6        40 years imprisonment.  What is your plea?

7    A.  Guilty.

8    Q.  What is that?

9    A.  Guilty.

10             THE COURT:  The Court accepts the plea, finds the

11   Defendant guilty as to count 5.  The Court directs the

12   Department of Corrections to prepare a presentence

13   investigation.  Agent need not appear unless requested by the

14   Defendant or the State.

15             MR. KAISER:  Your Honor, we are also asking the

16   agent be directed not to make a sentencing recommendation to the

17   Court.

18             THE COURT:  So noted.

19             MR. KAISER:  Thank you.

20             THE COURT:  Shannon, would you let Jobie know that

21   should be on the PSI?

22             MR. NELSON:  Judge, regarding the Department of

23   Corrections, I'm assuming they are going to sort out what county

24   does that?  Is that something Your Honor wants to weigh in on?

25             THE COURT:  Polk County will do that.  The agency

—Prepared by Laurel Dean, RPR—

1    will decide who does that.  I don't pick the agent that does the

2    PSI.

3                MR. NELSON:  I'm not asking you to pick the agent.

4    I just know he is Polk County.  There has been talk about Polk

5    County, and is it going to be the Polk County Department of

6    Corrections, or is it going to be the Department of Corrections

7    from a different county, or are you just deferring to the state

8    agency to make that decision?

9                THE COURT:  I defer to the agency, unless you can

10   show me there's a problem.

11               MR. NELSON:  No.  I just wanted to know one way or

12   the other.  I expect they will farm it out, but I don't know.

13               THE COURT:  Anything more, Mr. Nelson?

14               MR. NELSON:  Not on the state PSI.

15               THE COURT:  Are you going to do an independent?

16               MR. NELSON:  I was going to ask Your Honor --

17               THE COURT:  Granted.

18               MR. NELSON:  -- for the funds, because that's

19   something --

20               THE COURT:  Granted.

21               MR. NELSON:  Okay.

22               THE COURT:  Who are you going to get it from?

23               MR. NELSON:  I'm going to ask Mr. Tupper, who Your

24   Honor is familiar with.  He did the PSI in the Depies case we

25   did.  He was also -- my understanding is he was a counselor or

1   therapist at Sand Ridge Prison where they treat sexual

2   offenders, so I think he would be especially appropriate in a

3   case involving a sex offense, so that's why I'm going to be

4   asking Mr. Tupper.

5          THE COURT:  How much is it going to cost?

6          MR. NELSON:  In the past, Mr. Tupper has asked for a

7   $5,000 flat fee in order to do these.  My intent was -- and I

8   talked to Darryl about this.  He knew that, and he understands

9   he is going to be billed for that.  I've told him I think it's

10  important enough to do that.

11         Starting December 1st, I'm not going to bill any of

12  my time, that my time will be pro bono from December 1st on

13  because I think Mr. Tupper's report is valuable and something

14  that he needs to do.  And I don't want him to be in a financial

15  situation where he can't, and I didn't want Your Honor to be in

16  a concern he is now going to be racking up attorney's fees and

17  that, so today is my last day I'm going to bill Mr. Christensen.

18         THE COURT:  You make that business choice yourself.

19         MR. NELSON:  I understand.

20         THE COURT:  But I will approve your attorney fees

21  through sentencing.  I expect to see that.

22         MR. NELSON:  The reason I say that, Judge, is

23  because I know I'm asking Your Honor basically, say, put $5,000

24  up so I can get our own PSI in the hopes Mr. Christensen pay

25  that back.  Part of it is there's not going to be more than the

—38—

─ Prepared by Laurel Dean, RPR ─

1   $5,000 that's going to come forward that's going to be on the

2   bill for this, so I'm using it both because of Mr. Christensen

3   and what I've told him, as well as what I hope is something to

4   convince Your Honor to say, Okay, I'll do this.

5           I know this, Judge; I'll ask Mr. Tupper to reduce his

6   fee to $4,000.  There's a Lisa Andreas out of Madison who I

7   think is equally qualified to write PSIs.  I've hired her in the

8   past.  She charges $4,000.  Mr. Tupper, in this case, because of

9   his experience regarding sex offenders, that's why I wanted to

10  pick him and the different money.  I don't know if he is willing

11  to reduce his fee because of this situation.

