IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

J.K.J.,

    Plaintiff,

v.

POLK COUNTY SHERIFF'S DEPARTMENT,          Case No. 15-cv-428
DARRYL L. CHRISTENSEN,

    Defendants,

and

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

    Intervenor.

**INTERVENOR WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION'S PROPOSED FINDINGS OF FACT**

NOW COME the Intervenor, Wisconsin County Mutual Insurance Corporation, by its undersigned attorneys, and submits the following Proposed Findings of Fact in support of its Motion for Summary Judgment:

1.    Plaintiff J.K.J. ("Plaintiff") is an adult resident of the State of Wisconsin. (Dkt. 1, Compl. ¶ 4.)

2.    Defendant Darryl L. Christensen ("Christensen") was, at times material to this action, employed as a jailer with Polk County. (*Id.* at ¶ 5.)

3.    J.K.J. was incarcerated in the Polk County Jail in August of 2012, from March to June of 2013, from February 18 to June 4, 2014, and October of 2014. (*Id.* at ¶¶ 7-10.)

4.    J.K.J. alleges that while she was incarcerated in the Polk County Jail, Christensen engaged in numerous instances of sexual contact with her including sexual intercourse, inserting

his finger into her vagina, having her perform oral sex on him, exposing his penis to her, kissing her and fondling her breasts. (*Id.* at ¶¶ 6-10.)

5. More specifically, J.K.J. alleges that she had vaginal intercourse with Christensen on one occasion and oral sex on three occasions while she was an inmate in the Polk County Jail. (Dkt. 31, Lubinsky Aff. Exh. 1, J.K.J. Dep. at 80:19-24.)

6. J.K.J. alleges that she had sexual intercourse with Christensen on two occasions while she was not an inmate in the Polk County Jail when she went to the Amery Fire Department. (*Id.* at 61-62:19-10; *Id.* at 65:17-13; *Id.* at 68:18-21; *Id.* at 75:5-17.)

7. Christensen told J.K.J. not to say anything about their sexual interactions, and J.K.J. did not report Christensen's sexual interactions with her because she did not want him to get into trouble. (*Id.* at 56:12-17; *Id.* at 81:16-21.)

8. Christensen told J.K.J. that if their sexual relationship became known to others, he could lose his job at the Polk County Jail. (*Id.* at 102:4-25.)

9. Christensen began his employment as a corrections officer with Polk County on June 30, 1996. (Dkt. 31, Lubinsky Aff. Exh. 2, Christensen Dep. at 6:17-22.)

10. Christensen's last day of employment with Polk County was on October 30, 2014. (*Id.* at 8:3-5.)

11. When Christensen began his employment with Polk County, he was certified by the Wisconsin Law Enforcement Standards Board as being qualified to be a jail officer. (*Id.* at 8:11-24; Dkt. 31, Lubinsky Aff. Exh. 4.)

12. As part of his initial certification, Christensen received training that it was unlawful for jail officers to have sexual contact with inmates. (Dkt. 31, Lubinsky Aff. Exh. 2, Christensen Dep. at 12:19-22.)

13. When Christensen began employment with Polk County, he received a copy of the policy and procedural manual for the jail. (*Id.* at 12:3-6.)

14. Christensen was aware that Polk County had a policy that provided as follows: "Under no circumstances will any inmate be the object of verbal, physical, emotional, psychological or sexual harassment by facility staff. Any officer engaged in such actions is subject to disciplinary charges and/or termination." (*Id. at 16:6-19.*)

15. Christensen was aware that Polk County had a policy that provided as follows: "In addition to department policies against sexual misconduct, Wisconsin State Statutes make it a criminal offense for correctional staff members to have sexual intercourse or contract with an individual confined in a correctional institution." (*Id.* at 17-18:19-14.)

16. Christensen knew that Wisconsin criminal statutes prohibit a correctional officer to have sexual intercourse or sexual contact with inmates. (*Id.* at 18:15-19.)

17. Christensen's job with Polk County in no way, shape or form involved sexual contact with inmates. (Dkt. 31, Lubinsky Aff. Exh. 3)

18. Christensen admits that he participated in sexual talk with J.K.J. while she was an inmate in the Polk County Jail. (Dkt. 31, Lubinsky Aff. Exh. 2, Christensen Dep. at 44:9-16.)

