UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

M.J.J.,

        Plaintiff,

    v.

POLK COUNTY SHERIFF'S
DEPARTMENT, DARRYL L.
CHRISTENSEN,
                                         Case No. 15-C-433

        Defendants,

    and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

---

J.K.J.,

          Plaintiff,

    vs.

POLK COUNTY SHERIFF'S
DEPARTMENT,
and DARRYL L. CHRISTENSEN,
                                       Case No. 15-C-428

          Defendants,

    and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

    Intervenor.

---

## BRIEF IN SUPPORT OF DEFENDANT POLK COUNTY SHERIFF'S DEPARTMENT'S MOTIONS FOR SUMMARY JUDGMENT

---

      Defendant Polk County Sheriff's Department submits this consolidated brief in support

of its motions for summary judgment against both plaintiffs, M.J.J. and J.K.J. (collectively

"Plaintiffs") in Case Nos. 15-C-428 and 15-C-433 because the factual circumstances surrounding their respective claims are materially the same, and the legal bases for their claims, as set forth in their respective complaints, are identical.

## **INTRODUCTION**

Defendant and former Polk County jailer Darryl L. Christensen—by his own admission—engaged in sexual conduct with each of the Plaintiffs over the course of their several incarcerations in the Polk County Jail (the "Jail") from late 2011 to early 2014.  Christensen knew his sexual involvement with Plaintiffs violated his jailer training and Polk County Jail policies, and was a felony under Wisconsin law.  Upon later learning of Christensen's criminal behavior, Polk County officials took immediate steps to investigate his conduct, and Christensen quickly terminated his employment.  Jail officials in no way condoned or approved of Christensen's unprofessional and illegal behavior.  In fact, Jail officials had no knowledge the conduct had occurred because neither Christensen nor either Plaintiff had told other jailers or Jail administration.

Nevertheless, Plaintiffs now bring suit against the Polk County Sheriff's Department ("Polk County") under 42 U.S.C. § 1983 and Wisconsin law.  Plaintiffs claim that Polk County's alleged failure to train and failure to supervise, in addition to a failure to engage in alleged "best practices," violated their federal constitutional rights and was negligent under Wisconsin law.

To prevail on their federal claims against the County, Plaintiffs must prove the County's actions amounted to "deliberate indifference," which requires them to establish that County policymakers knowingly disregarded "a substantial risk of serious harm" to Plaintiffs.  Yet Plaintiffs can present no evidence the County enacted any policy, or condoned any custom or practice, that violated Plaintiffs' constitutional rights.  Plaintiffs instead insist that various

policies and practices at the Jail "created an atmosphere" that provided Christensen "an opportunity" to commit his crimes. These allegations fall far short of the standard required to prove a violation of Plaintiffs' constitutional rights. Plaintiffs' state law claims also fail because Christensen acted outside the scope of his employment and the conduct of Polk County was discretionary in nature, thereby immunizing the County from any actions in tort.

In short, there is simply no evidence that Polk County did or failed to do anything to cause Christensen's illegal behavior toward Plaintiffs. Summary judgment should be granted in favor of Polk County on all of Plaintiffs' claims.

## STATEMENT OF UNDISPUTED FACTS

Polk County refers this Court to Defendant Polk County Sheriff's Department's Proposed Findings of Fact ("PCPFOF") for a statement of the material, undisputed facts in this action.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases in original). A dispute of "material fact" is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## ARGUMENT

## I.   PLAINTIFFS CANNOT DEMONSTRATE THAT A POLK COUNTY POLICY, CUSTOM, OR PRACTICE VIOLATED THEIR CONSTITUTIONAL RIGHTS.

Plaintiffs' Second Amended Complaint purports to state three separate federal claims under 42 U.S.C. §§ 1983 & 1986[1] (Count Three), the Eighth Amendment (Count One), and the Fourteenth Amendment (Count Two).  Plaintiffs' claims are more properly stated as purported actions under § 1983 for alleged violations of their Eighth and Fourteenth Amendment rights. "Rather than acting as a source of rights, § 1983 serves as a vehicle for 'vindicating federal rights elsewhere conferred.'" *Rossi v. City of Chi.*, 790 F.3d 729, 734 (7th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)).  To use the vehicle of § 1983 to prove an alleged violation of their rights, Plaintiffs must demonstrate "(1) that [they were] deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon [them] by a person or persons acting under color of state law." *Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir. 2007) (quoting *Kramer v. Vill. of North Fond du Lac,* 384 F.3d 856, 861 (7th Cir. 2004)) (quotation marks omitted).  Here, Plaintiffs appear to claim, under § 1983, that they were deprived of their Eighth Amendment right to be free from cruel and unusual punishment as convicted prisoners, and their Fourteenth Amendment right to due process as pretrial detainees.

---

[1] Plaintiffs appear to allege that the County violated 42 U.S.C. § 1986, an action for neglect to prevent a conspiracy to violate an individual's constitutional rights under § 1985(3).

> A plaintiff must allege four elements to make out a valid cause of action under § 1985(3): (1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States.

*Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 914 (E.D. Wis. 2014) (citing *Triad Assocs., Inc. v. Chi. Hous. Auth.,* 892 F.2d 583, 591 (7th Cir.1989)).  Plaintiffs' Second Amended Complaints utterly fail to allege any facts in support of such a claim.  Without a valid § 1985 claim, Plaintiffs' § 1986 claim must also be dismissed.  *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir.2008).

Because the sexual conduct at issue took place over an extended period of time spanning multiple incarcerations, Plaintiffs may have been both a convicted inmates and a pretrial detainees at the time of separate instances.  But whether their Eighth Amendment rights or their Fourteenth Amendment rights are allegedly implicated is a distinction without a difference here. As the Seventh Circuit has observed in the context of a claim against a county jail for alleged sexual misconduct with an inmate, the relevant standards are the same under both constitutional amendments.  *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000); *see also Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001).  In either case, Plaintiffs must prove the County's actions evinced "deliberate indifference."   *Palmer v. Marion Cty.*, 327 F.3d 588, 593 (7th Cir. 2003) ("[D]eliberate indifference is the recognized standard of protection afforded to both convicted prisoners and pretrial detainees.") (internal quotation marks omitted).

To prove the County acted with "deliberate indifference," Plaintiffs must 1) objectively demonstrate they were "incarcerated under conditions posing a 'substantial risk of serious harm'"; and 2) establish that County policymakers had knowledge of and disregarded the risk to their safety.  *Id.*  It is not enough for Plaintiffs, as they have done here, to allege the County created a generalized risk to inmates through inadequate policies or training.  "Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk."  *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citing *Haley v. Gross,* 86 F.3d 630, 641 (7th Cir.1996)).

A.   **Polk County's Liability Can Only be Based on the Actions Of Polk County Policymakers; The County Cannot Be Held Liable For Christensen's Actions.**

Plaintiffs incorrectly allege the Polk County Sheriff's Department is vicariously liable for alleged violations of Plaintiffs' constitutional rights by virtue of employing Christensen.  First, Plaintiffs cannot state a claim against the Polk County Sheriff's Department.  The Seventh

Circuit and the Eastern District of Wisconsin have held sheriff's departments in Wisconsin to be indistinct legal entities from the counties they serve, and therefore not subject to suit. *See, e.g.*, *Whiting v. Marathon Cnty. Sheriff's Dep't.,* 382 F.3d 700, 704 (7th Cir. 2004); *Wagner v. Washington Cnty.,* 493 F.3d 833, 835 (7th Cir. 2007); *Green v. Chvala,* 567 F. App'x. 458, 461 (7th Cir. 2014); *Buchanan v. City of Kenosha,* 57 F. Supp. 2d 675, 678-79 (E.D. Wis. 1999). Plaintiffs' claims against the Polk County Sheriff's Department must be dismissed.

Second, even if Plaintiffs' claims against the sheriff's department could be construed as claims against the County, the County cannot be held liable for Christensen's sexual misconduct with Plaintiffs solely because Christensen worked for the County, because a local government entity cannot be held responsible under § 1983 based on *respondeat superior* liability. *Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 691 (1978). Instead, a local governmental entity is liable only for acts for which the entity itself is responsible, meaning acts the entity has embraced as policy or custom that are the source of a constitutional injury. *Id.* at 690-91 & 694. Thus, to establish a basis for municipal liability under *Monell*, a plaintiff must prove that:

> (1) the alleged constitutional deprivations were conducted pursuant to an express policy, statement, ordinance, or regulation that, when enforced, caused the "constitutional deprivation";
>
> (2) the conduct was one of a series of incidents amounting to an unconstitutional practice "so permanent and well-settled as to constitute a "custom or usage" within force of law"; or
>
> (3) the conduct was a decision of a municipal policymaker "with final policymaking authority" in the area at issue.

*See McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Plaintiffs cannot establish the County is liable under any of these theories without proving specific conduct by the County that actually caused Christensen's misconduct. Indeed, where a plaintiff claims that the municipality is deliberately indifferent, "rigorous standards of culpability and causation must be applied to

ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

Here, Plaintiffs have not and cannot allege that enforcement of any "express policy, statement, ordinance, or regulation" of the County caused Christensen to engage in sexual contact with Plaintiff. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered."). Similarly, Plaintiffs have not and cannot allege that a County policymaker made a decision that caused Christensen to engage in sex acts with Plaintiffs. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) (requiring that the alleged deprivation result directly from a decision by a municipal policymaker either explicitly or by ratification of a subordinate's decision).

Rather, Plaintiffs assert the County's policies and practices were inadequate in certain general ways, which fall into the following categories:

    (1)    failure to adequately train Christensen or other Jail staff ;

    (2)    failure to properly supervise Christensen or other Jail staff;

    (3)    failure to train inmates regarding how to report incidents of sexual misconduct; and

    (4)    failure to implement policies that prevented a male officer from supervising female inmates "without cameras and the ability to prevent entrance of other jailers."

Plaintiffs generally claim that these inadequacies "created an atmosphere" that gave Christensen the "opportunity, encouragement, and ability to continue his sexual exploitation of female inmates" Although it is unclear from their complaints, Plaintiffs presumably intend to argue these facts establish an unconstitutional custom or practice on the part of the County.

