IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

M.J.J.,

    Plaintiff,

v.

POLK COUNTY,
DARRYL L. CHRISTENSEN,

    Defendants

And

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

    Intervenor.

Civil Action No. 15-cv-433-wmc

---

J.K.J.,

    Plaintiff,

v.

POLK COUNTY,
DARRYL L. CHRISTENSEN,

    Defendants

And

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

    Intervenor.

Civil Action No. 15-cv-428-wmc

**DECLARATION OF JEFFREY P. EISER**

Jeffery Eiser declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. I was retained to act as a consultant and/or to provide expert testimony and opinions concerning alleged multiple sexual assaults on two female inmates in the Polk County Jail (PCJ) located in Balsam Lake, Wisconsin during the time period of 2011-2014.

2. I have over 29 years of practical work experience in the operation and administration of one of the largest local corrections systems in the United States.

3. I also have extensive experience and expertise in the operation and staffing of small, medium and large jail facilities.

4. I have written extensively on the subject of jail administration as co-author of the Ohio Jail Administrator's Handbook, in conjunction with the Ohio Bureau of Adult Detention and I have personally researched and authored a large part of the curriculum used by the Ohio Peace Officer Training Council to certify corrections officers, supervisors and jail administrators.

5. I hold a Bachelor of Science Degree in Criminal Justice from the University of Dayton and a Master's Degree in Education from Xavier University (Cincinnati, Ohio).

6. Since 2002, I have been an adjunct instructor of criminal justice in the College of Evening and Continuing Education at the University of Cincinnati.

7. I have been retained as a consultant and trainer for small, medium and large jails and have participated as an instructor at national training seminars for the American Jail Association and the National Institute of Corrections- U.S. Department of Justice.

8. My experience in jail operations, jail administration and jail staff training has made me familiar with the basic standard of care which applies to jails such as the one in Polk County, Wisconsin in 2011-2014.

9. I have testified as a jail operations expert in civil rights and tort litigation since 1994 for

defendants and plaintiffs.

10. My expertise is in all areas of jail facility operations including: staffing, inmate assault (failure to protect), staff use-of-force, prisoner access to medical and mental health care, in-custody deaths, inmate suicide, sexual assault by staff/other prisoner, conditions of confinement, inmate supervision, inmate booking, classification and housing, strip/body cavity searches, jail records procedures, jail policies and procedures, and the training of correctional staff, supervisors and administrators.

11. Contemporary corrections industry standards and practices require all jail facilities to take all reasonable steps to protect inmates from harm.

12. In order to effectively manage all populations in a jail, the jail must deploy, direct and train staff appropriately for the population they are assigned to supervise, at the same time taking all reasonable steps to ensure the safety of each inmate.

13. Based upon my education, training and experience, every correctional facility must establish a "culture" that promotes the fair treatment of all inmates. It is especially important for the protection of female inmate in an environment that is historically dominated by males, such as a correctional facility.

14. Contemporary corrections industry standards and practices (e.c. ACA, NCCHC, etc.) recognize that differences exist between the male and female inmate populations and require jail administrators to pay special attention to the implications of these differences when making staffing and other operational decisions.

15. Based upon my training, education and experience, the most common route that leads women into the criminal justice system is their exposure to physical abuse, poverty, and substance abuse. This factor shapes program needs and behavior while in custody.

16. Many female inmates have lived in situations in which they do not feel safe, and they bring this experience with them to jail.

17. Jail administrators and staff must be aware of the significant pattern of emotional, physical, and sexual abuse that many of these women have experienced, and every precaution must be taken to ensure that the jail setting does not "re-create" those types of earlier life experiences when they make staffing, programming and operational decisions.

18. The facts in this case indicate that Polk County had a practice and custom of allowing female inmates to be supervised by a single male officer (assigned to the "bubble") in the maximum security housing areas, including cell, bath and shower areas of the units.

19. This practice is supported by Polk County Jail Policy C-200 Supervision and Management of Inmates which states that "Male and female officers will supervise and manage all inmates regardless of gender, with the exception of pat-down searches and strip searches."

20. This policy, practice and custom ignores the obvious and well known critical differences between male and female inmates that must be considered when making any jail operational decision, including staffing assignments.

