UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

M.J.J.,

        Plaintiff,

   v.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

        Defendants,               Case No. 15-CV-433

   and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

---

J.K.J.,

         Plaintiff,

   vs.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

         Defendants,        Case No. 15-CV-428

   and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

   Intervenor.

---

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT POLK COUNTY'S
PROPOSED FINDINGS OF FACT**

---

Defendant Polk County ("Polk County" or "County"), by its undersigned counsel,

submits the following Reply to Plaintiffs' Response to Defendant Polk County's Proposed

Findings of Fact in Support of its Motions for Summary Judgment in both Case No. 15-CV-428 and Case No. 15-CV-433.

## I.    JURISDICTION AND VENUE.

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1367(a).  (Case No. 15-C-428, ECF No. 41 ("J.K.J.'s Second Am. Compl."), ¶¶ 1–2; Case No. 15-C-433, ECF No. 42 ("M.J.J.'s Second Am. Compl."), ¶¶ 1–2.)

Plaintiff's Response:  Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

2.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2).   (*See* J.K.J.'s Second Am. Compl. ¶ 7; M.J.J.'s Second Am. Compl. ¶ 7.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

## II.    THE PARTIES.

3.    Plaintiff M.J.J. is an adult resident of the State of Wisconsin.  (Case No. 15-c-428, ECF No. 45 at 11:2-3; Case No. 15-c-422, ECF No. 48 at 11:2-3.)  From time to time from November 2011 to January 2014, M.J.J. was incarcerated in the Polk County Jail.  (Case No. 15-c-428, ECF No. 53 at 6; Case No. 15-c-433, ECF No. 54 at 6.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

4.      Plaintiff J.K.J (collectively with M.J.J. "Plaintiffs") is an adult resident of the State of Wisconsin  (Case No. 15-c-428, ECF No. 46 at 24:1-3; Case No. 15-c-433, ECF No. 47 at 24:1-3.)  From time to time from July 2012 to 2014, J.K.J. was incarcerated in the Polk County Jail.  (*Id*. at 6:9-12 & 44:10-18.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

5.      Defendant Darryl L. Christensen ("Christensen") is an adult resident of the State of Wisconsin and was, at times material to this action, employed as a jailer with Polk County Jail.  (Case No. 15-c-428, ECF No. 47 at 6:17-19; Case No. 15-c-433, ECF No. 46 at 6:17-19.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

6.      Christensen currently resides as a convicted prisoner at Dodge Correctional Facility located at 216 West Center Street, Juneau, Wisconsin, 53039.  (*Id*. at 57:11-19.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

7.      Defendant Polk County Sheriff's Department is a law enforcement agency of Polk County.  (Declaration of Scott Nargis ("Nargis Decl.") ¶ 2.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

8.      Polk County is a municipal corporation organized under the laws of the State of Wisconsin.  (*Id.* ¶ 3.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

9.      Intervenor Wisconsin Counties Mutual Insurance Company is a domestic insurance corporation authorized and licensed to do business in the State of Wisconsin located at 18550 West Capitol Drive, Brookfield, Wisconsin 53042  that issued an insurance policy to Polk County for the time periods at issue in this lawsuit subject to the terms, conditions, and exclusions of the policy. (Case No. 15-cv-428, ECF No. 18, ¶¶ 1 & 5; ECF No. 20, 2.; Case No. 15-cv-433, ECF No. 18, ¶¶ 1 & 5; ECF No. 20, 2.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

## III.    THE POLK COUNTY JAIL.

10.     The Polk County Jail, which is located at 1005 West Main Street in Balsam Lake Wisconsin, is a facility operated by Polk County that houses both convicted prisoners and pretrial detainees.  (Nargis Decl. ¶ 4.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

11.     Polk County Jail was constructed in 2003. (Case No. 15-c-428, ECF No. 47 at 66:22-25 & 67:1; Case No. 15-c-433, ECF No. 46 at 66:22-25 & 67:1.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

12.     The construction of Polk County Jail was done with knowledge, approval, and input from the Wisconsin Department of Corrections. (Nargis Decl. ¶ 5.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

13.     The Polk County Jail's configuration and staffing levels comply with Wisconsin statutes and administrative code. (*Id.* ¶ 6.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

14.     Within the Polk County Jail, there are two separate housing areas or pods: a minimum security area and a maximum security area or "max pod". The max pod contains a medium security section. (*Id.* ¶ 7.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

15.     Cameras were not added to the max pod due to budgetary concerns, the difficulty in storing the camera footage, and the staffing of the maximum security area with a jailer at all times. (Case No. 15-c-428, ECF No. 49 at 55:16-56:10; Case No. 15-c-433, ECF No. 50 at 55:16-56:10. & Case No. 15-c-428, ECF No. 52 at 32:1-10; Case No. 15-c-433, ECF No. 53 at 32:1-10.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

16.     The max pod has a central area, referred to as the "bubble," where a jailer is stationed to supervise inmates in that pod. (Nargis Decl. ¶ 8)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

17.     The bubble is surrounded by a hallway. (*Id.* ¶ 9.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

18.     Surrounding the hallway are various rooms on the ground level and on an upper level, some of which hold multiple inmates, while others are medical calls or rooms with miscellaneous purposes. (*Id*. ¶ 10.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

19.     The various cells within the max pod are segregated by sex. (*Id.* ¶ 11.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

20.     One-way glass comprises the outside of the various rooms, such that jailers can see inside the housing units from the bubble, but inmates cannot see inside the hallway or bubble unless an inmate were to stand directly in front of the one-way glass, shield their eyes, and press their face to the glass. (Case No. 15-c-428, ECF No. 46 at 77:19-22 and 79:23-80:10; Case No. 15-c-433, ECF No. 47 at 77:19-22 and 79:23-80:10; Case No. 15-c-428, ECF No. 47 at 67:2-18; Case No. 15-c-433, ECF No. 46 at 67:2-18; Nargis Decl. ¶ 12.)

Plaintiff's Response: Admit in part that the one-way glass comprises the outside of the various rooms, such that jailers can see inside the housing units from the bubble, but inmates cannot see inside the hallway or bubble. Deny in part that the only way an inmate is able to see into the bubble is by standing in front of the one-way glass, shielding their eyes, and pressing their face to the glass. According to Christensen, "Once you turned that lamp on then everyone from A to F and the medical cells behind you could see into the pod." (Case No. 15-cv-428, ECF 37 at 67:1668:4, ECF 48 at 65:3-14, ECF 47 at 97:23-98:15; Case No. 15-cv-433, ECF 38 at 67:16-68:4, ECF 45 at 65:3-14, ECF 46 at 97:23-98:15.)

