IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────

J.K.J.,

                 Plaintiff,                    OPINION AND ORDER

   v.

POLK COUNTY SHERIFF'S DEPARTMENT            15-cv-428-wmc
and DARRYL L. CHRISTENSEN,

                 Defendants,

and

WISCONSIN COUNTY MUTUAL INSURANCE
CORPORATION

                 Intervenor.

*and*

M.J.J.,

                 Plaintiff,

   v.                                                    15-cv-433-wmc

POLK COUNTY SHERIFF'S DEPARTMENT
and DARRYL L. CHRISTENSEN,

                 Defendants,

and

WISCONSIN COUNTY MUTUAL INSURANCE
CORPORATION

                 Intervenor.
───────────────────────────────────────────────────────────

      In these civil actions, plaintiffs J.K.J. and M.J.J. assert claims against defendants Polk County and Darryl L. Christensen, a former correctional officer for Polk County, based on Christensen's alleged sexual assault of plaintiffs while incarcerated at the Polk County Jail. Wisconsin County Mutual Insurance Corporation ("WCMIC") intervened, seeking a

declaration that it has no duty to defend or cover defendant Christensen. The court recently consolidated these two cases. Before the court are WCMIC's motions for summary judgment on that issue ('428 dkt. #30; '433 dkt. #31), to which defendant Christensen did not respond, but plaintiffs opposed. For the reasons that follow, the court will grant WCMIC's motions.

## UNDISPUTED FACTS[1]

### A. The Parties

Defendant Darryl L. Christensen was employed as a correctional officer or jailer with Polk County from June 30, 1996, until October 30, 2014. Plaintiff J.K.J. was incarcerated in the Polk County Jail on four separate occasions: in August 2012, from March to June, 2013, from February 18 to June 4, 2014, and in October 2014. Plaintiff M.J.J. was incarcerated in the Polk County Jail on nine different locations between November 3, 2011, and January 22, 2014.

### B. Sexual Interactions with Plaintiffs

While incarcerated, Christensen allegedly engaged in sexual contact with J.K.J. on numerous occasions. Specifically, J.K.J. alleges that she had vaginal intercourse with Christensen on one occasion and oral sex on three occasions while an inmate in the Polk County Jail.

---

[1] In addition to responding to some of WCMIC's proposed findings of facts, plaintiffs submitted their own proposed findings, the great bulk of which are not material to the present motion. Accordingly, the court sets forth here only those findings that are material to determining WCMIC's duty, if any, to cover the claims asserted against Christensen here.

While J.K.J. was an inmate, Christensen admits that he participated in sexual talk with J.K.J., touched her beneath her underwear and inserted his finger into her vagina, and had J.K.J. perform oral sex on him. While Christensen denies that he had vaginal sexual intercourse with J.K.J. while she was imprisoned,[2] he acknowledges that the other sexual interactions with J.K.J. in the Polk County Jail occurred between five and ten times.

Christensen told J.K.J. not to say anything about these sexual interactions, because he could lose his job. J.K.J. did not report Christensen's sexual interactions with her because she did not want him to get into trouble.

Christensen also engaged with sexual activity with M.J.J. during her employment. Christensen began by making sexual comments. M.J.J. alleges that she had sexual intercourse with Christensen in the booking room, in the X-Room, and in a bathroom off of the X-Room, and that she performed oral sex on Christensen. M.J.J. estimates that all together she had sexual contact with Christensen on more than fifty occasions.

Christensen admits that he put his hand in M.J.J.'s underwear and inserted his finger into her vagina and that she performed oral sex on him, though he denies that he had vaginal sexual intercourse with M.J.J. Christensen estimated that he had sexual contact with M.J.J. between 15 and 20 times.

M.J.J. did not report Christensen's conduct, keeping it a secret out of concern that she would get in trouble. Christensen would also ask M.J.J. from time to time whether she was going to tell anyone, telling her that he would lose is wife, children and job if she did.

