UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

J.K.J.,

        Plaintiff,

  v.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

        Defendants,                      Case No. 15-CV-428

  v.

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

---

M.J.J.,

        Plaintiff,

  v.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

        Defendants,                      Case No. 15-CV-433

  v.

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

---

**MEMORANDUM IN SUPPORT OF POLK COUNTY'S MOTIONS *IN LIMINE***

---

Pursuant to the Court's Preliminary Pretrial Conference Order and Procedures Governing Final Pretrial Conference, Defendant, Polk County (the "County"), submits this memorandum of law in support of its motions *in limine*.

13331931.1

**ARGUMENT**

I. **THIS COURT SHOULD ENTER AN ORDER PRECLUDING OR OTHERWISE LIMITING PLAINTIFFS' EXPERT AND PLAINTIFFS FROM MAKING ANY REFERENCE AT TRIAL TO THE PRISON RAPE ELIMINATION ACT, PURSUANT TO FED. R. EVID. 401 THROUGH 403.**

In discovery, plaintiffs have criticized the County for failing to enact policies implementing all of the provisions of the Prison Rape Elimination Act, or PREA. However, what PREA does and does not say, and whether the County complied with any of its provisions, is not relevant to this case. As a matter of law, plaintiffs cannot state a claim for alleged violations of PREA, and claims that the County's policies did not comply with PREA cannot be introduced as evidence of deliberate indifference. Criticizing the County for not complying with PREA unfairly prejudices the County by misstating the applicable legal standard, and is likely to confuse the jury regarding the proper standard to apply in judging whether the County is liable for plaintiffs' alleged injuries.

    A. **PREA Does Not Provide for a Private Right of Action Under § 1983.**

Courts have specifically rejected PREA as a basis for a private right of action under § 1983. *See, e.g.*, *Rivera v. Drake*, No. 09-CV-1182, 2010 WL 1172602, at *3 (E.D. Wis. Mar. 23, 2010); *Schuenke v. Wis. Dep't of Corr.*, No. 13-CV-865-BBC, 2014 WL 905529, at *3 (W.D. Wis. Mar. 7, 2014). PREA was "enacted to study the problem of prison rape and to provide funding and expertise to address it." *Kane v. Winn*, 319 F. Supp. 2d 162 (D. Mass. 2004). "Nothing in the Act suggests that it was intended to create a private cause of action, and nothing suggests that Congress intended to override the state's Eleventh Amendment immunity." *Rivera*, 2010 WL 1172602 at *3. "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* (citing *Gonzaga Uni. v. Doe*, 536 U.S.

273, 286 (2002)). *See also Meeks v. Wis. Res. Ctr.*, No. 14-CV-0850, 2015 WL 847481, at *2 (E.D. Wis. Feb. 26, 2015) ("As his legal theory, plaintiff references the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.*, but there is no private cause of action under the Act.") Consequently, plaintiffs cannot state a claim based on any alleged violation of PREA.

**B.  Compliance With PREA is Not Mandatory.**

County jails are not required to implement PREA-compliant policies.  In alleged support of their argument that PREA's recommendations are mandatory for county jails, plaintiffs cite the Department of Justice's Notice of the Final Rule on PREA, 77 Fed. Register 37106.  The United States Justice Department's discussion of its rule, however, directly contradicts plaintiffs' assertion.  Plaintiffs' argument also contradicts the opinion of their own paid expert, Jeffrey Eiser, who testified that PREA implementation is "voluntary" for county jails.  Their argument is contradicted further by the testimony of the Wisconsin Department of Correction's ("DOC") Detention Facilities Specialist, Brad Hompe, who testified that PREA compliance is not required and that none of the county jails under his jurisdiction are fully compliant.

