UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

J.K.J.,

        Plaintiff,

    v.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

        Defendants,                        Case No. 15-CV-428

    and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

---

M.J.J.,

        Plaintiff,

    vs.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

        Defendants,                        Case No. 15-CV-433

    and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

---

**RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* – GENERAL MOTIONS**

---

Pursuant to this Court's Preliminary Pretrial Conference Order, Defendant Polk County

(the "County") hereby responds to plaintiffs' general motions *in limine* as follows:[1]

---

[1] The County does not oppose general motions Nos. 8, 9, and 12.

I.      **PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 412.**

The County does not intend to offer evidence to prove that plaintiffs engaged in other sexual behavior or to prove plaintiffs' sexual predisposition.  However, depending on plaintiffs' trial testimony, such evidence may become relevant to prove, among other things, the plaintiffs' credibility. (*See also* Polk County's Motion to Admit Evidence Pursuant to Federal Rule of Evidence 412(c).)

II.     **THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF THE LEGISLATIVE FACTS CONTAINED IN THE PRISON RAPE ELIMINATION ACT, OR THE RELATED CONGRESSIONAL FINDINGS OR FEDERAL REGULATIONS.**

The plaintiffs ask this Court to take judicial notice of the Prison Rape Elimination Act (PREA), including the congressional findings published with PREA, and federal regulations implementing PREA.  (Pls.' Br. in Support of "General Motions," at 5-9, ECF No. 138.) Pursuant to Rule 201, the Court may take "judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a).  The Advisory Committee Notes to Rule 201 explain:

> Adjudicative facts are simply the facts of the particular case.  Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body.

Fed. R. Evid. 201 advisory committee's notes.  Even with regard to adjudicative facts, the Court may only take judicial notice where they are "outside the area of reasonable controversy," such that the usual process of establishing facts through evidence and testimony may be "dispensed with as unnecessary." *Id*.

PREA, the congressional findings included in the Act, and the federal regulations implementing it are legislative facts, not adjudicative facts. "Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while

adjudicative facts are those developed in a particular case." *U.S. v. Gould*, 536 F.2d. 216, 220 (8th Cir. 1976). Adjudicative facts "are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses." *Id*. at 219.

The PREA Act, findings, and regulations are "pronouncements that do not change from case to case," and were not "developed in [this] particular case." The facts the plaintiffs seek to introduce through judicial notice do not "relate to the parties, their activities, their properties, their businesses." Rather, the language of PREA, the findings that led to its passage, and the regulations enacted to implement it are not specifically related to these parties, but are instead broad pronouncements intended to be applied generally.

Indeed, the evidence in this case establishes that PREA is not relevant to the issues to be decided by the jury. (*See* Mem. in Supp. of Polk County's Motions *in Limine* at 2-7, ECF No. 153.) It is undisputed that Polk County Jail, like all county jails, is not held to the PREA standard by the State governing body that enforces the County's compliance with the laws and regulations applicable to county jails. Brad Hompe, the Detention Facility Specialist responsible for inspections of the Polk County Jail for the Wisconsin Department of Corrections, testified that compliance with PREA is "completely up to them [county jails] at this point." (Deposition of Brad Hompe ("Hompe Dep.") at 42, ECF No. 72.) Further, in every year from 2009 through 2016, Polk County Jail was found to be in compliance with the laws and regulations applicable to county jails in the State of Wisconsin. (*Id*. at 56-57.)

In addition, the legislative materials the plaintiffs seek to introduce through judicial notice are irrelevant and unduly prejudicial under Fed. R. Evid. 401 though 403. The voluminous Act, commentary and regulations contain statistics and accounts about prison rape

throughout the country, not only between guards and inmates, but between inmates and other inmates. Further, introduction of the contents of these articles, which contain statistics and detailed accounts of victimization of inmates and parolees by prison guards throughout the United States, is extraneous and unduly prejudicial. (*See* Pls.' Br. in Suppt. of "General Motions," at 7-8, citing statistical information and legislative findings related to the alleged "epidemic of prison rape.") Admission of such evidence not only will unduly inflame the jury but will confuse the jury.