12          THE COURT:  Mr. Nelson.

13          MR. NELSON:  Yes, Your Honor.

14          THE COURT:  I expect that you will bill for your

15  services from now until sentencing, regardless of what the

16  expert witnesses are.  I do not want to be faced with a

17  post-conviction motion where someone says they didn't get

18  adequate representation from plea until sentencing because there

19  was no compensation to be coming forward, so that's not an

20  option.  Do you understand me?  Yes would be appropriate,

21  Mr. Nelson.

22          MR. NELSON:  I don't want to --

23          THE COURT:  Mr. Nelson, you're going to bill.  You

24  get the estimates for the independent PSI.  Unless the State

25  tells me they have a huge problem with me ordering the Polk

─39─

Prepared by Laurel Dean, RPR

1   County taxpayers to pay this, which I doubt that the State will

2   object, you get the estimate for what it's going to cost, tell

3   me why you need it, and I'll approve it.  This case is serious

4   enough because of the consequence.

5           MR. NELSON:  Okay.

6           MR. KAISER:  Judge, the only other thing is Counsel

7   and I discussed, he is going to direct whoever prepares his

8   defense presentence to also not put a sentencing recommendation

9   in there.

10          MR. NELSON:  That's correct.

11          THE COURT:  That's appropriate.

12          The Court is going to revoke bail.  Mr. Nelson, I

13  know you want to be heard on that.

14          MR. NELSON:  Yes, Judge.  Mr. Christensen has been

15  free during the pendency of this case.  It was -- initially, the

16  investigation began in October.  He was not charged until April.

17  During that entire time he was present.  He showed up.  He met

18  me.  I had many conversations with Mr. Kaiser, pre-charging

19  regarding this.  He accepted service of this.  He has made all

20  of his Court appearances.  I think the purposes of bail is to

21  assure somebody's appearance, and he has always done that.

22          I don't think the fact he has today admitted to this

23  in Court changes the likelihood of his showing up.  I don't

24  think his pleading guilty to it in any way changes the

25  protection of the public in the sense he is not in a leadership

1  position.  He is not in a correctional facility position.  He

2  doesn't work there.  He is not having contact with anybody in

3  that capacity in any way whatsoever, so I don't believe that,

4  from a rational basis and a common sense basis, it in any way

5  changes his likelihood of showing up or the protection of the

6  public.

7          His wife is here.  His wife -- I know Your Honor had

8  some background regarding some of their struggles that, not

9  surprisingly, comes up as a result of this case.  She is still

10  here and supportive.  He still has three children who I'll call

11  young.  I think two are teenagers.  One is 21.  The 21-year-old

12  is due to graduate from college in the next couple of weeks.

13  And part of his thinking in all of this, a large part of it, was

14  the State's recommendation that bond not be revoked and that he

15  get the opportunity to essentially sort out his affairs at home

16  with his family, to have the one last Christmas that he can with

17  his family.  I don't think it changes his ability.

18          And then, lastly, I think it also impacts his ability

19  to cooperate with that presentence investigation report.  I

20  think it would save him money and the taxpayers of Polk County

21  on the court appointment money if he is able to spend his time

22  driving to Madison to meet with the person who is preparing that

23  and to go through with those tests, which I think the Department

24  of Corrections now doesn't do.  Whether it be a COMPAS, which

25  may or may not be applicable here, but Your Honor may be

Prepared by Laurel Dean, RPR

1    familiar with the SR99, which is typically used in sex offender

2    cases, and that's something he wanted to get accomplished.  And

3    I think it's more likely to get accomplished if he continues to

4    remain on bond so he can drive off to Madison.

5         I understand that this is unusual in that this is a

6    sentence in which there's going to be an agreed-upon

7    recommendation in which somebody goes to prison.  And I'll tell

8    you, in my 20 years, this is the first time I've had a client

9    who has willingly said, Yes, I agree when we come to sentencing,

10   I'm going to say, send me to prison for a certain length of

11   time.  And when that person says that, they are not in an orange

12   jumpsuit.  He is free.  All right?  But I think that also speaks

13   very highly of Mr. Christensen in the sense that he is now a

14   free person, and he has always shown up.  He has continued to

15   show up.  And even here with his freedom, he has shown up today

16   and said the words "guilty" five times.  I don't think there's

17   anything about that that's going to change just because he has

18   done that in the next 60 days until the sentencing is done.

19        So I think, to some extent, it prejudices his

20   ability to adequately prepare for his sentencing if he is in

21   custody because there's a lot of attorney/client communication

22   that goes on.  Probably as much so during that time period as

23   there does otherwise.  And I'll just frankly tell you, I'll do

24   whatever I need to do, but it's much more difficult for me to

25   communicate with clients when they are in jail, and I have to

— Prepared by Laurel Dean, RPR —

1   take the extra time to drive to them.

2         And then we have the last complication, which is

3   this is a Polk County case.  He is a former Polk County Jailer.

4   There's no arrangements that I'm aware of for Polk County Jail

5   to house him there, and I'm not sure if they want him there.