19. Christensen admits that he kissed J.K.J. while she was an inmate in the Polk County jail. (*Id.* at 46: 11-14.)

20. Christensen admits that he touched J.K.J. beneath her underwear and inserted his finger into her vagina while she was an inmate in the Polk County jail. (*Id.* at 46:15-20.)

21. Christensen admits that J.K.J. performed oral sex on him while she was an inmate in the Polk County jail. (*Id.* at 47-48:19-2.)

22. Christensen claims that his sexual interactions with J.K.J. in the Polk County Jail occurred between five and ten times. (*Id*. at 46-47:21-1.)

23. Christensen asked J.K.J. not to say anything about their sexual interactions, and J.K.J. said that she was not going to say anything. (*Id.* at 47:2-10.)

24. Christensen asked J.K.J. not to say anything about their sexual interactions because he knew if she did that he would get in trouble. (*Id.* at 47:11-14.)

25. Christensen knew that he would lose his job if anyone found out about his sexual interactions with J.K.J. (*Id.* at 47:15-16.)

26. Christensen knew that his sexual interactions with J.K.J. were against Wisconsin's Criminal Code. (*Id.* at 47:17-18.)

27. Christensen denies that he had sexual intercourse with J.K.J. while she was an inmate in the Polk County Jail, but admits that he had sexual intercourse with her on two occasions when she was not an inmate in the Polk County Jail. (*Id.* at 45:10-22.)

28. Christensen admits to having sexual intercourse with J.K.J. at the Amery Fire Department where Christensen worked as the Fire Chief and where he was on duty at the time of the sexual interactions with J.K.J. (*Id.* at 49:5-8; *Id.* at 50:20-24.)

29. On the two occasions where Christensen admits to having sexual intercourse with J.K.J. at the Amery Fire Department, J.K.J. was not an inmate in the Polk County Jail and Christensen was not working for Polk County at the time of the sexual intercourse. (*Id.* at 53-54:22-4; *Id.* at 54:9-13.)

30. As soon as Christensen was made aware of allegations that he had had sexual contact with an inmate, he resigned his employment with Polk County on that very day. (*Id*. at 55:11-16.)

4

31. Christensen was criminally charged with five counts of second degree sexual assault in violation of Wis. Stat. § 940.225(2)(h). (*Id.* at 29:13-15; Dkt. 31, Lubinsky Aff. Exh. 5.)

32. Count 1 of the criminal charges filed against Christensen related to his sexual interactions with J.K.J.. (Dkt. 31, Lubinsky Aff. Exh. 5.)

33. Christensen attended a plea hearing on November 30, 2015. (Dkt. 31, Lubinsky Aff. Exh. 6; Dkt. 31, Lubinsky Aff. Exh. 2, Christensen Dep. at 56:15-22.)

34. Christensen was represented by counsel in the criminal charges against him, including at the plea hearing. (*Id.* at 56:23-25.)

35. Christensen pled guilty to all five counts of second degree sexual assault, in violation of Wis. Stat. § 940.225(2)(h). (*Id.* at 57:4-6; Dkt. 31, Lubinsky Aff. Exh. 6, pgs 35-36.)

36. Christensen understood that by pleading guilty he was admitting to the allegations in the criminal charges. (Dkt. 31, Lubinsky Aff. Exh. 2, Christensen Dep. at 57:7-9.)

37. After Christensen pled guilty, the criminal court found him guilty. (*Id.* at 57:11-13; Dkt. 31, Lubinsky Aff. Exh. 6, pgs 35-36.)

38. Christensen has been sentenced on the charges and is now incarcerated in the Dodge Correctional Institute. (Dkt. 31, Lubinsky Aff. Exh. 2, Christensen Dep. at 57:14-19.)

39. When Christensen engaged in sexual interactions with J.K.J., he did so for the sole purpose of his own personal gratification. (*Id.* at 59:6-10.)

40. Christensen's sexual interactions with J.K.J. did not serve Polk County's interests. (*Id.* at 59:11-13.)

41. Christensen knew that having sex with jail prisoners was a crime in Wisconsin. (*Id.* at 73:16-21.)

42. Christensen was repeatedly trained not to have sexual interactions with inmates. (*Id.* at 73:22-23.)

43. Christensen knew that Polk County policies prohibited him from having sex with inmates. (*Id.* at 73-74:24-2.)

44. Christensen knew that he was not supposed to fraternize with inmates in any suggestive or sexual way. (*Id.* at 74:3-6.)