Because Plaintiffs' proof fails in this regard as well, their *Monell* claims against Polk County should be dismissed.

**B.** **Plaintiffs' Claims Under *Monell* All Fail Because Plaintiffs Cannot Prove an Unconstitutional Custom or Practice Based on a Single Incident, and Because Their Claims Lack Evidence of Causation and Notice.**

All of Plaintiff's *Monell* allegations suffer from the same three fatal flaws: (1) Plaintiffs' misplaced reliance on a single incident to prove a custom or practice on the part of the County, (2) the lack of a causal connection to Christensen's sexual conduct with Plaintiffs; and (3) the County's lack of notice of Christensen's misconduct or any conduct that would indicate a virtual certainty of Christensen (or any other staff member) to engage in sexual relations with Plaintiffs while on duty in the Jail.

**1.** **Plaintiffs Cannot Establish An Unconstitutional Custom or Practice by Relying on a Single Incident.**

"To establish a municipal policy or custom, the plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986) (emphasis added). A single incident, when unaccompanied by supporting history, does not provide an adequate basis for inferring a policy or custom. *McKee v. City of Rockwall*, 877 F.2d 409, 415-16 (5th Cir. 1989). Under this standard, it is not enough to demonstrate that Polk County "could, or even should, have been aware of the unlawful activity because it occurred more than once." *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006) (emphasis added). Rather, there must be "evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id.* And, significantly, where the evidence discloses only a single incident of unconstitutional activity, such proof is generally insufficient to impose *Monell* liability unless it is also established that the constitutional deprivation was caused

by an existing municipal policy or custom that was itself unconstitutional.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Here, there is no allegation by Plaintiffs that the County had an existing policy that was unconstitutional on its face that caused Christensen's conduct.  Moreover, although Plaintiffs allege that Christensen unlawfully engaged in sexual relations with them (and several other female inmates) during intermittent incarcerations from 2011 through 2014, there is no evidence suggesting the existence of a pattern or series of events where Jail officers were deliberately indifferent to a known risk to the safety of inmates under circumstances akin to those alleged here.  Indeed, Plaintiffs fail to allege even a single separate incident, let alone a pattern of such incidents, where other jailers engaged in inappropriate conduct with inmates at the Jail like Christensen did with Plaintiffs.

Plaintiffs also allege a failure to properly train and supervise Jail staff and to implement alleged "best practices," a failures which Plaintiffs claim "created an atmosphere" conducive to Christensen's illegal conduct.  But that theory lacks critical evidence where Plaintiffs can identify only one instance of a jailer being led to commit sexual improprieties with inmates.  Although Christensen engaged in, and successfully hid, many sexual contacts with inmates, he is the sole example of a jailer who succumbed to the alleged "atmosphere" of tolerance for such activity.  Under *Monell*, a County practice that is alleged to have led to only one instance of abuse cannot be found to be a "custom" presenting a "significant risk" to inmate safety, much less a risk the County knew of and was deliberately indifferent to.

> **2.    Plaintiffs Cannot Establish the Necessary Causal Nexus Between Their Injury and Any Alleged Custom and Practice by the County.**

"A plaintiff seeking to find a municipality liable under § 1983 must establish a causal nexus between his injury and the municipality's alleged policy or custom."  *Palmquist v. Selvik*,

111 F.3d 1332, 1344 (7th Cir. 1997); *see also Monell*, 436 U.S. at 694; *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010); *Doe v. Sheriff of DuPage Cty.*, 128 F.3d 586, 588 (7th Cir. 1997). "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses* § 7.12 (2013)). Here, Plaintiffs fail to suggest any causal link between the alleged customs or practices of the County and Christensen's illegal sexual conduct toward Plaintiffs.

For example, Plaintiffs allege that Jail policy allowed one male jailer to supervise female inmates without cameras and with the alleged ability to prevent the entry of other officers by controlling the door to the max pod. Plaintiffs allege this practice "gave Defendant Christensen the perfect opportunity and encouraged Defendant Christensen to sexually assault female inmates." Setting aside the unwarranted speculation that any male officer should be assumed to pose a risk of sexual assault to female inmates the moment he is out of sight, the allegation that these policies presented Christensen an "opportunity" to commit his crimes falls far short of establishing the required causal nexus. While Plaintiff may allege these policies amount to inadequate supervision or training of male jailers, nothing about the policies *caused* Christensen to commit his crimes. Moreover, none of these policies—nor any other policy, procedure, or practice identified by Plaintiffs in their complaints—is unconstitutional. None of the inadequacies alleged by Plaintiffs meet the causation standard required to sustain a *Monell* claim. *See Schneider*, 717 F.3d at 770.

       **3.**    **Plaintiffs Cannot Prove an Unconstitutional Custom and Practice Where The Undisputed Evidence Establishes the County had No Notice of Any Misconduct.**

Notice is essential to proving a custom and practice claim. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (to establish deliberate indifference, plaintiff must prove "'a series of bad acts' creating an inference that municipal officials were aware of and condoned the misconduct of their employees"); *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993) ("liability [must] be based on a finding that the policymakers have actual or constructive notice that a particular omission . . . is likely to result in constitutional violations").