21. The practice and custom also created the opportunity for male jail staff (specifically Christensen) to easily isolate female inmates in private areas and initiate sexual contacts and sexual assault upon the inmates.

22. Based upon my education, training and experience it is well known in the jail industry that minimizing the amount of time female inmates are supervised by male officers reduces the possibility of false accusations and actual instances of sexual abuse.

23. Except in emergency circumstances, certain tasks should never be performed by cross

gendered jailers. These tasks include body searches, pat searches, observation of inmates while they are undressed and overseeing the use of toilet and shower facilities.

24. Based upon my education, training and experience it is a commonly required practice in today's jails as a result of PREA to have any male officer who must enter the living units and/or cells of female inmates to have a female officer with them at all times. This basic practice protects the male officer and the female inmate from any false claims or allegations of misconduct and helps by creating a jail environment of accountability.

25. As with most unimpeded predator behavior, the sexual abuse allegations in these cases escalated from verbal harassment to touching, to exposure, forced oral and other sexual acts.

26. Based upon my education, training and experience, the custom and practice of Polk County of allowing a single male officer to control access to and supervise units housing female inmates created substantial safety risk to female inmates and is in violation of clearly established contemporary corrections industry standards and practices including ACA Standard 1A "Staff, volunteers, contractors, and inmates are protected from injury and illness in the workplace." and ACA Standard 2A "The community, staff, volunteers, contractors, and inmates are protected from harm. The number and severity of events are minimized."

27. There are three basic tenants to PREA 1) preventing sexual abuse, 2) detecting sexual abuse, and 3) responding to sexual abuse.

28. Polk County Jail Policy C-202 "Fraternization with Inmate/PREA", based upon my education, training and experience, completely ignores an essential and fundamental part of PREA, namely, educational programs for inmates and staff on what sexual harassment,

contact and assault is and how it should reported in the facility.

29. Jails are required to create a "safe" way for inmates to report abuse, without fear of retribution from staff perpetrators and this requires jails to train staff in how to notice symptoms of sexual abuse and the different strategies required when supervising "cross-gender" male and female gender inmates.

30. Inmates who are given all of the tools and knowledge relating to their right to be free from sexual abuse are more likely to be free from sexual abuse

31. There were sufficient facts and circumstances which should have alerted those responsible for the custody of female inmates of the potential risks to their safety. Official's knowledge of a substantial risk to an inmate's safety can be inferred by the very fact it was "obvious".

32. Officials cannot ignore or refuse to acknowledge or verify conditions by "refusing to get involved". It was the duty of administration and supervision of a jail to get involved when the risk to the safety of all the female inmates was so obvious.

33. Based upon my education, training and experience the practice and custom of the PCJ to allow a single male officer to control access to and supervise the sensitive housing areas of female inmates is directly related to the injuries suffered by JKJ and MJJ.

34. Based upon my training, education and experience, the failure of the PCJ Administration to promulgate policies and practices that protect female inmates from known safety risks (as required by PREA) indicates a "culture of indifference" and a reckless disregard for the safety of all inmates, especially females. Their actions are in violation of clearly established contemporary corrections industry standards and practices.

35. The Polk County Jail administration failed to implement offender and staff training and female inmate management guidelines as it relates to prevention of sexual harassment and assault (as required by PREA) and their actions created a serious and substantial risk to the safety of female inmates housed in the Polk County Jail.

36. The Polk County Jail administration ignored a substantial risk to the safety of female inmates, specifically JKJ and MJJ, and failed to take reasonable steps to protect inmates JKJ and MJJ from harm during their incarceration in violation of clearly established corrections industry standards and practices.

37. Based on my training, experiences, and education combined with the facts of this case, it was a highly predictable and foreseeable consequence of Polk County's failure to train jailers on PREA that inmates would be sexually assaulted.

38. Based on my training, experiences, and education combined with the facts of this case, it was a highly predictable and foreseeable consequence of Polk County's failure to train inmates on PREA that inmates would be sexually assaulted.

39. Based on my training, experiences, and education combined with the facts of this case, it was a highly predictable and foreseeable consequence of Polk County's culture that they created through explicit policies in violation of contemporary jail standards as well as through their failure to abide by the requirements of PREA that inmates would be sexually assaulted.

Dated: 7/28/16    By: _____