**Polk County's Reply**:        Admit Christensen gave the above-quoted testimony, without admitting the accuracy of that statement.

21.     The jailer staffed inside the bubble has the ability to remotely open the doors to allow access to the max pod. (Nargis Decl. ¶ 13.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

22.     If the doors entering the max pod are not open, a jailer cannot enter the max pod without being let in by someone inside the bubble or by an officer in the master control room. (*Id.* ¶ 14.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

23.     The "X-Room" is a room located off of the hallway that surrounds the bubble in the max pod. (*Id.* ¶ 15.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

24.     The X-Room is used by inmates for classes, exercising or other Jail-sanctioned activities. (*Id.* ¶ 16; Case No. 15-c-428, ECF No. 45 at 70:20-25; Case No. 15-c-433, ECF No. 48 at 70:20-25.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

25.     The X-Room has a bathroom connected directly to it, and that bathroom is locked and accessible only through the X-Room. (Case No. 15-c-428, ECF No. 45 at 84:2-3; Case No. 15-c-433, ECF No. 48 at 84:2-3; Nargis Decl. ¶ 17.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

26.     The bubble should be staffed by a jailer at all times.  (*Id.* ¶ 18.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

27.     The Polk County Jail had multiple policies, rules, and procedures in effect during Plaintiffs' multiple incarcerations and employment of Christensen. (*Id.* ¶ 19.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

28.     All jailers received a copy of Polk County Jail's Policy and Procedures Manual (the "Jail Manual") upon beginning their employment. (*Id.* ¶ 20; Case No. 15-c-428, ECF No. 47 at 14:3-6; Case No. 15-c-433, ECF No. 46 at 14:3-6.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

29.     Polk County jailers are expected to read and understand the Jail Manual.  (Nargis Decl. ¶ 21.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

30.     Jail Manual Section 21 C-200 provides that male and female officers will supervise and manage all inmates regardless of gender, with the exception of pat down searches and strip searches. (Nargis Decl. ¶ 22, Ex. A at 2.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

31.    Jail Manual Section 21 C-202 "Fraternization with Inmates/PREA" prohibits jailers from engaging in inappropriate actions with inmates and advised officers of PREA's ("Prisoner Rape Elimination Act") prohibition on sexual and/or inappropriate contact between jailers and inmates.  (*Id*. ¶ 23, Ex. B; Case No. 15-c-428, ECF No. 48 at 74:24-75:5; Case No. 15-c-433, ECF No. 49 at 74:24-75:5.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

32.    Section 21 C-202 was revised in 2012 to add the PREA information. (Nargis Decl. ¶ 24.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

33.    Specifically, 21 C-202 states that "In addition to Department policies against sexual misconduct, Wisconsin State Statutes make it a criminal offense for correctional staff members to have sexual intercourse or contact with an individual confined in a correctional institution." (*Id*. ¶ 23, Ex. B at 7.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

34.    Jail Manual Section 21 C-203 prohibited inappropriate fraternization between staff. (*Id.* ¶ 25, Ex. C; Case No. 15-c-428, ECF No. 48 at 82:1-6; Case No. 15-c-433, ECF No. 49 at 82:1-6.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

35.    Jail Manual Section I-200 provides a grievance policy for inmates, and was to be used, among other things, for inmate grievances related to sexual assault or harassment. (Nargis Decl. ¶ 26, Ex. D.)

Plaintiff's Response: Admit that Polk County believes this was the policy that was to be used for sexual assault or harassment, however, the citation to Ex. D is incorrect. In addition, the policy does not explicitly say that that it is to be used in such circumstances and the inmates were not explicitly made aware of that (Nargis Decl. ¶ 26, Ex. E; Ex. D; Case No. 15-c-433, ECF No. 52 at 19:2820:10; Case No. 15-c-428, ECF No. 51 at 19:28-20:10.)

**Polk County's Reply:**        Plaintiffs do not dispute that Polk County maintained a grievance policy, that the policy was provided to all inmates, and that the grievance policy was to be used for grievances related to sexual assault or harassment.  Plaintiffs only dispute that the policy explicitly states it is to be used in such circumstances, and plaintiffs further claim inmates "were not made explicitly aware of that."   The inmate grievance procedure is provided to the every inmate in the Inmate Handbook.  (*See* 7/1/16 Declaration of Scott Nargis ("7/1/16 Nargis Decl.") ¶ 29, Ex. F at 10, filed in Case No. 15-CV-428, ECF No. 55 and Case No. 15-CV-433, ECF No. 56.)  On the same page of the Inmate Handbook containing the grievance procedure, the Inmate Handbook states: "if you are being pressured, threatened, or extorted for sex you

should report this to jail staff immediately." (*Id.*) The testimony of Lynelle Manning cited by plaintiffs does not create a dispute as to whether inmates were advised to utilize the grievance process to report inappropriate sexual advances, since Manning confirmed that inmates were all given the Inmate Handbook containing the jail rules, but merely testified they were not given any additional information regarding "reporting sexual assault." (Deposition of Peter Johnson ("Sheriff Johnson Dep.") 19:18-20:10, filed in Case No. 15-CV-428, ECF 52 and Case No. 15-CV-433, ECF No. 53.)

36.     Specifically, I-200 states that "inmates be provided a grievance procedure as an administrative means for the expression and resolution of issues relating to personal health and welfare of inmates, or the operations and services for the facility." (*Id.* at 1.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

37.     I-200 also states that "Inmates may pursue grievances without fear of reprisal or punitive action." (*Id.*)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

38.     Jail Manual Section I-100 "Inmate Rights" provided that inmates have a right to, among other things, access to courts, access to legal materials, access to a grievance procedure, protection from harm and freedom from sexual harassment by jail staff. (*Id.* ¶ 27, Ex. E.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

39.    Upon booking of each inmate, Polk County Jail provided a handbook to each inmate outlining, among other things, the grievance policy and procedures of the jail. (*Id.* ¶ 28; Case No. 15-c-428, ECF No. 48 at 99:23-25 & 100:3-4; Case No. 15-c-433, ECF No. 49 at 99:23-25 & 100:3-4.)