---

[2] J.K.J. also alleges that she had sexual intercourse with Christensen on two other occasions when she was not incarcerated, each time at the Amery Fire Department, where Christensen was the Fire Chief. Christensen admits this conduct, but it falls outside the scope of the claims at issue here.

3

Christensen resigned his employment with Polk County the same day he became aware that allegations were being made about his sexual contact with an inmate. Christensen was criminally charged with five counts of second degree sexual assault in violation of Wis. Stat. § 940.225(2)(h), a Class C felony, prohibiting "sexual contact or sexual intercourse with an individual who is confined in a correctional institution if the actor is a corrections staff member." Count 1 of the criminal charges filed against Christensen related to his sexual interactions with J.K.J., and Count 5 related to his sexual interactions with M.J.J. Christensen pleaded guilty to all five counts.

### C. Duties of Correctional Officer

When Christensen began his employment with Polk County, he was certified by the Wisconsin Law Enforcement Standards Board as being qualified to be a jail officer. Part of his certification involved training that it was unlawful for jail officers to have sexual contact with inmates. When Christensen began employment, he also received a copy of the policy and procedural manual for the jail. That policy provided in pertinent part: "Under no circumstances will any inmate be the object of verbal, physical, emotional, psychological or sexual harassment by facility staff. Any officer engaged in such actions is subject to disciplinary charges and/or termination." (WCMIC's PFOFs (dkt. #32) ¶ 14.) Christensen also knew that his sexual interactions with plaintiffs were in violation of the Wisconsin Criminal Code, though he may have believed at the time that inmates were able to consent to sexual contact. Christensen also knew that Polk County policies prohibited him from having sex with inmates.

On those occasions when Christensen had sexual contact with plaintiffs at Polk County Jail in violation of the Wisconsin criminal code, his training, and jail policy, he was on duty as a correctional officer, wore a uniform and badge, and carried handcuffs and a taser. On all of these occasions, Christensen was also in control of plaintiffs as inmates. In fact, the sexual contacts occurred in the jail pod where plaintiffs were housed, when no other guards were present.

When Christensen engaged in sexual interactions with plaintiffs, he testified at his deposition that he did so for the sole purpose of his own personal gratification, and not for any reason that served the interests of Polk County.

### D. Insurance Policy

WCMIC issued a "Public Entity Liability Policy" to Polk County, which provided insurance covering four consecutive, one-year periods from January 1, 2011, to January 1, 2015.[3] The policy provides coverage for several types of alleged damages, including bodily injury, personal injury, and errors and omissions. (Bisek Aff., Exs. 1-4 (dkt. #13-1 to 13-4).) The policy defines "insured" as follows:

> 1. *You*, and
>
> 2. *Your* past and present employees or elected or appointed officials while acting within the scope of their employment or authority, and authorized volunteers, while acting for *you* or on *your* behalf.

(Bisek Aff., Ex. 4 (dkt. #13-4) 39.)

---

[3] WCMIC actually issued a series of annual policies for each of those four years. Since the terms of these policies apparently did not change in any material respect, for ease of reference, the court will simply refer to language in the 2014 policy in this opinion. (*Id.*, Ex. 4 (dkt. #13-4).)

5

"Bodily injury" is defined as "bodily, injury, sickness, disability or disease, sustained by a person during the policy period, including death resulting from any of these at any time." (*Id.* at 47.) "Personal injury" is defined in WCMIC's policies as an "injury, other than bodily injury," arising out of various offenses, including "assault and battery, including sexual molestation." (*Id.* at 48-49.) Errors and omissions coverage is defined as "any misstatement or misleading statement or act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an *insured* in their capacity as such." (*Id.* at 47.)

Among others, the policy contains coverage exclusions for: (1) bodily injury "expected or intended from the standpoint of the insured"; and (2) personal injury arising out of "the intentional or knowing violation of the penal statute or ordinance committed by or with the consent of the insured." (*Id.* at 40, 44.) With respect to errors and omissions coverage, the policy similarly contains an exclusion for: (3) "the willful violation of a penal code or ordinance committed by or with the consent of any insured"; and (4) "any deliberately wrongful act, omission or breach of duty committed by or with the consent of any insured." (*Id.* at 44-45.)