First, in explaining its final rule with regard to PREA, the United States Department of Justice stated:

> However, with respect to the thousands of state and local agencies, and private companies, that own and operate confinement facilities across the country, PREA provides the Department with *no direct authority to mandate binding standards for their facilities*. Instead, PREA depends upon state and local agencies to make *voluntary* decisions to adopt and implement them. . . .
>
> In deciding whether to adopt these standards, agencies will of necessity conduct their own analyses of whether they can commit to adopting the standards in light of other demands on their correctional budgets. The Department cannot assume that all agencies will choose to adopt and implement these standards. An agency assessing whether to do so may choose not to base upon an assessment that, with regard to that specific agency, the costs outweigh the benefits.

77 FR 37106-01, at *37196 (emphasis added).  By the very text of the U.S. Department of Justice's own interpretation of the final rule, PREA is *not* mandatory for county jails like Polk County's jail.  *See also Mayfield v. Orozco*, No. 2:13-CV-02499 JAM AC, 2016 WL 6217061, at *2 (E.D. Cal. Oct. 24, 2016) ("[PREA] established a grant-making and regulatory regime designed to address sexual assault and related inmate safety issues in prisons and jails.").

Second, plaintiffs' own paid expert, Jeff Eiser, admitted that a county jail's compliance with PREA is not mandatory, but is "enforceable through, I guess, withholding of federal funding, all these other things." (ECF No. 76, 15-C-428, at 100:19–20; ECF No. 77, 15-C-433, 100:19–20.)  Eiser attempted to further clarify his deposition answer by stating that "it was a voluntary compliance from 2003 to about 2012 when the regulations were in place," (*id.* at 100:24–101:1), but of course, as the U.S. Department of Justice's explanation of the final PREA rule makes clear, county jail compliance is voluntary.

Third, and consistent with the U.S. Department of Justice's view, Brad Hompe—the Detention Facility Specialist responsible for inspections of the Polk County Jail for the DOC—testified PREA is not mandatory for county jails.  (ECF No. 72, 15-C-428, at 15:1–7; ECF No. 73, 15-C-433, at 15:1–7.)  While he testified that DOC "encourage[s] them to look at the standards, and implement what they can . . . . their compliance at this time is voluntary or on their own decision." (*Id.* at 15:21–16:4.)  Hompe further testified there is not a single jail among the 17 in his region that is fully PREA compliant, and some have chosen to do nothing at all to implement it:

> "It's completely up to them at this point. Again, some jails have done nothing at all. They haven't even acknowledged it. Some have done the basics and some are full-fledged trying to implement every single standard. I don't think anybody in this region has gone to the point of getting an audit because of the cost. That's one of the troubling components of PREA for the jails is requiring that audit."

(*Id.* at 42:21–43:4.) Accordingly, Hompe asks the jail administrators in his group, "not to ignore PREA, to take a look at the standards and implement what makes sense for them." (*Id.* at 43:14–17.)

The undisputed evidence in this case establishes that while the County was not required to change its policies to conform with PREA, the County updated its Jail Manual and Inmate Handbook to include some of the recommendations contained in PREA, and the County conducted PREA-specific training for its staff. This fully complies with Hompe's recommendations to the jails in his region, whom he advises to implement what he considers to be the basics of PREA; those include: 1) informing inmates they have the right not to be sexually abused; 2) having a reporting mechanism for inmate sexual abuse; 3) training jail staff so they know how to handle reports of sexual abuse; and 4) having an investigative process to "clearly vet those complaints." (*Id.* at 35:2–10.)

Hompe agreed Polk County implemented these recommendations. First, the notice provided in Polk County's Inmate Handbook satisfies the notice provision. (*Id.* at 60:3–61:8.) Second, the grievance process provided in the County's Jail Manual provides a "reporting mechanism" for inmates involved in sexual abuse that meets the basic PREA standard. (*Id.* at 61:19–62:15.) Third, Polk County has in place a procedure for investigating inmate complaints, including complaints of sexual abuse. (*Id.* at 63:16–19.) Fourth, Polk County has provided some training on PREA. (ECF No. 55, 15-C-428 at ¶ 35; ECF No. 56, 15-C-433 at ¶ 35.)