Finally, the plaintiffs attempt to support their motion by again mischaracterizing the testimony of the County's experts. As set forth in the County's response to the plaintiffs' motion to bar Eugene Atherton, the plaintiffs' attempt to represent Mr. Atherton's testimony as stating that PREA represents "the national standard" or the "standard of care" governing Polk County Jail is a blatant, distortion of Mr. Atherton's testimony. As set forth above, in the County's motions *in limine*, and in the County's brief responding to the plaintiffs' motion to bar Mr. Atherton, there is not a single qualified witness in this case who has agreed with the plaintiffs' lawyers' unsupported argument that PREA is binding on the County.

PREA and the other related materials the plaintiffs seek to introduce are legislative facts that are not subject to judicial notice under Rule 201. In addition, the information the plaintiffs ask the Court to give to the jury as adjudicated fact is irrelevant, misleading, and highly prejudicial. The plaintiffs' motion should be denied.

### III.   CAPTAIN NARGIS IS NOT A POLICYMAKER—AT LEAST WITH RESPECT TO OFFICER SUPERVISION AND DISCIPLINE—SO THE PLAINTIFFS' MOTION MUST BE DENIED.

The plaintiffs ask the Court to rule, *in limine*, that Jail Captain Nargis was a policymaker in order to suit their interests in attempting to establish *Monell* liability. In particular, the plaintiffs seek to argue that Nargis's alleged knowledge of the facts they claim constituted notice

that a substantial risk to their bodily integrity was known or obvious constitutes notice to the County.

The question of whether a government actor "has final policymaking authority is a question of state or local law." *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.,* 183 F.3d 734, 737 (7th Cir. 1999)). And "[n]ot every municipal official with discretion is a final policymaker; authority to make final policy in a given area requires more than mere discretion to act." *Milestone*, 665 F.3d at 780. (citing *Darchak v. City of Chicago Bd. Of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001)). If the government actor's decisions are subject to review by a higher authority, then that individual is not a final policymaker, and the municipality is not liable. *Milestone*, 665 F.3d at 780; *Gernetzke*, 274 F.3d at 469.

It is true that all of the jail officers in Polk County Jail report to Captain Nargis, and it is also true that Captain Nargis is the person primarily in charge of writing jail policies and conducting in-house officer training. (Declaration of Scott Nargis ¶ 37, 7/1/16, ECF No. 55.) However, that is far from establishing that Captain Nargis is the final policymaker for the Polk County Jail. Captain Nargis reports to the Chief Deputy Sheriff, who in turn reports to the Sheriff. (Declaration of Scott Nargis ("8/16/16 Nargis Decl.") ¶ 2, 8/16/16, ECF No. 92.) Captain Nargis's decisions are subject to review, at least, by the Chief Deputy and by the Sheriff. Clearly, if either of them disagree with a policy or personnel decision made by Captain Nargis, they have the ability to overrule it. (8/16/16 Nargis Decl., ¶¶ 4-5.) Further, the evidence establishes that Captain Nargis meets frequently with the Chief Deputy and with the Sheriff to keep them apprised of jail operations, including the content of officer training. (8/16/16 Nargis

5

Decl., ¶ 9.) When the allegations of sexual misconduct against Christensen arose, Chief Deputy

Moe conducted the initial investigation and made the referral to the Department of Justice to

initiate a criminal investigation. (Declaration of Paul D. Cranley ("8/16/16 Cranley Decl.") ¶ 3,

Ex. A, ECF No. 93.)  In short, Captain Nargis does not run the Polk County Jail without

oversight from the Chief Deputy and the Sheriff.  He is not a "policymaker" for purposes of §

1983 liability.

The Court addressed this issue in its decision and order on summary judgment.  The

Court held that Captain Nargis was a policymaker with respect to training of officers and

inmates, and with respect to implementing PREA compliant policies.  (Opinion and Order at 23,

Jan. 3, 2017, ECF No. 161.)  Neither the Court nor the plaintiffs have identified any law

imposing Monell liability for a municipality's "failure to train inmates."  There is no legal basis

on which to find the County liable on this unsupported theory, and therefore Captain Nargis's

status as a policymaker with respect to that matter is irrelevant.  Similarly, there is no legal basis

for holding the County liable to implement PREA compliant policies, so to the extent Captain

Nargis has been found to be a policymaker with regard to PREA compliance, that finding is also

irrelevant.  The County cannot be held liable for failing to implement PREA.  To hold otherwise

would allow the jury to hold the County to a standard far higher than the standard to which the

County is held by the governing body that regulates the County's compliance with applicable

law—i.e., the Department of Corrections.  (*See* Hompe Dep. at 16, 18, 63, testifying that

compliance with PREA is "voluntary . . . on their own decision," and PREA compliance and

training is not something the DOC oversees or enforces.)