6   Maybe it's not their choice, but I think it puts everybody in a

7   difficult position.  Difficult doesn't mean impossible, but I

8   don't think it's good for this case, good for Polk County, good

9   for Darryl Christensen to have his bond revoked and have him

10  placed in the Polk County Jail the next 60 days before

11  sentencing.

12        THE COURT:  Do you take any position, Mr. Kaiser?

13        MR. KAISER:  We indicated to the defense we would

14  not object to the Defendant remaining on bail.

15        THE COURT:  Bail is revoked.  The reason I'm

16  revoking bail, first of all, the circumstances have changed.

17  The Defendant is no longer protected by the presumption of

18  innocence.  I found him guilty because he pled guilty.  There's

19  a factual basis for five counts of second-degree sexual assault.

20  The Judgment of Conviction will be entered probably within the

21  hour by the Clerk of the Circuit Court.  There's a substantial

22  change in the status of this case.

23        With respect to cost and convenience, that doesn't --

24  that is not a concern of mine.  Not in the least bit is the cost

25  a concern of mine, that it might cost the taxpayers of Polk

—43—

1   County more money on a Dean appointment to find where

2   Mr. Christensen is housed and go there and do the preparation.

3   It's not a concern of mine that the expert witnesses that the

4   defense may wish to hire need to drive somewhere to do the

5   interviewing and the testing.  That's not my concern.

6            There is significant social science that tells us

7   punishment is more effective when it is needed out as shortly

8   after the bad conduct as possible.  In our criminal justice

9   system, it's not appropriate, that we can do that as soon after

10  the crime is committed.  My metaphor here is always my children.

11  When they write on the wall -- now it would be my

12  grandchildren -- with a color crayon, in our household they got

13  scolded.  Either time-out or a swat on the butt with a newspaper

14  and told not to do that again.  The mischief and the penalty

15  were immediate, and social science tells us that that's

16  appropriate, and that's appropriate in this case.  The Defendant

17  is no longer innocent.  There's no longer any presumption of

18  innocence.  He is guilty.  It's important for him, for society,

19  for the punishment portion of this, to commence soon.

20           Most importantly, however, within the last six

21  weeks, the Defendant attempted to take his own life.  He suffers

22  from depression and post-traumatic stress disorder.  I'm going

23  to revoke bail to protect him from himself, in large part.

24  That's what jails presumably are, and that's what they should

25  have been for the people that were confined to the Polk County

─ Prepared by Laurel Dean, RPR ─

1    Jail that he victimized.  I'm no longer going to be politically

2    correct.  He victimized them.  He was a predator.  People -- it

3    was his obligation to protect.

4              I'm remanding him to the Washburn County Sheriff's

5    custody.  Actually, I sort of told them this is probably what

6    I'm going to do.  I think he will be on his way to the

7    Eau Claire County Jail --

8              THE SHERIFF:  Correct.

9              THE COURT:  -- this afternoon.  Mr. Nelson, someone

10   from the Clerk of Court's office in Polk County will contact the

11   Department of Corrections.  Make sure that your client knows

12   that he needs to cooperate with them.

13             Mr. Christensen, you are remanded to the custody of

14   the Washburn County Sheriff.  Washburn County authorities will

15   take it from there.  We are off the record for scheduling and

16   sentencing.

17             (Discussion off the record.)

18             THE COURT:  We are on the record.  February 1st,

19   2:00, sentencing.  Polk County Courthouse.

20             Mr. Kaiser, you will make arrangements with the clerk

21   for video appearance by any of those victims if you choose.

22   I'll set this for the rest of the afternoon that day.

23             MR. KAISER:  I would ask you do so, yes.

24             THE COURT:  So noted.  Anything else for the record,

25   Mr. Kaiser?

─45─

1          MR. KAISER:  No.

2          THE COURT:  Mr. Nelson?

3          MR. NELSON:  No, Judge.

4          THE COURT:  All right.  Ms. Anderson, advise the

5    clerk that we have two available.  We are in recess.

6          (Proceedings concluded at approximately 2:00 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Prepared by Laurel Dean, RPR

```
1    STATE OF WISCONSIN )
                        ) ss.
2    WASHBURN COUNTY    )
```

3          I, LAUREL S. DEAN, do hereby certify that as the

4    duly-appointed shorthand reporter, I took in shorthand the

5    proceedings had in the above-entitled matter on the 30th day of

6    November, 2016, and that the attached is a true and correct

7    transcription of the proceedings so taken.

8          Dated at Shell Lake, Wisconsin, this 14th day of

9    March, 2016.

15   ---------------------------------------

16   Notary Public, State of Wisconsin

17   My commission expires September 27, 2019.

47