45. Wisconsin County Mutual Insurance Corporation ("WCMIC") issued a Public Entity Liability policy of insurance to Polk County covering the four consecutive one-year periods from January 1, 2011, to January 1, 2012 (calendar year 2011); January 1, 2012, to January 1, 2013 (calendar year 2012); January 1, 2013, to January 1, 2014 (calendar year 2013); and January 1, 2014, to January 1, 2015 (calendar year 2014). (Dkt. 13, Bisek Aff. at ¶ 4 and Exhs. 1-4.)

46. The policies WCMIC issued to Polk County provide coverage relevant to this action for several types of alleged damages: (1) "bodily injury"; (2) "personal injury"; and (3) "errors and omissions." (*Id.* at Exhs. 1-4; *see Id.* at Exh. 1 pg 40.)

47. WCMIC's insurance policies issued to Polk County define an "insured" as follows:

> Throughout this policy the words *you* and *your* refer to the Named Insured shown in the Declarations. The words *we*, *us* and *our* refer to Wisconsin County Mutual Insurance Corporation.
>
> The word *insured* means any person or organization qualifying as such under Section III – Who is an Insured.

(*Id.*)

6

48. Section III of WCMIC's policies define an insured to mean:

   1. *You*, and

   2. *Your* past or present employees or elected or appointed officials while acting within the scope of their employment or authority, and authorized volunteers, while acting for *you* or on *your* behalf. . . .

(*Id.* at pg. 41)

49. "Bodily injury" is defined in WCMIC's policies to mean "bodily injury, sickness, disability or disease, sustained by a person during the policy period, including death resulting from any of these at any time." (*Id.* at pg. 49.)

50. "Personal injury" is defined in WCMIC's policies as follows:

   *Personal injury* means injury, other than *bodily injury*, during the policy period arising out of one or more of the following offenses:

   1. false arrest, detention or imprisonment, defective service of process;
   2. malicious prosecution;
   3. wrongful entry or eviction, or other invasion of the right of private occupancy;
   4. liable, slander or defamation of character;
   5. sexual harassment, including workplace harassment;
   6. assault and battery, including *sexual molestation*;
   7. discrimination, including employment discrimination;
   8. other civil rights violations, including employment related violations.

(*Id.* at pgs. 50-51.)

51. Errors and omissions coverage is defined in the policies as follows: "any misstatement or misleading statement or act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an *insured* in their capacity as such." (*Id.* at pg. 49.)

7

52. The policies of insurance WCMIC issued to Polk County contain an exclusion for "bodily injury" coverage to bodily injury "expected or intended from the standpoint of the insured." (*Id.* at pg. 42.)

53. The policies of insurance WCMIC issued to Polk County contain an exclusion for "personal injury" arising out of "the intentional or knowing violation of the penal statute or ordinance committed by or with the consent of the *insured*." (*Id.* at pgs. 45-46.)

54. Likewise, the policies of insurance WCMIC issued to Polk County contain an exclusion for "errors and omissions" coverage resulting in or arising from:

    1. *Bodily injury* or *personal injury*, except as provided in Section 1 – Insuring Agreement, Retroactive Dates, if the Policy Declarations include a Retroactive Date for Errors and Omissions.

    \* \* \* \* \*

    3. The willful violation of a penal code or ordinance committed by or with the consent of any *insured*.

    4. Any deliberately wrongful act, omission or breach of duty committed by or with the consent of any *insured*.

(*Id.* at pgs. 46-47.)

55. WCMIC retained separate counsel to defend and represent the interests of Christensen in this lawsuit under a full and complete reservation of rights. (Dkt. 13, Bisek Aff. at ¶ 7.)

56. The terms, conditions, limitations and exclusions in the Public Entity Liability policy of insurance preclude coverage for Defendant Christensen for the claims asserted by J.K.J. against Christensen in this action. (*Id.* at ¶ 8.)

Dated this 10th day of June, 2016.

        s/ Lori M. Lubinsky
        Attorneys for Intervenor
          Wisconsin County Mutual Ins. Corporation
        AXLEY BRYNELSON, LLP
        P.O. Box 1767
        Madison, WI 53701-1767
        Telephone: (608) 257-5661
        Fax: (608) 257-5444
        Email: llubinsky@axley.com

\\axleyserver2\axley\EAFDATA\2961\74780\01973222.DOCX