Simply claiming that individuals within the jail were engaged in certain conduct is insufficient; to establish an unconstitutional custom or practice; Plaintiffs must demonstrate that Polk County policymakers were aware of a persistent, widespread practice that posed a significant risk to inmate safety. *Latuszkin v. City of Chi.*, 250 F.3d 502 (7th Cir. 2001). *Latuszkin* involved a custom and practice claim after a drunk police officer struck and killed the plaintiff's wife. *Id.* at 503. The plaintiff had alleged that members of the Chicago Police Department had a custom and practice of holding parties where officers would become intoxicated and drive. *Id.* The Seventh Circuit dismissed the claim, stating that it only established a custom and practice of the Chicago Police Department. *Id.* at 505.

> The complaint does not allege any facts tending to show that City policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior . . . . Without a link between the City and the alleged policy, no claim for municipal liability can survive.

*Id.*

In the present matter, Plaintiffs make no allegations, and offer no evidence, that County policymakers were aware that Jail staff were fraternizing with inmates in violation of an express

written policy.  Moreover, Polk County had no notice of Christensen's misconduct because he hid his illegal activity with Plaintiffs and instructed Plaintiffs to not tell anyone—an instruction which, by their own admissions, they followed.  Although Plaintiffs claim other Jail staff should have suspected Christensen's illicit conduct based on vaguely alleged "warning signs," these jailers are not County policymakers.  As such, the notice required by cases such as *Monell*, *Minix*, *Cornfield*, and *Latuszkin* is conspicuously absent.  Plaintiffs have shown nothing to satisfy this fundamental element, so their *Monell* claims must fail.

**C.   Plaintiffs' Failure To Train Claim Is Without Merit Because Christensen And Other Jail Staff Were Certified Jailers And Plaintiffs Cannot Show How Christensen's Illegal Sexual Conduct Was Caused By An Alleged Failure To Train.**

A failure to train claim may serve as the basis for municipal liability under § 1983 only "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  A failure to train amounting to deliberate indifference may be shown in one of two ways:

> First, a municipality shows deliberate indifference when it fails to train its employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in a constitutional violation. Second, a municipality shows deliberate indifference if it fails to provide further training after learning of a pattern of constitutional violations by the police.

*Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003) (citations omitted).  Further, in considering a municipality's alleged liability for a failure to train, the focus must be on the adequacy of the training program in relation to the tasks the officers must perform.  *City of Canton*, 489 U.S. at 390.  Of course, "the identified deficiency in a [municipality]'s training program must [also] be closely related to the ultimate injury."  *Id.* at 391.  Simple negligence on

the part of the municipality is not enough to demonstrate deliberate indifference in a failure to train. *Id.*

> *Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training*, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.

*Id.* (emphasis added).

Plaintiffs complain that the County failed to properly train Christensen on sexual assault in the Jail, and, more generally, that the County failed to properly train all Jail staff. However, Plaintiffs fail to specify how any alleged deficiency in the training program played any role in Christensen's illegal conduct. (*Id.*) Thus, Plaintiffs' failure to train claims initially fall short because there is no evidence showing that additional or different training would have made a difference. Plaintiffs' failure to train claims also fall short because of an absence of proof that the County acted with deliberate indifference with respect to the training of Christensen or other Jail staff.

The Supreme Court's decision in *Connick* is instructive: a district attorney's office cannot be held liable under § 1983 based upon failure to train assistant district attorneys about their *Brady* obligations, unless there has been a pattern of *Brady* violations. Because assistant district attorneys are trained on the law in general, and undisputedly had a general familiarity with the *Brady* rule, absent a pattern of *Brady* violations, a district attorney may rely on the abilities of assistant district attorneys to comply with *Brady*. 563 U.S. at 66. Thus, absent a pattern of *Brady* violations, the failure to train cannot be said to be deliberately indifferent. Similar to the assistant district attorneys in *Connick*, Christensen and other Polk County jailers received general corrections training and training on sexual contact with inmates in particular.

(PCPFOF ¶¶ 40-48.)  Polk County was entitled to rely on the abilities of its certified and trained jailers to properly perform their duties, including their knowledge to not engage in sexual contact with inmates.  In addition, as in *Connick*, there is no evidence of a pattern by jailers to fraternize with inmates that would have put the County on notice that its training on this particular issue was insufficient.

Plaintiffs assert that Christensen missed a training session in February 2014 that covered the Jail policy regarding "inmate fraternization/PREA."  However, that training came after all of the alleged sexual activity with M.J.J. (PCPFOF ¶¶ 87-88) and after most of the activity with J.K.J. (PCPFOF ¶95.)  Moreover, Christensen had other training on that subject, including the training he received in the jail school to become state certified.  Most importantly, however, Christensen knew that fraternizing and having sexual contact with inmates violated Jail policy and was a felony under State law.  (PCPFOF ¶¶ 65-75.)  In light of the fact that he knew his actions were wrong and he did them anyway, Plaintiffs cannot possibly establish a causal connection between any failure to train—in general or PREA in particular—and Christensen's improper behavior.