Plaintiff's Response: Admit that inmates are provided the Inmate Handbook, Exhibit F of Nargis' Declaration. (Case No. 15-c-433, ECF No. 52 at 19:28-20:10; Case No. 15-c-428, ECF No. 51 at 19:28-20:10.) Deny to the extent that the proposed finding of fact is vague and arguably could be interpreted to mean that additional handbooks were supplied.

**Polk County's Reply:** The plaintiffs do not dispute that each inmate was given an Inmate Handbook at the time of booking, the plaintiffs' caveat to that admission is irrelevant and unsupported, and, therefore, no reply is required.

40.    Upon being hired, Polk County jailers are required to be certified as corrections officers by the State of Wisconsin Department of Justice Law Enforcement Standards Board pursuant to training and qualification standards established by the State.  (Nargis Decl. ¶ 30.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

41.    As part of their training, all Polk County jailers are instructed that inappropriate and sexual contact with inmates is unprofessional and in violation of the Wisconsin Statutes.  (*Id.* ¶ 31)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

42.     Polk County Jail provides training to all jailers on PREA, including training with regard to avoiding fraternization and sexual contact with inmates. (*Id.* ¶¶ 35-36.)

Plaintiff's Response: Deny. Christensen and even Captain Nargis admitted that they have not had specific PREA training. (Case No. 15-c-433, ECF No. 49 at 36:25-37:1, ECF 46 at 84:10-22; Case No. 15-c-428, ECF Co. 48 at 36:25-37:1, ECF 47 at 84:10-22.) The only "training" that was provided specific to PREA from Polk County was at a meeting on February 20, 2014, which he followed up the following day with a 3 line summary. Captain Nargis does not know how long PREA was discussed, if it was more than 5 minutes, or if it consisted of only three bullet points that were read to staff word-for-word. (Case No. 15-c-433, ECF No. 49 at 43:1-5; 47:2048:3; Case No. 15-c-428, ECF No. 48 at 43:1-5; 47:20-48:3.) In addition, all jailers were not trained as we know that Christensen was not in attendance of this alleged training. (Case No. 15c-433, ECF No. 49 at 47:7-9; Case No. 15-c-428, ECF No. 48 at 47:7-9.) Captain Nargis was asked in his deposition, "Other than the 2014 PREA training that you provided to your staff, have you provided any other PREA training to the jailers in your employ? A: No." (Case No. 15c-433, ECF No. 49 at 115:13-16; Case No. 15-c-428, ECF No. 48 at 115:13-16.) Christensen and Manning both testified that they had not been trained on PREA. (Case No. 15-c-433, ECF No. 46 at 84:10-13, ECF No. 52 at 14:17-25; Case No. 15-c-428, ECF No. 47 at 84:10-13, ECF No. 51 at 14:17-25.) If Polk County is attempting to allege that training on this subject is through daily trainings, no information has been provided in response to Plaintiffs' specific discovery requests for this information so as to indicate this training has been received. (Lida Bannink Affidavit July 29, 2016 ("Bannink Aff.") Ex. C.) Interrogatory Number 13 specifically

14

requested to describe in detail any and all training on the issue of fraternization with inmates, including sexual conduct. (Bannink Aff. Ex. A.) Request for Production of Documents Number 3 requests all documents generated as a result of training received by Defendant Christensen, including but not limited to PREA. (Bannink Aff. Ex. A.) No documents were provided that any alleged daily trainings, or any other training from Polk County included PREA. (Bannink Aff Exs. B, C.) Jailers are required to sign and acknowledge that they have read the documents or watched the videos, there is no quiz or any proof of completion other than an honor system. (Case No. 15-c433, ECF No. 49 at 26:6-20; Case No. 15-c-428, ECF No. 48 at 26:6-20.) Despite requesting all training materials, no signature pages were provided to show that any of the jailers, including Christensen, completed the alleged "daily training." (Bannink Aff. Exs. B, C.)

**Polk County's Reply:**          Although the plaintiffs purport to deny the County's proposed finding of fact, as their response makes clear, plaintiffs do not dispute that Polk County provided training on PREA to its jail officers February 20, 2014.  Captain Nargis did not recall the details or the length of the training, but testified:  "At our training session I discussed it with the staff.  I told them what PREA was, what it means for us and what the prohibitions are." (Deposition of Scott Nargis ("Nargis Dep.") 42, filed in Case No. 15-CV-428, ECF No. 48 and Case No. 15-CV-433, ECF No. 49.)   Captain Nargis also stated:  "At a meeting with Polk County jailers on February 20, 2014, I discussed the basics of PREA.  In particular, I discussed that the Jail and PREA do not allow or condone inappropriate contact between inmates, or between staff and inmates.  In addition, I stated that if someone, either an inmate or staff member, presents a concern about inappropriate contact, it should be reported to me."  (7/1/16 Nargis Decl. ¶ 35.)  The next day, Captain Nargis provided the staff with an email that reiterated "the meeting minutes and spelled out what the prohibitions were and what the expectation for

their behavior was." (Nargis Dep. 42.)  Although Christensen did not attend the PREA training, he did receive the email and had reviewed the County policy on Inmate Fraternization/PREA. (Deposition of Darryl Christensen ("Christensen Dep.") 17-18, 20, filed in Case No. 15-CV-426, ECF No. 37 and Case No. 15-CV-433, ECF No. 38.)   Plaintiffs blatantly mischaracterize Nargis's testimony by stating that the PREA training may have "consisted of only three bullet points that were read to staff word-for-word."  Nargis gave no such testimony.  To the contrary, in addition to the testimony quoted above, Nargis specifically denied the training was confined to the specific words contained in the email, stating "I believe I spoke more about it than that.  This is just bullet points of an outline for me to present."  (Nargis Dep. 47.)   Further, plaintiffs themselves admit in response to Proposed Finding of Fact No. 45, *infra*, that "Jail Captain Nargis conveyed that Polk County Jail does not allow or condone inappropriate contact between inmates, or staff and inmates, and that all concerns about such topics should be directed to himself."  (*See* Response to PCPFOF ¶ 45, *infra*.)