OPINION

"To determine whether a duty to defend exists, the complaint claiming damages must be compared to the insurance policy and a determination made as to whether, if the allegations are proved, the insurer would be required to pay the resulting judgment." *Sch. Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364-65, 488 N.W.2d 82, 87-88. *See also Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548,

751 N.W.2d 845.  Limiting the examination to the complaint and the insurance policy is commonly referred to as the "four-corners rule," *Sustache*, 2008 WI 87, ¶ 27, although that rule allows for some flexibility "[w]here the insurer has provided a defense to its insured, a party has provided extrinsic evidence to the court, and the court has focused in a coverage hearing on whether the insured's policy provides coverage for the plaintiff's claim." *Id.* at ¶ 29 (emphasis omitted).  Regardless, "[t]he insurer's duty to continue to defend is contingent upon the court's determination that the insured has coverage *if the plaintiff proves his case*." *Id.* (emphasis added).

In this case in particular, any flexibility in the four-corners rule makes little difference.  As reflected in their respective deposition testimony, plaintiffs reaffirm the allegations contained in their complaints.  Moreover, while Christensen disputes the specifics of his sexual encounters, he admits to sexual contact with both plaintiffs at the jail while employed as a correctional officer.

In light of these undisputed facts, consideration of any conflicting, extrinsic evidence does not change the test for this court.  To determine whether a duty to defend exists, the court initially determines whether the insurance policy "makes an initial grant of coverage -- i.e., whether the insurer has a duty to indemnify its insured -- for the claims asserted." *Sustache*, 2008 WI 87, ¶ 22.  If the court finds an initial grant of coverage, the court next "examine[s] the policy's exclusions to determine whether they preclude coverage." *Id.* at ¶ 23.  Should an exclusion apply, the court finally "look[s] to see whether any exception to that exclusion reinstates coverage." *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65.

Among other grounds, WCMIC seeks summary judgment because Christensen acted outside the scope of his employment, and therefore he was not an insured under the terms of the policy. Because the court finds that Christensen is not an insured under the policy, the court will grant WCMIC's motion without reaching its arguments concerning exclusions.[4]

To determine whether Christensen acted within the scope of his employment, the court must consider whether he "was actuated, at least in part, by a purpose to serve the employer." *Olson v. Connerly*, 156 Wis. 2d 488, 500, 457 N.W.2d 479, 484 (1990).

> There is no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose. Rather, an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes (that is, the employee stepped aside from the prosecution of the employer's business to accomplish an independent purpose of his or her own).

*Id.* at 499-500, 457 N.W.2d at 483 (citing Restatement (Second) of Agency § 220 (1958)).[5]

Ordinarily, the determination of one's purpose or motivation would be a fact issue for the jury, but as previously discussed there are no *material* facts at issue in this case. *See Graham v. Sauk Prairie Police Commission*, 915 F.2d 1085, 1093 (7th Cir. 1990) ("[I]t is proper to decide the scope of employment issue on a motion for summary judgment so long as the underlying facts are not in dispute and reasonable inferences leading to conflicting results cannot be drawn from the undisputed facts."); *see generally Montgomery v. Am. Airlines,*

---

[4] Even if there were an initial grant of coverage, defendant also asserts that exclusions for willful violation of penal statutes, bodily injury that is expected or intended from the standpoint of the insured, and for errors or omissions arising from a deliberately wrongful act apply.

[5] The "conduct" at issue is the conduct "for which liability is sought to be imposed." *Pamperin*, 144 Wis. 2d at 198 n.3, 423 N.W.2d at 852 n.3.

*Inc.*, No. 08-3951, 2010 WL 4670173, at *3 (7th Cir. Nov. 19, 2010) ("[D]isputed facts that are not outcome-determinative are not material and will not preclude summary judgment.").