Regardless, Polk County considered the requirements of PREA and made a reasoned decision to not fully implement all provisions of PREA as compliance with it is not mandatory and the County has determined that certain provisions of PREA are not appropriate correctional practices for the Polk County Jail. (*Id.* ¶ 43.) For example, PREA advises that an officer should

always announce his or her presence before entering the inmates' living unit. However, this practice would give inmates warning of officer inspections that are intended to be unscheduled, as required by Wis. Admin. Code DOC § 350.18(1)(a) (Aug. 2014).  (ECF No. 48, Case No. 15-C-428 at 51:10-52:7; ECF No. 49, Case No. 15-C-433 at 51:10-52:7.)

### C. Non-Compliance With PREA Does Not Constitute Deliberate Indifference.

Finally, plaintiffs appear to argue in their summary judgment briefing that non-compliance with PREA constitutes per se deliberate indifference.  Specifically, plaintiffs point to one of Congress's stated findings at the beginning of PREA:

> (13) The high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution.  In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court ruled that deliberate indifference to the substantial risk of sexual assault violates prisoners' rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment.  The Eighth Amendment rights of State and local prisoners are protected through the Due Process Clause of the Fourteenth Amendment.  Pursuant to the power of Congress under Section Five of the Fourteenth Amendment, Congress may take action to enforce those rights in States where officials have demonstrated such indifference.  *States that do not take basic steps to abate prison rape by adopting standards that do not generate significant additional expenditures demonstrate such indifference. Therefore, such States are not entitled to the same level of Federal benefits as other States.*

42 U.S.C. § 15601 (emphasis added).

First, this section supports the County's point that PREA is not mandatory for local jails; the text specifically states that non-compliance with PREA only means that state and local jails would not be "entitled to the same level of Federal benefits," i.e., funding.  Second, as explained above in Section B. and in summary judgment briefing, the County did take basic steps to implement PREA-compliant policies forbidding any sexual contact between officers and inmates, training staff to prevent sexual misconduct, and enacting policies and procedures to supervise and investigate Jail staff who engage in inappropriate sexual conduct, whether against other Jail staff or inmates.  Therefore, even if the Congressional finding the plaintiffs rely on

could be read to suggest the failure to take any "basic steps to abate prison rape" constitutes deliberate indifference, the undisputed evidence establishes the County met that standard. However, a Congressional finding does not set the standard for deliberate indifference—rather, to prove deliberate indifference a plaintiff must 1) objectively demonstrate they were "incarcerated under conditions posing a 'substantial risk of serious harm'"; and 2) establish that County policymakers had knowledge of and disregarded the risk to their safety. *Palmer v. Marion Cty.*, 327 F.3d 588, 593 (7th Cir. 2003).

Even if PREA were relevant to determining whether a county jail was deliberately indifferent to an inmate's bodily integrity—it is not—testimony and argument that the County failed to comply with a federal law the County was not required to comply with would only serve to confuse the issues for the jury, and would be unfairly prejudicial to the County. At a minimum, pursuant to Rule 403, the plaintiffs should be precluded from arguing at trial that compliance with PREA was mandatory, and that non-compliance constituted deliberate indifference on the part of the County.

**II.  THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFFS FROM INTRODUCING EVIDENCE REGARDING FORMER JAIL OFFICER ALLEN JORGENSON, PURSUANT TO FED. R. EVID. 401 THROUGH 403.**

In summary judgment briefing in these cases, plaintiffs have argued that the allegations against former jail officer Allen Jorgenson should have put the County on notice of a problem of sexual misconduct by its officers. These allegations—which came to light as a result of the County's investigation and do not even approach the level of reprehensibility of Christensen's conduct—fail to establish a custom or practice on the part of the County as a matter of law. Consequently, any evidence or argument concerning Jorgenson is not relevant, and would only serve to prejudice the County and confuse the jury.

First, although plaintiffs characterize Jorgenson's alleged conduct as "harassment" and even "sexual assault," none of the alleged behavior even approached the severity of the criminal conduct perpetrated by Christensen. There were only a few instances in which an inmate even claimed Jorgenson touched her, and there was no allegation he ever tried to touch her under her clothes.