The Court also held, however, that "Plaintiffs have failed to demonstrate that Nargis has

policy-making authority with respect to the supervision of correctional officers, including

6

whether to take certain disciplinary actions.  (Opinion and Order 24.)  Rather, the Court noted

that Deputy Sheriff Moe, not Captain Nargis, arguably "had policymaking authority over the

supervision of correctional officers."  (*Id.*)  The plaintiffs provide no additional evidence in their

motion *in limine* to support an argument that Captain Nargis is a policymaker with respect to

supervision and discipline.  Thus, the plaintiffs' motion *in limine* should be denied.

**IV.     ANY REFERENCE TO THE FACT THAT THE COUNTY MAY BE COVERED BY INSURANCE WOULD VIOLATE FEDERAL RULE OF EVIDENCE 411.**

Polk County is insured by Wisconsin County Mutual Insurance Company.  The Court

should not, however, allow plaintiff to present any evidence of this insurance coverage to the

jury pursuant to Rules 411 and 401 through 403.

Rule 411 prohibits a party from presenting evidence of insurance coverage in an attempt

to prove fault or liability.  Specifically, it states that "[e]vidence that a person was or was not

insured against liability is not admissible to prove whether the person acted negligently or

otherwise wrongfully." Fed. R. Evid. 411.  Based on this language, courts have routinely held

that reference to insurance coverage during the course of a trial is inappropriate and in some

instances may constitute reversible error.  *See, e.g.*, *Raybestos Prods. Co. v. Younger*, 54 F.3d

1234, 1239-40 (7th Cir. 1995), *Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226-27

(7th Cir. 1985).

Plaintiffs rely on *Tatum v. Clarke*, No. 11-C-1131, 2015 WL 6392609, at *12 (E.D. Wis.

Oct. 22, 2015) in order to circumvent the prohibition in Rule 411 on the pretext that the County

will somehow argue that a plaintiffs' verdict "would place a heavy burden upon local

tax[]payers."  (Pls.' Br. in Support of "General Motions," at 14.)  During the liability phase of

trial, plaintiffs' concern is wholly misplaced.  The fact that the County has insurance coverage

will not aid the jury in deciding whether any fact of consequence is more or less probable.  In

fact, the knowledge of the presence of insurance may induce the jury to decide the case (or, at a minimum, the issue of damages) on improper grounds. The existence of insurance is, therefore, irrelevant and should also be excluded pursuant to Rules 401 through 403.

During a damages phase of trial, the County has no intention of making any argument about burdens on local taxpayers. Thus, the plaintiffs claimed basis for admitting evidence of insurance coverage has no application.

## V.   OFFICER SCHAEFER'S LETTER TO THE JUDGE IN CHRISTENSEN'S CRIMINAL CASE IS HIGHLY RELEVANT AND ADMISSIBLE.

The plaintiffs seek to exclude from evidence a letter written by former Polk County Jail Sergeant Steve Schaefer. (*See* January 13, 2017 Declaration of Paul Cranley ("1/13/17 Cranley Decl."), ¶ 5, Ex. C (7/16/15 Schaefer letter).) The plaintiffs argue that letter is irrelevant under Rule 401 and is inadmissible heresay under Rule 801. The plaintiffs are incorrect. The letter is highly relevant and is admissible for purposes of rebutting the plaintiffs' theory that the County was on notice of prior sexual misconduct.

The plaintiffs' central argument in this case is that Polk County created an "atmosphere" in its jail that facilitated and encouraged sexual assault by jail officers against inmates. The plaintiffs support this assertion with the dubious innuendo that sexual misconduct, vulgar language and sexual harassment were widespread and well-known throughout the jail. Because the plaintiffs must show that jail policymakers knew that sexual assault of inmates was substantially likely to occur, or that the risk of such assaults was obvious, and they were deliberately indifferent to that risk, the plaintiffs have implied that Darryl Christensen was encouraged to engage in sexual misconduct by the County's lax attitude toward improper sexual activity in the jail.