Regardless, where a state imposes minimum training standards on municipalities, adherence to those standards bars a § 1983 claim of a failure to train absent evidence of deliberate indifference to a constitutional deficiency in those standards.  *Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir. 1992); *Harper v. City of Kenosha*, No. 09-CV-88, 2011 WL 2912741, at *6 (E.D. Wis. July 18, 2011); *Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917, 931 (E.D. Wis. 1999).  Here, it is undisputed that Christensen and all other Polk County jailers were required to be certified as corrections officers by the State of Wisconsin, pursuant to training standards and qualifications set by the State.  (PCPFOF ¶ 40.)  Christensen himself was

14

certified as a jail officer, and recertified every two years thereafter until his termination in 2014. (PCPFOF ¶¶ 63-64.)    Given these facts, and in the absence of any proof that the training standards set by the State of Wisconsin are constitutionally deficient and that the County was both on notice of a such deficiency and failed to provide further training to account for the deficiency, Plaintiffs' failure to train claim necessarily fails under *Tapia*.

### D. Plaintiffs' Claim of a Failure to Supervise Also Fails Because There is No Evidence of the County's Deliberate Indifference to a Lack of Supervision

The "'failure to supervise' theory of municipal liability is a rare one. Most agree that it exists and some allege they have seen it, but few actual specimens have been proved." *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010).  The courts have applied the same standard that exists for § 1983 failure to train claims to *Monell* claims relating to an alleged failure to supervise.  *See, e.g.*, *Pullen v. House*, 88 F. Supp. 3d 927, 945-46 (W.D. Wis. 2015).  Therefore, a plaintiff pursuing such a claim can satisfy his burden to show the defendant municipality's deliberate indifference only with proof that the municipality: 1) failed to supervise its employees with respect to a recurring situation that presented an obvious potential for a constitutional violation and the failure to supervise actually resulted in a constitutional violation, or 2) failed to provide further supervision after learning of a pattern of constitutional violations by its agents. *See, e.g.*, *Dunn*, 347 F.3d at 646.

Plaintiffs insinuate that allowing unsupervised male officers to oversee female inmates creates an obvious potential for a constitutional violation from sexual misconduct. This claim has been rejected under similar circumstances.  *See Mize*, 375 Fed. App'x at 499–501.  In *Mize*, the Sixth Circuit Court of Appeals rejected an inmate's contention that a city's policies, in particular a failure to supervise, caused a police officer to rape her.  The Court of Appeals concluded—in

light of the officer's long employment, clean record, and lack of pattern of sexual assault allegations against its officers—that

> [t]here is no basis to conclude on this record ... that there was a "high degree of predictability" that [the officer] or any other employee was likely to rape anyone, especially considering that [the officer's] background does not reveal any inclination to assault another sexually.  The intentional, violent act that a [police officer] performed far outside the scope of his duties cannot be something that was "obvious" to occur.

*Id.* at 501.

Similarly, there is no evidence here of any prior instances of sexual misconduct by Christensen or other Jail staff over the last several decades.  There is no evidence to support an argument that Christensen's intentional criminal act, performed far outside the scope of his duties, was so "obvious" to occur that Polk County was deliberately indifferent to the danger that Christensen, or any jailer, would commit such an act.  Further, in the absence of any prior instances by other jailers, or prior notice of Christensen's conduct, there is no evidence of a recurring situation or a pattern of constitutional violations that would have given rise to a duty on the part of the County to provide further supervision.

In addition, it is undisputed that the Polk County Jail had extensive policies and practices in place in regarding the supervision of its staff that provided for:

- the evaluation and review of Jail employees;

- procedures for supervisors to determine if a violation of policies and procedures warranted discipline or retraining; and

- formal discipline to punish Jail employee behavior and/or to deter future behavior which violated Jail rules or regulations.

(PCPFOF ¶¶ 51–53.)

But even if Plaintiffs could show the County failed to supervise its staff in some respect, that evidence alone would be insufficient to establish municipal liability.  *Monfils v. Taylor*, 165

F.3d 511, 517 (7th Cir. 1998).  To prove liability for a failure to supervise, a plaintiff must show that the municipality caused the constitutional deprivation in question by its deliberate indifference to a lack of supervision.  *See Palmquist*, 111 F.3d at 1344.  There is no evidence to support a claim that any failure to supervise Christensen caused him to engage in criminal sexual contact with Plaintiffs.

>    **E.    Plaintiffs' Allegation That The County Failed "To Train Inmates" Does Not State A Claim For A Violation Of Plaintiffs' Constitutional Rights.**

Plaintiffs allege the County "failed to train inmates on how to report sexual abuse," and that Plaintiffs themselves were "never informed how to report sexual abuse."  Plaintiffs allege that "PREA and other contemporary jail industry standards require [the County] to make inmates aware of facility policies regarding PREA and inform inmates of how to report sexual abuse."  However, as discussed below in § 2 neither PREA nor Plaintiffs' idea of "contemporary jail industry standards" establish a constitutional requirement the County must follow.  Moreover, the County did provide each inmate, including Plaintiffs, with an "Inmate Handbook," which details the procedure for making a grievance.  (PCPFOF ¶¶ 35-39.)  Plaintiffs have not identified any statute, administrative code, or constitutional requirement that obligates the County to do any more than provide a mechanism for inmates to report grievances.