In addition, as set forth in Polk County's responses to Plaintiffs' written discovery, jailers received field training when hired, periodic training throughout the year, and daily training on 90 different topics.   (Affidavit of Linda Bannink ("Bannink Aff.") Ex. B at 7-8, Answer to Interrogatory No. 13, and referenced training topics/schedules and Jail Policy Manual, filed in Case No. 15-CV-428, ECF No. 86 and Case No. 15-CV-433, ECF No. 87.)   Those topics included "high risk" policies, and would have included "information relevant to 'the issue of fraternization with inmates, including sexual conduct'."  (*Id.*)  Polk County produced the documents in its possession related to this training, but, does not generate or maintain documents for all material on which it provides training.  (*Id.* at 14, Response to Request for Production No. 3.)

16

43.     All jailers with the Polk County Jail receive continual training on Polk County Jail policies and procedures.  (*Id.* ¶ 32.)

Plaintiff's Response: Deny that jailers "receive" continual training on policies. Nargis testified that there is a daily training program extracted from portions of their policy manual that are "high frequency and/or low risk matters" that jailers are supposed to read. (Case No. 15-c-433, ECF No. 49 at 25:25-26:8; Case No. 15-c-428, ECF No. 48 at 25:25-26:8.) No proof has been provided of what the daily training schedule was (despite asking for it) (*See* Bannink Aff. Ex. B, RFPD. No. 3; Ex. C.) Jailers are required to sign and acknowledge that they have read the documents or watched the videos, there is no quiz or any proof of completion other than an honor system. (15-c-433, ECF No. 49 at 26:6-20; 15-c-428 ECF No. 48 at 26:6-20.) Despite requesting all training materials, no signature pages were provided to show that any of the jailers, including Christensen, completed the alleged "daily training." (Bannink Aff. Exs. B, C.) In addition, simply reading portions of the manual can hardly be categorized as "receiving" training. Admit that jailers receiving training on procedures, such as Taser training, CPR training, blood borne pathogens, fire, etc. (Case No. 15-c-433, ECF No. 49 at Ex. 3; Case No. 15-c-428 ECF No. 48 at Ex. 3.)

**Polk County's Reply:**        Plaintiffs provide no basis to dispute that Polk County provides continual training on its policies and procedures.  Rather, Plaintiffs' question the quality of the training and express frustration that Polk County does not generate or maintain written materials for all of the training it provides.  (Bannink Aff. Ex. B at 14, Response to Request for Production No. 3.)  Plaintiffs cannot dispute, however, that Polk County provides continual training on its policies and procedures, and it is undisputed that the training provided by Polk

County meets the requirements of Wisconsin law.  (Deposition of Brad Hompe ("Hompe Dep.") 63, filed in Case No. 15-CV-428, ECF No. 72 and Case No. 15-CV-433, ECF No. 73.)

44.     Polk County Jail Captain Nargis discussed the impact of PREA with jailers on February 20, 2014.  (*Id*. ¶ 35; Case No. 15-c-428, ECF No. 48 at 41:5-13; Case No. 15-c-433, ECF No. 49 at 41:5-13; Case No. 15-c-428, ECF No. 50 at 8:11-10:10 & 38:25-39:2; Case No. 15-c-433, ECF No. 51 at 8:11-10:10 & 38:25-39:2.)

Plaintiff's Response: Deny. The email from Captain Nargis states that he discussed the "basics of PREA" and not the "impact" of PREA. (Case No. 15-c-433, ECF No. 49 at Ex. 4; Case No. 15-c428 ECF No. 48 at Ex. 4.) Captain Nargis does not know how long PREA was discussed, if it was more than 5 minutes, or if it consisted of only three bullet points that were read to staff word-for-word. (Case No. 15-c-433, ECF No. 49 at 43:1-5; 47:20-48:3; Case No. 15-c-428 ECF No. 48 43:1-5; 47:20-48:3) it is admitted that Christensen was not in attendance of this "training."

**<u>Polk County's Reply:</u>**         Captain Nargis testified with regard to the February 20, 2014 training:  "I discussed it with the staff.  I told them what PREA was, what it means for us and what the prohibitions are."  (Nargis Dep. 42.)  Captain Nargis specifically testified the training was not confined to the contents of his email the next day, and did not testify that he may have only read the three bullet points from his email word for word; to the contrary, he testified that he "spoke more about it than that," and that the email included "just bullet points of an outline for me to present."  (Nargis Dep. 47.)

45.     Specifically regarding PREA, Jail Captain Nargis conveyed that Polk County Jail does not allow or condone inappropriate contact between inmates, or staff and inmates, and that all concerns about such topics should be directed to himself. (Nargis Decl. ¶¶ 35-36, Ex. G.)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

46.    On February 21, 2014, Jail Captain Nargis sent an email summarizing these points to jailers, including Christensen, who missed the meeting the previous day. (*Id.*)

Plaintiff's Response: Admit.

**Polk County's Reply:** Because the plaintiff does not dispute these facts, no reply is required.

47.    Polk County has provided training to jailers regarding sexual deviancy and its relation to inmates.  (*Id.* ¶ 33.)

Plaintiff's Response: Deny. While Nargis states in his declaration that he provided training regarding sexual deviancy to jailers as it relates to inmates, despite asking for this specific information in discovery, no documents were received indicating that this raining was provided and thus, this proposed finding is contrary to prior discovery requests. There is nothing identified in the yearly training plans produced from year 2005-2014 that this training was offered. (Case No. 15-c-433, ECF No. 49 at Ex. 3; Case No. 15-c-428 ECF No. at Ex. 3.) Interrogatory Number 13 of Plaintiff's Discovery request specifically requested to describe in detail any and all training on the issue of fraternization with inmates, including sexual conduct. Sexual deviancy was not identified. (Bannink Aff. Ex. A, B, C.) Request for Production of Documents Number 3 requests all documents generated as a result of training received by Defendant Christensen, including but not limited to PREA. (Bannink Aff. Ex. A.) No documents were provided that any daily training or any other training from Polk County included sexual deviancy and its relation to inmates. (Bannink Aff. Exs. B, C.)

**Polk County's Reply:**        Plaintiffs offer no basis on which to dispute the proposed finding of fact, other than the fact they did not receive documents from the training session.  Polk County produced the documents in its possession related to this training, but does not generate or maintain documents for all material on which it provides training.  (Bannink Aff. ¶ 14, Response to Request for Production No. 3.)