Christensen has admitted -- and plaintiffs have no basis for disputing -- that Christensen's sexual contact with them was done solely for sexual or other personal gratification, and not for a legitimate penological purpose.  Nor would a reasonable jury have any basis to infer otherwise.  Thus, Christensen acted outside the scope of his agency, and MCMIC has no duty to defend or cover Christensen.  *See Lola M. v. City of Milwaukee*, 252 Wis. 2d 768, ¶ 11, 2002 WL 234234, at *3 (Ct. App. 2002) (affirming summary judgment to city on scope of employment issue where police officer sexually assaulted plaintiff during investigation); *Block v. Gomez*, 201 Wis. 2d 795, 807, 549 N.W.2d 783, 788 (Ct. App. 1996) (affirming trial court's ruling as a matter of law that drug abuse counselor was not acting within the scope of his employment when he engaged in a sexual relationship with a mental health patient); *Gallun v. Soccer U.S.A., Inc.*, 184 Wis. 2d 401, 1994 WL 133053, at *3 (Ct. App. Apr. 19, 1994) (affirming summary judgment for employer where employee videotaped plaintiff in locker room, finding there was "absolutely no factual basis for any reasonable inference that [employee's] conduct . . . was in any way actuated by any purpose to serve Soccer, U.S.A.") (unpublished).

While plaintiffs argue otherwise, the allegations in the complaint, as well as the undisputed facts of record, are unlike those in the cases relied on by plaintiffs, where courts found tortious conduct was a means -- albeit an improper means -- to further the employer's purpose.  For example, in *Graham v. Sauk Prairie Police Commission*, 915 F.2d 1085 (7th Cir. 1990), a police officer responding to a call from a DNR conservation warden, fired two

9

shots in the back of a suspect's head after the suspect was already handcuffed and lying face down. *Id.* at 1088. Moreover, at the time of the shooting, there was no dispute that the suspect was not fleeing and posed no threat of death or serious injury to the police officer or to any other. *Id.* Nevertheless, in affirming the district court's summary judgment holding the officer's employer liable, the Seventh Circuit found that the Sauk Prairie Police Commission and the Villages of Sauk City and Prairie Du Sac were required by Wisconsin law to indemnify the defendant's estate for any monetary damages that might be entered against him. *Id.* The court explained: "Our focus must be on the nature of the services contemplated, not the outcome of the employee's acts. . . . Here, as in *Bell*, Mueller's shooting was unquestionably a method, even though quite an improper one, of carrying out the objects of his employment." *Id.* at 1095 (citing *Bell v. City of Milwaukee*, 536 F. Supp. 462, 478 (E.D. Wis. 1982) (holding city was required to indemnify officer who lied during an investigation in order "to further his own objective of escaping punishment for his wrongdoing" because "[h]e was performing his duties as a police officer but used quite improper methods of carrying out those duties")).

The distinction between the alleged conduct at issue here and that characterized as at least *partially* actuated to further the State's interest is illustrated in *Jude v. City of Milwaukee*, No. 06C1101, 2010 WL 2643383, at *1 (E.D. Wis. June 30, 2010). In that case, the defendant officer was accused of stomping on a plaintiff's head two or three times, as well as failing to intervene when other individuals kicked, punched and tortured the plaintiff. The court denied the city's motion for summary judgment on the issue of indemnification, in part, because "[i]t is conceivable that [the defendant officer] acted within the scope of employment when and if he failed to intervene but not when he stomped on Jude's head."