Second, the allegations against Jorgenson were uncovered through the diligent and quick investigation of Jail officials. Jorgenson's alleged improper behavior came to light on January 15, 2012, following a comment another inmate overheard Jorgenson make over the intercom to a female inmate the day before. (ECF No. 63, 15-C-428, Ex. D; ECF No. 64, 15-C-433, Ex. D.) Jail Captain Scott Nargis and Deputy Sheriff Steve Moe immediately undertook to investigate that incident, conducting numerous interviews of inmates and Jail staff that disclosed alleged improper conduct involving multiple inmates, as well as some inappropriate comments made to several female Jail officers. (*Id.*) After the inmate involved in the initial incident—who initially stated there was no improper relationship between Jorgenson and her—changed her story, further investigation was conducted. (*Id.*) Although Jorgenson's alleged improper conduct occurred over a period of a few years, the entire investigation that uncovered it spanned only about two weeks. On January 30, 2012, Jail management reached its decision to issue a formal reprimand and to refer the matter to Employee Relations for further investigation and possible discipline. (*Id.*) Jorgenson resigned four days later, on February 3, 2012. (*Id.*) The swiftness and the thoroughness with which the County investigated the initial allegations and discovered the full extent of the misconduct alleged against Jorgenson demonstrates that the County took such matters seriously.

Third, Jorgenson's behavior—and the previous lone unfounded allegation against Christensen—does not constitute a custom or practice. "To establish a municipal policy or custom, the plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy." *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1237 (7th Cir. 1986) (emphasis added). A single incident, when unaccompanied by supporting history, does not provide an adequate basis for inferring a policy or custom. *McKee v. City of Rockwall,* 877 F.2d 409, 415-16 (5th Cir. 1989). Under this standard, it is not enough to demonstrate that Polk County "could, or even should, have been aware of the unlawful activity because it occurred more than once." *Phelan v. Cook Cty.,* 463 F.3d 773, 790 (7th Cir. 2006) (emphasis added). Rather, there must be "evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id.* And, significantly, where the evidence discloses only a single incident of unconstitutional activity, such proof is generally insufficient to impose *Monell* liability unless it is also established that the constitutional deprivation was caused by an existing municipal policy or custom that was itself unconstitutional. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24 (1985). Here, at most, the plaintiffs would hope to show that one jail officer, Jorgenson, was alleged to have engaged in inappropriate and harassing behavior with various inmates and staff, and that he retired quickly after being confronted with the claims. Further, the investigation and documentation of the incidents make clear Polk County did not treat these matters with deliberate indifference.

Accordingly, any evidence regarding the allegations against Allen Jorgenson are irrelevant, and would only serve to confuse the jury and prejudice the County.

**III.   THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFFS' EXPERT FROM TESTIFYING, AND PLAINTIFFS' COUNSEL FROM**

**ELICITING TESTIMONY, ARGUING, OR IMPLYING, THAT THE COUNTY FAILED TO "TRAIN INMATES," PURSUANT TO FED. R. EVID. 401 THROUGH 403.**

Plaintiffs allege the County "failed to train inmates on how to report sexual abuse," and that plaintiffs themselves were "never informed how to report sexual abuse." (*See* Second Am. Compls.) While plaintiffs state a recognizable—if meritless—claim for failure to train Jail staff, plaintiffs have failed to cite any case law or statutory basis (outside of PREA) that provides for the existence of such a claim. In the absence of any legal authority, the plaintiffs should be barred from presenting evidence or argument that the County "failed to train inmates." In particular, plaintiffs should be barred from introducing any evidence or argument that the County had a duty to provide inmates with information regarding their right to be free from sexual abuse, to put up posters or provide other literature regarding sexual abuse of inmates, or to provide any process for reporting claims of abuse other than the grievance process required by Wisconsin Administrative Code.

As discussed above, PREA imposes no mandatory legal obligations on Polk County. In addition, as plaintiffs concede, PREA does not provide a private right of action. *See e.g., Rivera,* 2010 WL 1172602, at *3 (rejecting PREA as a basis for a private right of action under § 1983). While plaintiffs claim they are not attempting to assert a private right of action under PREA, they are effectively attempting to do just that with regard to their "failure to train inmates" claim, since that is the only legal basis they offer in support.

Again, as explained above in Section I., the Jail provided inmates with (1) a Jail Inmate Manual informing inmates that they have a right to be free from sexual abuse, and (2) a grievance procedure/reporting mechanism for alleged sexual abuse. To the extent that plaintiffs rely on their own expert's concept of best practices, failure to follow so-called best practices is not enough to establish deliberate indifference. *See Rhodes v. Chapman,* 452 U.S. 337, 348 n.13

(1981) (expert opinion on matters of prison administration do not establish Eighth Amendment standard); *Inmates of Occoquan v. Barry,* 844 F.2d 828, 837 (D.C. Cir. 1988) ("[T]he obvious danger of employing professional standards as benchmarks is that they ineluctably take the judicial eye off of core constitutional concerns and tend to lead the judiciary into the forbidden domain of prison reform.").

IV. **THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFFS' COUNSEL FROM ELICITING TESTIMONY, ARGUING, OR IMPLYING THAT THE COUNTY VIOLATED 42 U.S.C. § 1986, PURSUANT TO FED. R. EVID. 401 THROUGH 403.**

In their Second Amended Complaints, plaintiffs appear to allege that the County violated 42 U.S.C. § 1986, an action for neglect to prevent a conspiracy to violate an individual's constitutional rights under § 1985(3).

> A plaintiff must allege four elements to make out a valid cause of action under § 1985(3): (1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States.

*Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 914 (E.D. Wis. 2014) (citing *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 591 (7th Cir.1989)). Plaintiffs' Second Amended Complaint utterly fails to allege any facts in support of such a claim. Without a valid § 1985 claim, plaintiffs have no valid § 1986 claim. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).

Allowing plaintiffs to present any evidence of a § 1986 claim at trial, or a § 1986 instruction—despite no evidence in the record—would waste the time of the jury, confuse the issues before the jury, and unfairly prejudice the County and should be precluded pursuant to Fed. R. Evid. 401 through 403.

V. **THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFFS FROM PRESENTING ANY EVIDENCE RELATING TO THE FACT THAT THE**

**COUNTY MAY BE COVERED BY INSURANCE IN THIS CASE, PURSUANT TO FED. R. EVID. 401 THROUGH 403 AND 411.**

Polk County is insured by Wisconsin County Mutual Insurance Company. The Court should not, however, allow plaintiff to present any evidence of this insurance coverage to the jury pursuant to Rules 411 and 401 through 403.

Rule 411 prohibits a party from presenting evidence of insurance coverage in an attempt to prove fault or liability. Specifically, it states that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411. Based on this language, courts have routinely held that reference to insurance coverage during the course of a trial is inappropriate and in some instances may constitute reversible error. *See, e.g., Adams Labs., Inc. v. Jacobs Eng'g Co.,* 761 F.2d 1218, 1226-27 (7th Cir. 1985); *Raybestos Prods. Co. v. Younger,* 54 F.3d 1234, 1239-40 (7th Cir. 1995).

The fact that Polk County has insurance coverage will not aid the jury in deciding whether any fact of consequence is more or less probable. In fact, the knowledge of the presence of insurance may induce the jury to decide the case (or, at a minimum, the issue of damages) on improper grounds. The existence of insurance is, therefore, irrelevant and should also be excluded pursuant to Rules 401 through 403.

Dated this 19th day of December, 2016.

*s/ Paul D. Cranley*
Charles H. Bohl
Paul D. Cranley
Kurt M. Simatic

HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: 414-273-2100
Fax: 414-223-5000
Email: Charles.Bohl@huschblackwell.com

33 East Main Street, Suite 300
Madison, WI 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
Email: Paul.Cranley@huschblackwell.com

20800 Swenson Drive, Suite 300
Waukesha, Wisconsin 53186
Telephone: 262-956-6200
Fax: 262-956-6210
Email: Kurt.Simatic@huschblackwell.com

Attorneys for Polk County Sheriff's Department