Sergeant Schaefer's letter refutes many of the plaintiffs' criticisms. First, the letter indicates that Sergeant Schaefer, who was in a supervisory role above Christensen, never suspected that Christensen would be engaged in the type of conduct he perpetrated. Sergeant Schaefer states that he worked with Christensen his entire career, and while he found him self-centered and arrogant, he always assumed he was a "decent man." Sergeant Schaefer's letter further supports the notion that Christensen purposefully hid his assaults from the rest of the staff by finding "hidden spots and areas where they would not get detected." The letter supports the fact that other jail staff not only had no inkling that Christensen was involved in any illicit activity, but none of them "could image how he could have remained undetected until [they] read the complaint." Sergeant Schaefer's letter also refutes the plaintiffs' allegation that the County failed to train its officers not to engage in sexual activity with inmates. Sergeant Scheafer's letter makes it clear that he, and in his opinion, all the other officers, knew that such conduct was improper and prohibited.

The letter proves that, contrary to the plaintiffs' central theory, the atmosphere at Polk County Jail was not conducive to and tolerant of sexual misconduct or other sexual mistreatment of inmates. To the contrary, Sergeant Schaefer's letter suggests that he and other jail officers took pride in their work and were appalled and demoralized by Christensen's conduct.

The County does not intend to introduce Sergeant Schaefer's letter for its truth. Rather, the letter is admissible as evidence the County was not on notice of widespread sexual misconduct, and that such conduct was not condoned or accepted. For these reasons, the County requests that the plaintiffs' motion *in limine* be denied. At a minimum, the Court should reserve ruling on the motion, as it will have an opportunity to rule on the specific testimony from Sergeant Schaefer prior to trial.

**VI.     PLAINTIFFS' MOTION TO EXCLUDE ALL EVIDENCE OF J.K.J's SEXUAL RELATIONS WITH CHRISTENSEN AT THE AMERY FIRE DEPARTMENT.**

The County does not intend to offer evidence to prove that plaintiffs engaged in other sexual behavior or to prove plaintiffs' sexual predisposition.  However, depending on plaintiffs' trial testimony, such evidence may become relevant for, among other things credibility. (*See also* Polk County's Motion to Admit Evidence Pursuant to Federal Rule of Evidence 412(c).)

**VII.    EVIDENCE OF CHRISTENSEN'S UNTRUTHFUL CHARACTER IS IRRELEVANT AND WOULD ONLY CONFUSE THE JURY.**

Plaintiffs' motion to admit evidence of Christensen's untruthful character and attack his credibility is, to say the least, bizarre.  In light of the fact that Christensen has plainly admitted his sexual misconduct with plaintiffs—and that such conduct was against his training, Jail policy, and state law, and that it is almost completely consistent with plaintiffs' own accounts—it is unclear what plaintiffs believe Christensen is potentially untruthful about.  To that end, presenting evidence of Christensen's untruthful character as to plaintiffs' claims against him would be a waste of time and confuse the jury under Federal Rule of Evidence 403:  why would plaintiffs attempt to call Christensen's credibility into question when he admitted that he engaged in sexual misconduct with these very same plaintiffs?

Moreover, the evidence that plaintiffs point to—Christensen lying to his immediate superior about whether he in fact forwarded a work email—is completely irrelevant to plaintiffs' claims that the County implemented an unconstitutional official policy that caused injury to plaintiffs.  It is noteworthy that this Court, in its summary judgment order, did not even recognize Christensen's email incident in a list of other "concerns" about Christensen (Opinion and Order 16 n.12), let alone that it was evidence of a prior allegation that would have put the County on notice of sexual misconduct sufficient to prove a custom claim.

As such, the email evidence cited by plaintiffs should be excluded as irrelevant under Federal Rule of Evidence 401(b).  In addition, the evidence would be a waste of the jury's time and confuse the issues before the jury, pursuant to Federal Rule of Evidence 403.

## VIII.  CHRISTENSEN'S SEXUAL RELATIONSHIP WITH A COWORKER IS IRRELEVANT AND WOULD ONLY CONFUSE THE JURY.

Plaintiffs' assert that evidence of Christensen's sexual relationship with a coworker is needed to show the County created a "sexually[-]charged" culture and was "deliberately indifferent to the possibility of" plaintiffs being sexually assaulted.  Plaintiffs reasoning is specious; it is unclear how a consensual sexual relationship between two adults at a jail workplace—which they hid from their coworkers—would cause one of those adults to believe that the employer promoted or consented to sexual assault of an inmate.

Furthermore, evidence of this consensual relationship, even though inappropriate, is irrelevant with respect to plaintiffs' claims and should be barred pursuant to Federal Rules of Evidence 401.  Indeed, evidence of this relationship will not assist the jury in determining whether the County implemented an unconstitutional official policy that caused injury to plaintiffs, which is the issue the jury is being called upon to decide.  Additionally, regardless of whatever potential relevance may exist with respect to this relationship between Christensen and Lynelle Manning, the probative value of any evidence relating thereto is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay.  Therefore, evidence of this relationship should also be precluded pursuant to Federal Rule of Evidence 403.

## IX.  PLAINTIFFS' MOTION TO BAR DR. MICHAEL SPIERER IS MOOT, AS THE COUNTY DOES NOT INTEND TO CALL HIM TO TESTIFY AT TRIAL.

The plaintiffs move to bar Dr. Michael Spierer from testifying at trial on the grounds that he was not timely disclosed.  Rule 26(a)(2) requires a party to "disclose to the other parties the

identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2).  Polk County does not intend to call Dr. Spierer as a witness to testify at trial, and therefore was under no obligation to provide the particularized disclosures required by Rule 26(a)(2).

Dr. Spierer was retained to review the MMPI data because the plaintiffs' expert, Mr. Raderstorf, did not follow customary professional practice and provide a computerized interpretation of the test results, but instead provided his own, cursory interpretation of the data. (1/13/17 Cranley Decl., ¶ 4, Ex. B at 1-2, 4 (Robbins Report).)  Dr. Spierer completed his analysis and provided his findings to Dr. Robbins in two letters dated July 14, 2016, and Dr. Robbins then incorporated those findings into his own report.  (1/13/17 Cranley Decl., ¶ 6, Ex. D. (Dr. Spierer letters); *see also* Robbins Report at 4.)  The defendants produced a report from Dr. Robbins on August 16, 2016.  The plaintiffs do not attempt to argue Dr. Robbins' report was untimely.

The plaintiffs' motion is ultimately moot, however, because the defendants do not intend to call Dr. Spierer to testify at trial. The report he provided to Dr. Robbins regarding his interpretation of the MMPI test data was provided to the plaintiffs long ago, and is incorporated into the materials reviewed and relied upon by Dr. Robbins in reaching his conclusions.  Dr. Spierer's test data interpretation is the type information typically relied upon by experts in the field of forensic psychiatry.  (Robbins Report at 3-4.)  Dr. Robbins is entitled to review Dr. Spierer's report, and incorporate Dr. Spierer's conclusions into his own expert opinion and testimony.  *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they

need not be admissible for the opinion to be admitted."); *see also United States v. Gardner*, 211

F.3d 1049, 1054 (7th Cir. 2000) (expert's reliance on materials "which may not have been

admissible into evidence, served as a reliable basis for his testimony because these materials are

facts or data 'of a type reasonably relied upon by experts' in the field of fire cause and origin.")

    Dated this 13th day of January, 2017.

                                        s/ *Paul D. Cranley*
                                        _____
                                        Charles H. Bohl
                                        Paul D. Cranley
                                        Kurt M. Simatic

                                        HUSCH BLACKWELL LLP
                                        555 East Wells Street, Suite 1900
                                        Milwaukee, Wisconsin 53202-3819
                                        Telephone:  414-273-2100
                                        Fax:  414-223-5000
                                        Email: Charles.Bohl@huschblackwell.com

                                        33 East Main Street, Suite 300
                                        Madison, WI 53701-1379
                                        Telephone: 608-255-4440
                                        Fax: 608-258-7138
                                        Email: paul.cranley@huschblackwell.com
                                        20800 Swenson Drive, Suite 300
                                        Waukesha, Wisconsin 53186
                                        Telephone: 262-956-6200
                                        Fax: 262-956-6210
                                        Email: kurt.simatic@huschblackwell.com

                                        Attorneys for Polk County

13376224.1

13