It is undisputed that Polk County provided a copy of the Inmate Handbook to each inmate upon booking.  But even if Plaintiffs assert the incredible allegation that the County failed to follow that routine each time they were booked into the jail, there is no evidence to support a claim the County had a custom of not advising inmates of the grievance procedure.  This lack of evidence is again fatal to Plaintiffs' claims.  *See Monell*, 436 U.S. at 690-91, 694 (local governmental entity is liable only where its acts constitute a policy or custom that are the source of the constitutional injury).  Under these facts, Plaintiffs cannot show that the alleged "failure to

train amounts to deliberate indifference to the rights of [Polk County inmates] . . . ."  *City of Canton*, 489 U.S. at 388.

> **F.**     **Plaintiffs' Claim of a Custom of Condoning Certain Alleged Conditions of Confinement Allegedly Presenting an Opportunity for Sexual Misconduct is Also Without Merit.**

Plaintiffs' claims of a custom to condone conditions of confinement that gave Christensen the opportunity to engage in sexual misconduct with Plaintiffs appear to rely on various allegations related to "gender neutral" supervision of inmates, PREA compliance, and other assorted lack of best practices.  None of these allegations is sufficient to sustain Plaintiffs' *Monell* claims.

> **1.**     **Plaintiffs' Claim that the County Must Provide At Least One Female Jailer to Monitor Female Inmates is Without Merit.**

The Seventh Circuit has specifically rejected Eighth and Fourteenth Amendment challenges to cross-gender surveillance.  *See Johnson v. Phelan*, 69 F.3d 144, 145-48 (7th Cir. 1995) (court rejected male plaintiff's Eighth Amendment challenge to cross-gender monitoring policy and held that his substantive due process right to privacy under the Fourteenth Amendment did not prohibit female guards from monitoring him while showering and using the toilet).  Similarly, the Third, Fifth, Sixth, Ninth, and Tenth Circuits have all denied claims by female litigants who argued that prison policies lead to sexual abuse. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *Downey v. Denton Cty.*, 119 F.3d 381, 383 (5th Cir. 1997); *Long v. McGinnis*, No. 95-1227, 1996 WL 528943 (6th Cir. Sept. 17, 1996); *Fernandez v. City & Cty. of S.F.*, 124 F. App'x 581 (9th Cir. 2005); *Barney v. Pulsipher*, 143 F.3d 1299, 1303 (10th Cir. 1998) *superseded by statute as recognized in Webb v. Weber Cty.*, No. 1:11-CV-00128 DB-SA, 2012 WL 2930782 (D. Utah Apr. 25, 2012); *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) (noting that a decision in the inmate's favor would "require the conclusion that

every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone"). And, there is not a shred of evidence that cross-gender supervision was a direct cause of Christensen's sexual misconduct. There simply are no genuine issues of material fact to support this claim, and it must be dismissed as a matter of law.

Further, if Polk County were to have implemented Plaintiffs' demand for single gender supervision in the Jail, it would likely cost the County in excess of half a million dollars for the five or six additional female staff, a rather onerous and expensive burden. (PCPFOF ¶ 56.) In fact, a recent Michigan Court of Appeals decision to allow a class action lawsuit by male corrections officers suggests that Plaintiffs' single gender supervision scheme would be discriminatory. *See Nowacki v. Dep't of Corr.*, No 315969, 2014 WL 4088041 (Mich. Ct. App. Aug. 19, 2014) (certifying class of male jailers alleging gender discrimination on the basis they were barred from positions supervising female inmates).

  **2.**  **Plaintiffs' General Allegations of Non-Compliance With PREA and a Lack of Best Practices at the Polk County Jail Are Insufficient to Support a *Monell* Claim.**

In discovery, Plaintiffs have criticized the County for failing to enact policies implementing all of the provisions of PREA, or failing to enact other policies advocated by Plaintiffs' expert. As an initial matter, courts have specifically rejected PREA as a basis for a private right of action under § 1983. *See e.g., Rivera v. Drake*, No. 09-CV-1182, 2010 WL 1172602, at *3 (E.D. Wis. Mar. 23, 2010); *Schuenke v. Wis. Dep't of Corr.*, No. 13-CV-865-BBC, 2014 WL 905529, at *3 (W.D. Wis. Mar. 7, 2014). PREA was "enacted to study the problem of prison rape and to provide funding and expertise to address it." *Kane v. Winn,* 319 F.Supp.2d 162 (D. Mass.2004). "Nothing in the Act suggests that it was intended to create a private cause of action, and nothing suggests that Congress intended to override the state's Eleventh Amendment immunity." *Rivera*, 2010 WL 1172602 at *3. "[W]here the text and

structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id. (citing Gonzaga Uni. v. Doe,* 536 U.S. 273, 286 (2002)).  *See also Meeks v. Wis. Res. Ctr.*, No. 14-CV-0850, 2015 WL 847481, at *2 (E.D. Wis. Feb. 26, 2015) ("As his legal theory, plaintiff references the Prison Rape Elimination Act, 42 U.S.C. § 15601 et seq., but there is no private cause of action under the Act.").  Regardless, Polk County considered the requirements of PREA and made a reasoned decision to not fully implement all provisions of PREA as compliance with it is not mandatory.  In particular, the Jail's policymakers did not believe that certain provisions of PREA were sound correctional practices, such as a jailer announcing his or her presence before entering an inmate's living unit.  (PCPFOF ¶ 54.)

In addition, as with Plaintiffs' other *Monell* claims, Plaintiffs' claim that some of Polk County's practices did not comport with a paid expert's opinions falls far short of the standard required to prove deliberate indifference.  It is insufficient as a matter of law for a plaintiff to allege that the defendant acted "inadequately or imperfectly" or that the defendant "could have done more."  *See, e.g.*, *Del Raine v. Williford*, 32 F.3d 1024, 1042 (7th Cir. 1994) (noting that "courts regulate prisons with a considerably lighter touch than they regulate other public institutions" and concluding that "[t]he fact that alternative technology for rectal searches exists is irrelevant" because "[t]he decision to initiate different methods to search for contraband is not for this court to make in this case."); *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002) ("The existence or possibility of other better policies which might have been used does not necessarily mean that the [defendant] was being deliberately indifferent."); *Edelstein ex rel. Mancl v. Andrews*, 00-C-0319-C, 2001 WL 34372891, at *5 (W.D. Wis. Aug. 6, 2001) ("Plaintiff can argue with the benefit of hindsight that Wurtzel could have done more and she may be right, but

she cannot argue that he was deliberately indifferent to her son's serious mental health needs."). Indeed, just because there is a better practice does not mean the existing one is unconstitutional. *Smith v. Sangamon Cty. Sheriff's Dep't.*, 715 F.3d 188, 191 (7th Cir. 2013) ("The existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent.")

## II. PLAINTIFFS' STATE LAW CLAIMS AGAINST POLK COUNTY FAIL AS A MATTER OF LAW.

### A. Polk County Is Not Responsible for Christensen's Sexual Misconduct with Plaintiffs Because it Was Far Outside the Scope of His Employment.

Plaintiffs also assert claims for negligent infliction of emotional distress and negligent supervision and training by the County. The facts demonstrate that Polk County was not negligent in its training or supervision of Christensen or other Jail staff. Regardless, Polk County is not responsible for Christensen's sexual misconduct with Plaintiffs because it was far outside the scope of his employment.

An employee acts within the scope of employment when "doing that which is warranted within the terms of his or her express or implied authority, considering the nature of the services required, the instructions which he or she has received, and the circumstances under which his or her work is being done or the services are being rendered." *Estate of Murray v. Travelers Ins. Co.*, 601 N.W.2d 661, 663 (Wis. Ct. App. 1999) (quoting Restatement (Second) of Agency § 228(2) (1957)). An employee does not act within the scope of employment when the employee's conduct is "different in kind from that authorized, far beyond the authorized time or space limits, *or too little actuated by a purpose to serve the master*." *Olson v. Connerly,* 457 N.W.2d 479, 483 (Wis. 1990). As such, where an employee "fully steps aside from conducting the employer's business to procure a predominantly personal benefit, the conduct falls outside the scope of employment." *Block v. Gomez,* 549 N.W.2d 783, 788 (Wis. Ct. App. 1996).

Where an employee knowingly violates express employer policies or criminal laws in engaging in the conduct at issue, such evidence is a powerful indicator that the employee was acting outside the scope of employment.  *See, e.g.*, *id.*  Courts have often found as a matter of law that sexually-motivated acts fall outside the scope of employment.  *See, e.g., id.* (finding a sexual relationship between a therapist and patient was not within scope of employment); *Doe v. Time Warner Cable of Se. Wis., L.P.,* 07–C–781, 2007 WL 4143226, at *3 (E.D. Wis. Nov. 19, 2007) (denying application of *respondeat superior* doctrine where manager sexually assaulted a co-worker after walking her to her car on work property); *S.J.A.J. v. First Things First, Ltd.,* 2000 WI App 233, 619 N.W.2d 307 (Wis. Ct. App. 2000) *aff'd*, 2001 WI 118, 635 N.W.2d 292 (holding counselor's actions in fostering a sexual relationship with a patient were beyond the scope of employment).

Here, it is undisputed that Christensen's sexual contact with Plaintiffs was solely for his own personal gratification (PCPFOF ¶ 81), and no reasonable jury could find that sexual contact with inmates was in the service of Polk County or even reasonably incidental to Christensen's employment with Polk County.  Again, Christensen admitted that his behavior violated Jail policy, state statute, and his training.  (*Id.* ¶¶ 65-75.)  As a result, Plaintiffs' negligence claims against Polk County on the basis of *respondent superior* fail as a matter of law.

### B.    Polk County is Entitled to Immunity With Respect to all of Plaintiffs' State Law Claims.

Furthermore, Polk County is entitled to immunity from suit with respect to all of Plaintiffs' negligence claims under Wis. Stat. § 893.80.  Immunity from suit for Wisconsin political subdivisions and their employees is grounded in Wis. Stat. § 893.80(4).  The statute provides:

> (4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental

22

> subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Therefore, a political subdivision and its employees are immune from "any suit" for "acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." *Id.*; *Brown v. Acuity*, 2013 WI 60, ¶ 41, 833 N.W.2d 96, 106.

Wisconsin courts "have concluded that quasi-judicial or quasi-legislative activities are activities that involve the exercise of 'discretion.'" *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶ 16, 663 N.W.2d 715, 721. A public officer or employee's duty is ministerial rather than discretionary "only when it is absolute, certain and imperative," involving the "performance of a specific task" that the law imposes and defines the "time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Bd. of Regents of the Univ. of Wis. Sys.*, 240 N.W.2d 610, 622 (Wis. 1976); *see also Heuser ex rel. Jacobs v. Cmty. Ins. Corp.*, 2009 WI App 151, ¶ 26, 774 N.W.2d 653, 660.

The manner in which jail officials carry out their duties in supervising jail inmates is discretionary. *Swatek v. Cty. of Dane*, 531 N.W.2d 45, 50 (Wis. 1995) (concluding that "the sheriff has discretion in deciding how best to attend to the needs of those inmates within [his] custody"); *see also Ledford v. Sullivan*, 105 F.3d 354, 357 (7th Cir. 1997) (recognizing that Wisconsin law affords prison officials discretion in providing inmates with medical care); *Spencer v. Cty. of Brown*, 573 N.W.2d 222, 227 (Wis. Ct. App. 1997) (noting that "[t]he manner of identifying disabled or special needs inmates, and providing appropriate accommodations for them, is left to the discretion and judgment of government officials"). Immunity is likewise available for claims arising out of alleged inadequate training or supervision because they

involve governmental discretion.  *Sheridan v. City of Janesville*, 474 N.W.2d 799, 803 (Wis. Ct. App. 1991).

In fact, the Wisconsin courts have long recognized the importance that immunity plays in the area of law enforcement:

> Upon closer examination, however, we conclude that the nature of law enforcement requires moment-to-moment decision making and crisis management, which, in turn, requires that the police department have the latitude to decide how to best utilize law enforcement resources.  Unlike those professionals who have a set daily calendar they follow, police officers have no such luxury.  For these reasons, it is clear that law enforcement officials must retain the discretion to determine, at all times, how best to carry out their responsibilities.

*Barillari v. City of Milwaukee*, 533 N.W.2d 759, 764 (Wis. 1995).

Here, the Polk County's training or supervision of its correction officers can hardly be said to have been ministerial in nature, or non-discretionary.  Any decisions made by Polk County about the training or supervision of the correction officer above and beyond their initial certification were discretionary under precedent such as *Swatek*, *Spencer*, *Sheridan*, and *Barillari*.  As a result, Polk County is immune from suit under Wis. Stat. § 893.80(4) with respect to all of Plaintiffs' claims under Wisconsin law.

## III. BECAUSE CHRISTENSEN ACTED OUTSIDE THE SCOPE OF THIS EMPLOYMENT, PLAINTIFFS ARE NOT ENTITLED TO BE INDEMNIFIED BY POLK COUNTY PURSUANT TO WIS. STAT. § 895.46.

Finally, Plaintiffs argue that if a money judgment is entered against Christensen, Polk County is responsible for indemnifying Christensen pursuant to Wis. Stat. § 895.46(1).  Plaintiffs are incorrect.

Section 895.46(1) of the Wisconsin Statutes states in relevant part:

> If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed

24

> while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee … in excess of any insurance applicable to the officer or employee shall be paid by the state or political subdivision of which the defendant is an officer or employee.

Under the plain terms of this law, a municipality is responsible for damages and costs resulting from the acts of a public employee, but only if such acts are within the scope of his or her employment.  As discussed above, Christensen's sexual contact with Plaintiffs was not within the scope of his employment as a corrections officer for Polk County.  It is undisputed that Christensen's criminal conduct violated his training, Polk County Jail policies and procedures, and Wisconsin law.  Plaintiffs' claim for statutory indemnification must be dismissed.

## **CONCLUSION**

For these reasons, Polk County respectfully requests that this Court enter an Order:  1) granting summary judgment in favor of Polk County and against both Plaintiffs, 2) awarding Polk County its costs and fees, including attorneys' fees as permitted by law, and 3) granting such other and further relief as the Court deems reasonable and appropriate.

Dated this 1st day of July, 2016.

s/  *Paul D. Cranley*

Charles H. Bohl
Paul D. Cranley
Kurt M. Simatic

WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone:  414-273-2100
Fax:  414-223-5000
Email: cbohl@whdlaw.com

33 East Main Street, Suite 300
Madison, WI 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
pcranley@whdlaw.com

20800 Swenson Drive, Suite 300
Waukesha, Wisconsin 53186
Telephone: 262-956-6200
Fax: 262-956-6210
Email: ksimatic@whdlaw.com

Attorneys for Polk County Sheriff's Department

WHD/12832492.3

26