48.    Training regarding inmate supervision techniques is provided to all Polk County jailers.  (*Id*. ¶ 34.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

49.    The Jail policy against fraternization with inmates is "designed to reduce potential conflict of interest or impairment of the supervision and incarceration provided by the Polk County Jail for prisoners in the custody of the Polk County Sheriff's Office." (*Id*. ¶ 23, Ex. B at 1.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

50.    All Jailers, including Christensen, are under the supervision of Jail Captain Nargis while on duty at Polk County Jail.  (*Id*. ¶ 37; Case No. 15-c-428, ECF No. 48 at 52:8-15; Case No. 15-c-433, ECF No. 49 at 52:8-15.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

51.     From 2011 to 2014, the types of discipline which might be issued to a Polk County Jail employee included a written reprimand, an official reprimand, suspension without pay, demotion, and termination.  (Nargis Decl. ¶ 39.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

52.     From 2011 to 2014, Polk County Jail employees were periodically evaluated and reviewed.  (*Id.* ¶ 40.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

53.     From 2011 to 2014, if a Polk County Jail supervisor determined that an employee had not complied with policies or procedures, that supervisor evaluated whether the violation warranted any discipline or retraining, and the employee would have been informed of the violation, and may have been retrained on the policy or procedure or formally disciplined.  (*Id.* ¶ 41.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

54.     Polk County has not implemented policies enacting every provision of PREA because, among other reasons, the County has determined that certain provisions of PREA are not appropriate correctional practices for the Polk County Jail. (*Id.* ¶ 43.) For example, PREA advises that an officer should always announce his or her presence before entering the inmates'

living unit.  This practice would give inmates warning of officer inspections that are intended to be unscheduled.  (Case No. 15-c-428, ECF No. 48 at 51:10-52:7; Case No. 15-c-433, ECF No. 49 at 51:10-52:7.)

Plaintiff's Response: Admit that Polk County does not believe it is a good practice to an officer's presence prior to entering the inmates' living unit.

**Polk County's Reply:**       Because the plaintiff does not dispute these facts, no reply is required.

55.     Additionally, Polk County Jail does not allow posters on walls because of the potential to hide contraband behind the posters.  (Nargis Decl. ¶ 42; Case No. 15-c-428, ECF No. 48 at 107:18-108:4; Case No. 15-c-433, ECF No. 49 at 107:18-108:4.)

Plaintiff's Response: Admit.

**Polk County's Reply:**       Because the plaintiff does not dispute these facts, no reply is required.

56.     Employing additional female jailers at the Polk County Jail, so that every shift would have at least one male jailer and one female jailer in the bubble, would cost up to $600,000 in additional salary and benefits, not including the cost of training.  (Nargis Decl. ¶ 44.)

Plaintiff's Response: Deny. Not only is this an expert opinion of which Captain Nargis has shown no basis for, in the decade, plus, of research that went into creating PREA legislation, it was estimated that the "estimate average annualized compliance cost per unit facility is $49,959 for jails. National Standards To Prevent, Detect, and Respond to Prison Rape, 77 FR 37106-01.

**Polk County's Reply:**       Plaintiff's response provides no basis to dispute Captain Nargis's testimony.  Captain Nargis's statement concerns the cost to have one male and one

female jailer in the bubble, while plaintiff cites a study allegedly relating to the cost of complying with PREA legislation.

57.     Only one other instance of inappropriate contact with an inmate, other than Christensen, was ever reported at the Jail, and after investigation the alleged physical contact was found to be without evidence. (*Id.* ¶ 48; Case No. 15-c-428, ECF No. 48 at 68:16-70:2; Case No. 15-c-433, ECF No. 49 at 68:16-70:2.)

Plaintiff's Response: Deny. During Captain Nargis' deposition, when asked "do you recall what the conclusion of your investigation was" he stated, "[t]his is several pages and I don't want to read and take your time up by reading the entire thing. My recollection of the investigation was that it did not appear there was any evidence to support a claim of physical contact, but there definitely was some undue attention provided by Officer Jorgensen to one or more female inmates." (Case No. 15-c-433, ECF No. 49 at 69:20-70:4; Case No. 15-c-428, ECF No. 48 at 69:20-70:4.) However, in the actual investigation documents provided via discovery created near the time of the incident, no conclusion was found at all. (Bannink Aff. Ex. D.) It is known that Jorgensen resigned shortly after being prompted with the allegations. (Case No. 15-c433, ECF No. 53 at 30:5-9; Case No. 15-c-428, ECF No. 52 at 30:5-9.) It is also known that, when Christensen resigned Polk County jail terminated their investigation because Christensen was no longer an employee. (Case No. 15-c-433, ECF No. 53 at 25:24-25:4; Case No. 15-c-428, ECF No. 52 at 25:24-25:4.) With regards to Jorgensen, Sheriff Johnson does know if they "had come to a final discipline or if he resigned prior to that." (Case No. 15-c-433, ECF No. 53 at 30:14-18; Case No. 15-c-428, ECF No. 52 at 30:1418.)

**Polk County's Reply:**      Plaintiffs dispute that Captain Nargis's report reached a conclusion.  However, the report states, among other pertinent findings, that "our investigation

did not reveal anything that could substantiate these claims." (Bannink Aff., Ex. D, PCJ3746.) No Dispute that Jorgensen resigned shortly after being confronted with the allegations. Dispute that Polk County terminated its investigation of Christensen because he resigned, although he did so immediately upon being confronted with the allegations made by Inmate R. (*See* Affidavit of Paul Cranley ("Cranley Aff.") ¶ 3, Ex. A, Polk County Sheriff's "Request for Outside Agency, Criminal Investigation," PCJ0004405-4410.) Rather, Polk County referred the matter to the Wisconsin Department of Justice Division of Criminal Investigations ("DCI") to conduct a criminal investigation, which it did. (*Id*.)

## IV.   FORMER JAILER CHRISTENSEN.

58.     Christensen was employed as a jailer with the Polk County Jail from July 1995 until October 2014. (Case No. 15-c-428, ECF No. 47 at 6:17-22 & 8:3-5; Case No. 15-c-433, ECF No. 46 at 6:17-22 & 8:3-5.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

59.     In 2000, Christensen was promoted briefly to Sergeant until 2002, when he voluntarily resigned from the promoted position back to the jailer position. (*Id*. at 78:13-17.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

60.     In addition to his position as a jailer at Polk County Jail, Christensen was also briefly employed as a Safety Officer. (*Id*. at 6:17-22.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

61.    Before and during the span of his sexual encounters with Plaintiffs, Christensen also worked for the Amery Fire Department. (*Id*. at 23:5-11.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

62.    In 2010, Christensen was promoted to Fire Chief of the Amery Fire Department. (*Id*. at 24:3-12.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

63.    At all times during his employment with Polk County, Christensen was a Certified Jail Officer by the Wisconsin Law Enforcement Standards Board. (*Id*. at 8:15-9:4.)

Plaintiff's Response: Deny. Christensen began his employment with Polk County in 1995. (Christensen Depo. 78:8-10.) Christensen was not certified until after he took his four week course on June 4, 1996. (Christensen Depo. Ex. 2.)

**Polk County's Reply:**        No Dispute that Christensen was not certified immediately upon being hired, but he was certified within 12 months of starting work, as required by Wis. Stat. § 165.85(4)(b).

64.    Christensen was recertified for this position every two years. (Case No. 15-c-428, ECF No. 47 at 9:2-4; Case No. 15-c-433, ECF No. 46 at 9:2-4.)

Plaintiff's Response: Admit.

**<u>Polk County's Reply:</u>**          Because the plaintiff does not dispute these facts, no reply is required.

65.     While obtaining his initial certification to become a Certified Jail Officer, Christensen received training from a college professor related to sexual interactions with inmates. (*Id.* ¶ at 12:4-18.)

Plaintiff's Response:  Admit.

**<u>Polk County's Reply:</u>**          Because the plaintiff does not dispute these facts, no reply is required.

66.     Christensen was "repeatedly trained" not to have sexual encounters with inmates. (*Id.* ¶ at 73:22-23.)

Plaintiff's Response: Deny. The only training Defendant Christensen had regarding the concept of correctional officers having sexual contact with inmates consisted of a four-week program given in 1996 when he was first certified as a jail officer. (Case No. 15-c-433, ECF No. 46 at 11:1714:2; 81:21-25; Case No. 15-c-428, ECF No. 47 at 11:17-14:2; 81:21-25.) This was the only training Defendant Christensen had outside the jail. (*Id.* at 82:1-6). Defendant Christensen does not recall Polk County offering or provide any in-house training to its correctional officers on the topic of sexual contact with inmates or PREA (*Id.* at 12:21-13:11; 20:19-25). Christen was only once trained not to have sexual interactions with inmates, and that was 1996.

**<u>Polk County's Reply</u>:**          No dispute Christensen gave the cited testimony.  However, as set forth in Polk County's responses to Plaintiffs' written discovery, jailers received field training when hired, periodic training throughout the year, and daily training on 90 different topics.  (Bannink Aff. Ex. B at 7-8, Answer to Interrogatory No. 13, and referenced training

topics/schedules and Jail Policy Manual.)  Those topics included "high risk" policies, and would have included "information relevant to 'the issue of fraternization with inmates, including sexual conduct'."  (*Id*.)

67.     Christensen knew that it was unlawful to have sexual interactions with inmates before he became a Certified Jail Officer. (*Id*. at 12:19-22.)

Plaintiff's Response: Admit.

**Polk County's Reply:**       Because the plaintiff does not dispute these facts, no reply is required.

68.     In addition to the training Christensen received to become a Certified Jail Officer at Polk County Jail, Christensen was also provided a copy of the Jail Manual upon beginning his employment. (*Id*. at 14:3-6.)

Plaintiff's Response: Admit.

**Polk County's Reply:**       Because the plaintiff does not dispute these facts, no reply is required.

69.     Christensen was required to, and did read, the Jail Manual in its entirety. (*Id*. at 14:7-10.)

Plaintiff's Response: Deny. Christensen stated that he had the "opportunity" to read it. He did not admit that he actually read it. (Case No. 15-c-433, ECF No. 46 at 14:7-10; Case No. 15-c-428, ECF No. 47 at 14:7-10.)

**Polk County's Reply:**       Although in the portion of Christensen's deposition cited above, Christensen was asked whether he "had the opportunity" to read the Jail Manual, in the context of the entire deposition his testimony is more accurately interpreted to mean he did, in fact, read the Jail Manual.  Christensen testified unequivocally that he read and understood the

policies prohibiting fraternization with inmates.  (Christensen Dep. 15-18.)   Christensen was

asked, with reference to the policy entitled "Fraternization with Inmates/PREA":

> Q:   And you knew, having read the policies of Polk County,
>        that that was, in fact, the policy of Polk County, true?
>
> A:    Yes, yes.

70.   Before engaging in inappropriate contact with Plaintiffs, Christensen was familiar

with Polk County Jail's policy prohibiting sexual contact with inmates. (*Id*. at 15:24-25 & 16:1-

18.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply

is required.

71.   Before engaging in inappropriate contact with Plaintiffs, Christensen was familiar

with Polk County Jail's policy regarding "Fraternization with Inmates" and the subsequent 2012

"Fraternization with Inmates/PREA" policy.  (*Id*. at 18:11-14 & 19:7-11.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply

is required.

72.   Before engaging in inappropriate contact with Plaintiffs, Christensen was aware

that "there was a law that prohibited correctional officers from having sexual contact with

inmates."  (*Id*. at 17:19-23 & 18:15-19.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply

is required.

73.     Christensen was aware that Polk County Jail had a policy that provided as follows: "Under no circumstances will any inmate be the object of verbal, physical, emotional, psychological or sexual harassment by facility staff.  Any officer engaged in such actions is subject to disciplinary charges and/or termination."  (*Id*. at 16:6-18.)

Plaintiff's Response: Admit.

**Polk County's Reply:**     Because the plaintiff does not dispute these facts, no reply is required.

74.     Christensen was required to read a portion of the Jail Manual on each shift. (*Id*. at 82:19-24.)

Plaintiff's Response: Admit.

**Polk County's Reply:**     Because the plaintiff does not dispute these facts, no reply is required.

75.     Christensen knew it was a crime to have sexual encounters with inmates. (*Id*. at 73:24-25 & 74:1-8.)

Plaintiff's Response: Admit, however, the citation above references Polk County's policies.

**Polk County's Reply:**     Because the plaintiff does not dispute these facts, no reply is required.

76.     Prior to these sexual misconduct cases, only one other instance of sexual harassment by Christensen was reported in Polk County Jail, and it was promptly investigated and determined to be without foundation. (Case No. 15-c-428, ECF No. 48 at 55:17-58:16; Case No. 15-c-433, ECF No. 49 at 55:17-58:16.)

29

Plaintiff's Response: Admit that there was one prior instance of sexual harassment against Christensen and admit that it was investigated. Captain Nargis wrote in his report that, "It's an inmate's perception of something that happened that didn't appear to happen that way." (Moe Depo. Ex. 2.)

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

77.     Christensen was cited once for insubordination. (Case No. 15-c-428, ECF No. 47 at 114:1-5; Case No. 15-c-433, ECF No. 46 at 114:1-5.)

Plaintiff's Response:  Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

78.     Christensen was cited once for excessive use of force. (*Id*. at 117:24-119:13.)

Plaintiff's Response:  Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

79.     Until the allegations of sexual misconduct, the Polk County Jail Captain Nargis never questioned Christensen's honesty. (Case No. 15-c-428, ECF No. 48 at 54:19-20; Case No. 15-c-433, ECF No. 49 at 54:19-20.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

80.     Christensen knows and admits that he was not acting within the scope of his employment when engaging in the sexual acts with Plaintiffs. (Case No. 15-c-428, ECF No. 47 at 58:23-25 & 59:1-13; Case No. 15-c-433, ECF No. 46 at 58:23-25 & 59:1-13.)

Plaintiff's Response: Admit that this is Christensen's belief. Deny as to the extent that this attempts to state a legal conclusion.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

81.     When Christensen engaged in sexual misconduct with Plaintiffs, he did so for the sole purpose of his own personal gratification. (*Id*. at 59:6-10.)

Plaintiff's Response: Admit that this was Christensen's statement. Deny to the extent that this attempts to state a legal conclusion.

**Polk County's Reply:**        Plaintiffs do not dispute these facts.   Christensen's testimony that his actions were motivated by his own desire for personal gratification is not a legal conclusion and is admissible, and now undisputed, evidence.

82.     Christensen's sexual misconduct with Plaintiffs did not serve Polk County's interests. (*Id*. at 59:11-13.)

Plaintiff's Response: Admit that this was Christensen's statement. Deny to the extent that this attempts to state a legal conclusion.

**Polk County's Reply:**        Plaintiffs do not dispute these facts.   Christensen has testified he understood what his job entailed and what the County's policies were with respect to engaging in sex with inmates; his testimony that he was not serving Polk County's interests when he violated those policies to seek personal gratification is not a legal conclusion and is admissible, and now undisputed, evidence.

83.     Christensen was generally well liked by his Polk County Jail coworkers and was known to have a good rapport with the inmates. (Case No. 15-c-428, ECF No. 48 at 54:4-6; Case No. 15-c-433, ECF No. 49 at 54:4-6.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

84.     No employee, staff member, or jailer at Polk County Jail was aware of Christensen's sexual encounters with Plaintiffs. (Case No. 15-c-428, ECF No. 50 at 17:20-18:5; Case No. 15-c-433, ECF No. 51 at 17:20-18:5; Case No. 15-c-428, ECF No. 51 at 23:25-24:6; Case No. 15-c-433, ECF No. 52 at 23:25-24:6.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

85.     When Polk County's Jail Captain Nargis discovered Christensen's sexual assault, he was shocked because "[i]t did not fall in line with anything [he] knew of Darryl Christensen to be or support or stand for." (Case No. 15-c-428, ECF No. 48 at 105:21-23; Case No. 15-c-433, ECF No. 49 at 105:21-23.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

86.     The Jail Captain of Polk County Jail never witnessed Christensen treating Plaintiffs differently than other inmates. (*Id*. at 110:5-12.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

## V.     M.J.J.'S SEXUAL CONTACT WITH CHRISTENSEN.

87.     M.J.J. was incarcerated in the Polk County Jail nine different times between November 3, 2011 and January 22, 2014. (Case No. 15-c-428, ECF No. 47 at 31:22-32:5; Case No. 15-c-433, ECF No. 46 at 31:22-32:5.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

88.     While incarcerated in the Polk County Jail, Christensen engaged in numerous inappropriate sexual contacts with M.J.J. (Case No. 15-c-428, ECF No. 45 at 84:10-12 & 87:7-20; & 90:22-91:3; Case No. 15-c-433, ECF No. 48 at 84:10-12 & 87:7-20; & 90:22-91:3.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

89.     Christensen's sexual acts with M.J.J. began with inappropriate sexual comments that eventually lead to physical sexual contact. (*Id*. at 64:1-4 & 67:1-9.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

90.     Christensen engaged in oral sex with M.J.J. (*Id*. at 87:17-19.)

Plaintiff's Response: Admit.

**Polk County's Reply:**      Because the plaintiff does not dispute these facts, no reply is required.

91.     Christensen engaged in sexual acts and sexual intercourse with M.J.J. in the booking room, X Room, X Room bathroom, and bubble. (*Id*. at 81:25-82:3; 83:19-84:1; & 90:22-91:3.)

Plaintiff's Response: Admit.

**Polk County's Reply:**      Because the plaintiff does not dispute these facts, no reply is required.

92.     M.J.J. did not report her sexual encounters with Christensen to anyone employed at Polk County Jail. (*Id*. at 46:7-9; 53:11-14.)

Plaintiff's Response: Admit. She did not report the assaults until the DOJ investigators asked her. (Case No. 15-c-433, ECF No. 48 at 53:11-14; Case No. 15-c-428, ECF No. 45 at 53:11-14.)

**Polk County's Reply:**      Because the plaintiff does not dispute these facts, no reply is required.

93.     Christensen repeatedly asked whether M.J.J. was going to report their encounters, and she assured him that she would not tell anyone, including other prisoners. (*Id*. at 46:1-6; 53:18-25; & 54:1-3.)

Plaintiff's Response: Admit.

**Polk County's Reply:**      Because the plaintiff does not dispute these facts, no reply is required.

94.     Until Christensen was told of M.J.J.'s sexual assault allegations, he did not think that anyone at Polk County Jail knew of his sexual encounters with M.J.J. (Case No. 15-c-428, ECF No. 48 at 58:7-14; Case No. 15-c-433, ECF No. 49 at 58:7-14.)

Plaintiff's Response: Admit, although the citation is one again incorrect.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.  (*See* Christensen Dep. 58.)

## VI.     J.K.J.'s SEXUAL INTERACTIONS WITH CHRISTENSEN.

95.     J.K.J. was incarcerated in the Polk County Jail various times between 2012 and 2014.  (Case No. 15-c-428, ECF No. 47 at 44:3-8; Case No. 15-c-433, ECF No. 46 at 44:3-8.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

96.     Christensen's sexual advances towards J.K.J. began in 2012. (Case No. 15-c-428, ECF No. 46 at 44:10-13; Case No. 15-c-433, ECF No. 47 at 44:10-13.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

97.     The majority of Christensen's sexual encounters with J.K.J occurred in the X Room and bubble. (*Id*. at 80:19-81:11.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

98.     Christensen engaged in oral sex with J.K.J. (*Id*. at 81:4-11.)

Plaintiff's Response: Admit.

**Polk County's Reply:**         Because the plaintiff does not dispute these facts, no reply is required.

99.     Christensen engaged in sexual intercourse with J.K.J. (*Id.* at 80:19-22.)

Plaintiff's Response: Admit.

**Polk County's Reply:**         Because the plaintiff does not dispute these facts, no reply is required.

100.     Christensen told J.K.J. on numerous occasions not to tell anyone of their sexual encounters. (*Id.* at 81:16-21.)

Plaintiff's Response: Admit.

**Polk County's Reply:**         Because the plaintiff does not dispute these facts, no reply is required.

101.     J.K.J. did not report Christensen's sexual interactions with her, because she did not want him to get into trouble. (*Id.* at 54:21-25 & 56:15-17.)

Plaintiff's Response: Admit.

**Polk County's Reply:**         Because the plaintiff does not dispute these facts, no reply is required.

102.     No Polk County Jail inmate saw Christensen engage in his sexual acts with J.K.J. throughout the duration of the sexual encounters. (*Id.* at 80:16-18.)

Plaintiff's Response: Admit.

**Polk County's Reply:**         Because the plaintiff does not dispute these facts, no reply is required.

103.     While not incarcerated at Polk County Jail, J.K.J. voluntarily went to the Amery Fire Department on three separate occasions to meet up with Christensen. (*Id.* at 67:8-14.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

104.    J.K.J. and Christensen engaged in sexual intercourse on her first and third visits to the fire department. (*Id*. at 68:18-24; 70:15-17; & 71-75:21-17.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

## VII.    POLK COUNTY JAIL INVESTIGATION AND CHRISTENSEN'S RESIGNATION/CONVICTION.

105.    Polk County's investigation into Christensen's sexual assault began when a former jail inmate reported her sexual encounters with Christensen while she was in another jail. (Nargis Decl. ¶ 45.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

106.    After the allegations were communicated to the Polk County Sheriff, Polk County's Chief Deputy Sheriff began an immediate internal investigation of Christensen. (*Id*. ¶ 46.)

Plaintiff's Response: Admit.

**Polk County's Reply:**          Because the plaintiff does not dispute these facts, no reply is required.

107.    On October 30, 2014, Christensen was interviewed by the Chief Deputy concerning the allegations and investigation. (*Id*. ¶ 47.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

108.    Directly after the interview, Christensen resigned from his position as a jailer at Polk County Jail. (Case No. 15-c-428, ECF No. 52 at 24:18-25; Case No. 15-c-433, ECF No. 53 at 24:18-25.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

109.    After the Polk County investigation and a criminal prosecution, Christensen was ultimately convicted of several counts of sexual assault and sentenced to 30 years in prison. (Case No. 15-c-428, ECF No. 47 at 57:4-19; Case No. 15-c-433, ECF No. 46 at 57:4-19.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

## VIII.   PLAINTIFFS' SECOND AMENDED COMPLAINTS.

110.    Plaintiffs' filed their Second Amended Complaints seeking damages for Polk County's alleged violations of 42 U.S.C. §§ 1983, 1986, and 1988, the Eighth Amendment, the Fourteenth Amendment, in addition to various state law claims.  (J.K.J. Second Am. Compl., ¶¶ 86–133, 151–57, 162–74; M.J.J. Second Am. Compl., ¶¶ 76–123, 141–147, 152–64.)

Plaintiff's Response: Admit.

**Polk County's Reply:**        Because the plaintiff does not dispute these facts, no reply is required.

111.    Specifically, Plaintiffs allege that Polk County had a policy, custom, or practice that violated their constitutional right to be free from cruel and unusual punishment.   (J.K.J. Second Am. Compl., ¶¶ 86–133; M.J.J. Second Am. Compl., ¶¶ 76–123.).   In addition, Plaintiffs allege that Polk County negligently supervised and trained Christensen and other Polk County jailers and negligently inflicted emotional distress upon them.)   (J.K.J. Second Am. Compl., ¶¶ 151–57, 162–74; M.J.J. Second Am. Compl., ¶¶ 141–147, 152–64.)

Plaintiff's Response: Admit.

**<u>Polk County's Reply:</u>**        Because the plaintiff does not dispute these facts, no reply is required.

112.    Polk County denies all of Plaintiffs' claims in their entirety.  (Case No. 15-C-428, ECF No. 29; Case No. 15-C-433, ECF No. 30.)

Plaintiff's Response: Admit.

**<u>Polk County's Reply:</u>**        Because the plaintiff does not dispute these facts, no reply is required.

Dated this 16th day of August, 2016.

s/ *Paul D. Cranley*
_____
Charles H. Bohl
Paul D. Cranley
Kurt M. Simatic

HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone:  414-273-2100
Fax:  414-223-5000
Email: Charles.Bohl@huschblackwell.com

33 East Main Street, Suite 300
Madison, WI 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
Email: paul.cranley@huschblackwell.com

20800 Swenson Drive, Suite 300
Waukesha, Wisconsin 53186
Telephone: 262-956-6200
Fax: 262-956-6210
Email: kurt.simatic@huschblackwell.com

Attorneys for Polk County

12966229.2