10

*Id*. at *3. Therefore, "the scope of the City's liability for indemnification cannot be determined until plaintiff establishes whether [the police officer's] liability is based on his excessive force, his failure to intervene, or both." *Id.*

Admittedly, courts *have* focused on whether the alleged misconduct was "made possible by virtue" of the defendant employee's status or position. For example, in *Estate of Watts v. Heine*, No. 07-CV-644, 2008 WL 4058032 (E.D. Wis. Aug. 26, 2008), the court denied a defendant county's motion for summary judgment on the indemnification issue because the claims arose out of a sexual assault by a deputy sheriff on an inmate at the Milwaukee County Jail. *Id.* at *1. In denying the county's motion, the court explained: "A reasonable trier of fact could find that [the deputy sheriff's] sexual misconduct was not wholly disconnected from the scope of his employment. A jury could conclude that his supervision of and interaction with inmates, both inside and outside their cells, was part of his job and *the sexual assault was only made possible by virtue of his status as a deputy sheriff*." *Id.* at *5 (emphasis added).

To the extent the court in *Estate of Watts* focused on the deputy sheriff's position, rather than his intent, its holding appears inconsistent with the Wisconsin Supreme Court's decision in *Olson,* which expressly disavows cases that "eliminate the employee's intent as a factor" in a scope of agency analysis, because "they are inconsistent with what we have said here and are thus incorrect under Wisconsin law." 156 Wis. 2d at 501 n.13, 457 N.W.2d at 484 n.13; *see also Gallun*, 1994 WL 133053, at *3 ("The fact that Nelson's conduct occurred within the time and space of his employment, and the fact that without his employment he would not have had the opportunity to conduct himself as alleged, are

11

inadequate to carry the conduct within the scope of employment.").[6] As recognized by the Seventh Circuit in *Graham*, and consistent with the Restatement (Second) of Agency, the employee's intent to further the purposes of employment must be considered in determining whether a defendant employee acted within the scope of that employment under Wisconsin law.[7]

By focusing on whether the defendant's acts were only made possible by virtue of his position or status, the court in *Estate of Watts* blurred the "scope of employment" test with the test for determining whether a defendant was acting "under color of law" for purposes of 42 U.S.C. § 1983. As the Seventh Circuit explained in *Graham*, however, "[t]he 'under color of law' category is broader than the 'scope of employment' category." 915 F.2d at 1093 (citing *Cameron v. City of Milwaukee*, 102 Wis. 2d 448, 456, 307 N.W.2d 164, 168 (1981) (question of an employee acting within scope of employment is different than the question of whether a government employee is acting "under color of law")).

There are, of course, certain cases where the employee's actions may have a *dual* motive -- *both* to further the purposes of employment *and* to further his or her own interests. *Hibma v. Odegaard*, 769 F.2d 1147, 1153 (7th Cir. 1985) (recognizing that an employees'

---

[6] For this reason, plaintiffs' reliance on *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004), and *West v. Waymire*, 114 F.3d 646 (7th Cir. 1997), are also of no assistance, since neither applied the test under Wisconsin law.

[7] The more recent Restatement (Third) of Agency also requires an intent element in determining whether an employee or agent acted within the scope of employment or agency. "An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." § 7.07 (2006). The Wisconsin Supreme Court has cited to the Restatement (Third) with approval. *See Russ ex rel. Schwartz v. Russ*, 2007 WI 83, ¶ 50 n.11, 302 Wis.2d 264, 734 N.W.2d 874; *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 39 n.17, 291 Wis.2d 283, 717 N.W.2d 17.

actions can be "designed to further their own objectives" as well as to further the objective of the employer). Given the claimed conduct at issue here, *and* given Christensen's own admission, a gray area where Christensen acted both to further his own interests and the objectives of his employer is simply not arguable, much less sufficiently established to allow a reasonable jury to find that Christensen engaged in sexual contact with plaintiffs while at the same time acting within the scope of his employment. Accordingly, WCMIC is entitled to summary judgment.

ORDER

IT IS ORDERED that:

1) Wisconsin County Mutual Insurance Corporation's motions for summary judgment ('428 dkt. #30; '433 dkt. #31) are GRANTED. Intervenor WCMIC has no duty to defend or cover defendant Darryl L. Christensen.

2) The clerk of court is directed to enter judgment in Wisconsin County Mutual Insurance Corporation's favor on its intervenor complaint.

Entered this 28th day of November, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge