UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

J.K.J.,

       Plaintiff,

v.

POLK COUNTY and DARRYL L. CHRISTENSEN,

       Defendants,

and

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

       Intervenor.

Case No. 15-CV-428

---

M.J.J.,

       Plaintiff,

vs.

POLK COUNTY and DARRYL L. CHRISTENSEN,

       Defendants,

and

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

       Intervenor.

Case No. 15-CV-433

---

### RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. KENNETH ROBBINS, M.D.

### **INTRODUCTION**

Invoking Rule 702 and *Daubert*, plaintiffs ask this Court to bar the County's expert, Kenneth I. Robbins, M.D., from testifying at trial, based on the following theories:

1. Dr. Robbins should be barred from testifying because he is not qualified to interpret the raw data from an MMPI test, but instead relies upon the interpretation of a qualified professional.

2. Dr. Robbins should be barred from testifying because he criticized Mr. Raderstorf's opinions and report based on the information contained in it, rather than on other, undisclosed information Mr. Raderstorf may have considered, but did not include in his written evaluation.

3. Dr. Robbins should be barred from testifying because, although he has extensive experience and regularly evaluates and treats patients with a history of sexual assault, many of those patients are elderly.

In asserting these arguments, plaintiffs misconstrue Dr. Robbins' opinions and unabashedly mischaracterize his testimony. In some instances, such as the statements that "Dr. Robbins' area of expertise is limited to geriatrics," and "Dr. Robbins is not experienced in treating or evaluating sexual assault victims," plaintiffs' misrepresentations of Dr. Robbins' testimony are so blatant and so far beyond the pale of even zealous advocacy that they can only be regarded as an intentional effort to mislead the Court and waste both the Court's and the County's time and resources. Plaintiffs' arguments lack any merit. Their various motions *in limine* to bar Dr. Robbins should be denied.

### ARGUMENT

**I.  DR. ROBBINS IS A QUALIFIED EXPERT WHO OFFERS RELIABLE, SCIENTIFIC TESTIMONY THAT WILL ASSIST THE JURY TO DETERMINE THE FACTS IN ISSUE.**

"Expert testimony is admissible when the testimony is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case." *Lewis v. CITGO*

*Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009); *see also* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993). Under Rule 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. *See also Hayes v. Raytheon Co.*, 808 F. Supp. 1326, 1329 (N.D. Ill. 1992), *aff'd*, 23 F.3d 410 (7th Cir. 1994) ("Rule 703 liberalizes the admissibility of expert testimony by permitting experts to base their opinions on hearsay and other evidence not admissible in court."); *United States v. Gardner*, 211 F.3d 1049, 1054 (7th Cir. 2000) ("Dr. DeHaan's reliance on reports, photographs, and third-party observations, which may not have been admissible into evidence, served as a reliable basis for his testimony because these materials are facts or data 'of a type reasonably relied upon by experts' in the field of fire cause and origin.")

Dr. Robbins is a board certified psychiatrist. (January 13, 2017 Declaration of Paul Cranley ("1/13/17 Cranley Decl."), ¶ 3, Ex. A, Curriculum Vitae of Kenneth I. Robbins, M.D. ("Robbins CV"), at 2; *see also*, Deposition of Kenneth I. Robbins, M.D. ("Robbins Dep.") at 16, ECF No. 114.) He has been a member of the clinical faculty at the University of Wisconsin Department of Psychiatry since 1985. (1/13/17 Cranley Decl., ¶ 3, Ex. A at 1; Robbins Dep. at 16.) Dr. Robbins is also currently an associate clinical professor of psychiatry and behavioral sciences at the Medical College of Wisconsin, where he started the fellowship program in forensic psychiatry and now teaches. (Robbins Dep. at 16.) He also currently serves as the medical director of the geriatric psychiatry unit at Stoughton Hospital and as medical director of the Rock County mental health clinic, where he where he supervises staff and treats patients with

3

severe mental illness and substance abuse problems who are too severely ill for the private system to manage. (*Id*. at 22-24.) In addition, Dr. Robbins serves as a consultant for the Madison Police Department and other private entities providing various forensic psychiatric consulting services. (*Id*. at 14-15, 19-21.)

Plaintiffs do not dispute that Dr. Robbins is imminently qualified to perform forensic psychiatric evaluations or to offer opinions regarding the process of performing and documenting a comprehensive, reliable forensic evaluation. The only shortcoming plaintiffs assert is that Dr. Robbins is not qualified to personally interpret the raw data from an MMPI test, a qualification that is unnecessary for any of the opinions he offers in this case.

## II.     DR. ROBBINS' OPINION IS NOT SUBJECT TO EXCLUSION UNDER RULE 702 OR *DAUBERT* MERELY BECAUSE HE RELIED ON ANOTHER QUALIFIED PROFESSIONAL TO INTERPRET THE RAW MMPI DATA.

Dr. Robbins is entitled to base his opinions, in part, on the letter reports by Dr. Spierer providing his interpretation of the MMPI data. *See* Fed.R.Evid. 703. Dr. Robbins has been involved in hundreds forensic cases and is qualified to testify to the standards applicable to the preparation of forensic reports and the data and information used to support them. (Robbins Report at 1-2.) He testified:

> It is incumbent on a forensic examiner to do their best to determine the honesty of any person they are asked to evaluate . . . . One of the ways an examiner might evaluate a person's honesty is by using the validity scales embedded in an MMPI. It is customary with an MMPI to use a computerized interpretation program to avoid making errors. These programs are devised by the people who created the MMPI to take all the data and provide conclusions, which include the validity of the testing. Mr. Raderstorf apparently interpreted the raw data from the MMPI himself, rather than use a computerized interpretation of this data.

(Cranley Decl. ¶ 4, Ex. B at 3 (Robbins Report).) In addition to the fact that Mr. Raderstorf does not appear to be qualified by his education and experience to interpret raw MMPI data (*id*. at 1-2), he "provided only a very brief interpretation of the MMPI-2-RF in his report." (*Id.* at 4.)

4

Thus, "an experienced forensic psychologist [Dr. Speirer] was asked to provide consultation to provide a more complete interpretation of the raw data Mr. Raderstorf provided." (*Id.*)

Plaintiffs argue Dr. Robbins should be barred from testifying at trial because he is not qualified to interpret raw MMPI data himself. But as Dr. Robbins explained, it is customary for a forensic psychologist to incorporate the more reliable computerized interpretation provided by the company that develops and interprets the MMPI. Mr. Raderstorf chose not to follow this professional practice, and did not provide the computerized interpretation. Consequently, Dr. Spierer was employed to provide a qualified analysis. Dr. Robbins is entitled to rely on the interpretation provided by Dr. Spierer, whom even plaintiffs apparently concede is qualified to provide a reliable, authoritative analysis of the data.

Moreover, the gravamen of Dr. Robbins' opinion is not that Mr. Raderstorf incorrectly interpreted the MMPI data. Rather, Dr. Robbins observes that Mr. Raderstorf lacks the expected qualifications to interpret the data, and failed to utilize the computerized interpretation provided by the MMPI testing experts. More importantly, however, Dr. Robbins opines that Mr. Raderstorf failed to account for the MMPI results—which indicated, even according to his own truncated interpretation, that plaintiffs both greatly exaggerated their symptoms—in reaching his conclusions. Dr. Robbins is clearly qualified to testify regarding how to perform and document a forensic psychological examination. Plaintiffs do not argue otherwise. He is entitled to rely upon the qualified interpretation provided by Dr. Spierer, and none of Dr. Robbins' opinions require that he personally interpret the MMPI data. Plaintiff's argument that Dr. Robbins' testimony is speculative misconstrues Dr. Robbins' opinions, and lacks any merit.

**III.  DR. ROBBINS' OPINION IS RELIABLE, BASED ON THE INFORMATION MR. RADERSTORF PROVIDED IN HIS REPORT.**

Plaintiffs also argue that Dr. Robbins should be barred from testifying because: 1) Dr. Robbins is not qualified to question Mr. Raderstorf's qualifications because Dr. Robbins does not personally interpret MMPI data; and 2) Dr. Robbins' testimony that Mr. Raderstorf's conclusions are inconsistent with the facts and with the MMPI test results will not help the jury. Plaintiffs miss the point of Dr. Robbins' opinion, which is not primarily aimed at criticizing Mr. Raderstorf's interpretation of the MMPI data, but instead exposes the lack of scientific and analytical basis for Mr. Raderstorf's conclusions, based on the MMPI results, plaintiffs' prior emotional and psychological difficulties and symptoms, and their documented exaggeration of the problems they now attribute to Christensen's assaults at the Polk County Jail.

Dr. Robbins generally opined that Mr. Raderstorf's evaluation of plaintiffs is not consistent with accepted professional standards for a forensic psychological evaluation. (1/13/17 Cranley Decl., ¶ 4, Ex. B, (Kenneth I. Robbins Report).) Dr. Robbins notes that Mr. Raderstorf has a master's degree in counseling psychology; that he is not licensed in the State of Wisconsin; that the counseling he provides is vocational counseling; and that his past experience as an expert is in vocational rehabilitation. (Robbins Report at 1.) He states that, in his experience, forensic evaluations and psychological testing are "performed only by mental health professionals with significantly more education and training than Mr. Raderstorf," and that in the "hundreds of forensic cases" he has been involved with, he has "never seen anyone with his very limited qualifications perform and interpret psychological testing or perform a 'psychological evaluation,' in a forensic matter." (*Id*. at 1-2.)

Plaintiffs argue that Dr. Robbins' opinions regarding Mr. Raderstorf's qualifications are unreliable speculation because Dr. Robbins conceded he does not know whether Mr. Raderstorf

6

is qualified to interpret raw data from an MMPI test. (Pls.' Br. at 14-15.) Plaintiffs argue this means Dr. Robbins has no basis to question Mr. Raderstorf's qualifications. (Pls.' Br. at 7-8.) But Dr. Robbins testified:

> Q.  Do you know whether Mr. Raderstorf is qualified to interpret that raw data?
>
> A.  I don't.
>
> Q.  If he says he is, do you have any reason to disbelieve that?
>
> A.  I've never before been involved – I've done probably 1,000 forensic cases; this is the first time I've ever seen a master's level clinician claim to be an expert on doing forensic evaluations and interpreting psychological testing, so it's unusual. So, yeah, I guess I'm a little suspicious.

(Robbins Dep. at 30-31.)

There is no question Dr. Robbins is qualified to testify about how to perform a qualified forensic psychological evaluation. In addition to performing "probably 1,000" of them himself (*id*. at 31), Dr. Robbins started and teaches in the fellowship program in forensic psychology at the Medical College of Wisconsin where the skill is taught. (*Id*. at 16.) Based on his experience as an expert in the field, Dr. Robbins is qualified to testify regarding the credentials typically possessed by a professional qualified to perform a forensic psychological examination. His testimony will assist the jury to understand the background and training expected of a forensic psychologist performing an evaluation of this nature.

Dr. Robbins' knowledge and expertise regarding the required qualifications is especially helpful to understanding and evaluating the conclusions reached by Mr. Raderstorf. Dr. Robbins identifies several ways in which Mr. Raderstorf's conclusions are inconsistent with the facts, and fail to demonstrate the scientific rigor expected of a forensic evaluation. First, Mr. Raderstorf interpreted the MMPI data himself, despite his questionable qualifications, and despite the fact

7

that this is contrary customary practice. (*Id*. at 3.) More importantly, Mr. Raderstorf failed to consider plaintiffs' MMPI results—even as he interpreted them—in reaching his conclusions. While Mr. Raderstorf observed that plaintiffs' MMPI results indicated they were not honest in providing answers during the test, he "accepted the information they gave in their interviews as being honest, without exaggeration." (Robbins Report at 4.)

Second, although Mr. Raderstorf's interviews with plaintiffs revealed "dramatic stressors" in both of their histories, he failed to investigate and thoroughly document their symptoms prior to the abuse by Christensen. With regard to M.J.J., Dr. Robbins stated that Mr. Raderstorf's report shows he failed to ask her "questions about her condition before the alleged abuse that would allow a clear understanding of whether any or all these symptoms were present before the alleged abuse." (Robbins Rept. at 2). Similarly, with regard to J.K.J., Dr. Robbins stated that "Mr. Raderstorf's poor documentation of Ms. J[]'s specific symptoms prior to the alleged abuse, makes it impossible to know what, if any, current difficulties might have been caused by any alleged abuse." (*Id*. at 3.)

Third, Dr. Robbins noted other inconsistencies in Mr. Raderstorf's report, which indicated a failure to base his conclusions on a qualified analysis of the facts. For example, Mr. Raderstorf concludes that J.K.J. reports being traumatized by her encounters with Christensen at the Polk County Jail, but he does not attempt to reconcile that complaint with the fact that, after her release from the jail, J.K.J. twice initiated contact with Christensen at the fire station where he worked, and voluntarily engaged in sex with him. (*Id*. at 4.) Dr. Robbins states "[i]t is not clear why Mr. Raderstorf does not explain this more clearly, or why he did not ask more questions of Ms. J. to understand why if she was traumatized by Mr. Christensen at the Polk County Jail, she would have initiated contact with him when she left the jail." (*Id*. at 4.)

8

Plaintiffs object to Dr. Robbins' opinions because they are based on what Mr. Raderstorf documented in his report, and assume that Dr. Robbins included his significant relevant findings in his report to support his conclusions. (Pls.' Br. at 10-13.) Dr. Robbins readily agreed he does not know what questions Mr. Raderstorf asked plaintiffs in the interviews he used to prepare his evaluation. Rather, he assumes that Mr. Raderstorf documented the important facts from his interviews in the report, and that if he did not report certain things, it is because he did not ask those questions or obtain that information. Dr. Robbins testified:

> Q. Well, my question was about what questions he asked and you couldn't identify what questions he asked; correct?
>
> A. I don't know what questions he asked. What I know is what he has contained in his report, and based on what's in his report, it appears he didn't ask questions about this.
>
> Q. Because you couldn't find anything in his report about it; isn't that right?
>
> A. That's correct.

(Robbins Dep. at 47-48.)

Dr. Robbins' "assumption" that Mr. Raderstorf did not elicit important information from plaintiffs based on the fact that he did not document that information in his report does not demonstrate that Dr. Robbins' opinions are based on speculation. Rather, his opinions are based on Mr. Raderstorf's own report, which Mr. Raderstorf prepared to document his evaluation and support his conclusions. For example, Dr. Robbins testified that "[i]t appears, however, Mr. Raderstorf asked few questions about specific symptoms that – about Ms. J. had been experiencing prior to the alleged sexual abuse." (Robbins Dep. at 35-36.) When asked about the basis for his opinion that Mr. Raderstorf failed to ask these essential questions, Dr. Robbins testified that documenting that information is "fundamental" to a competent forensic evaluation:

> Q. Do you know what specific questions he asked?

9

>   A.   I know what he put in his report and I – to me, that's fundamental in a forensic report. And if he didn't put it in there, I assume he didn't ask it.

(*Id*. at 35-36.)  The fact that information regarding J.K.J.'s prior symptoms was not included in Mr. Raderstorf's report means he either failed to ask the right questions, or he failed to include critical information in his evaluation. Either way, Dr. Robbins concludes Mr. Raderstorf's evaluation fails to articulate conclusions based on facts, and fails to meet expected professional standards. Dr. Robbins' opinion is based on his education, training, and experience in forensic psychiatry, and is supported by facts, not speculation.

## IV.   BASED ON HIS EXPERIENCE EVALUATING AND TREATING SEXUAL ASSAULT VICTIMS, DR. ROBBINS IS QUALIFIED TO TESTIFY REGARDING THE EVALUATION OF PLAINTIFFS, EVEN THOUGH THEY ARE NOT ELDERLY.

Plaintiffs argue "Dr. Robbins is not experienced in treating or evaluating sexual assault victims." (Pls.' Motion at 17, ECF. No. 140.) Plaintiffs then proceed to quote testimony from Dr. Robbins' deposition in which he says exactly the opposite. (*Id*.) Indeed, when plaintiffs' counsel specifically asked Dr. Robbins whether there is "any portion of your practice treating sexual assault victims," Dr. Robbins replied, "Of course." (Robbins Dep. at 37.) Dr. Robbins went on—in the testimony quoted by plaintiffs—to specify that his practice includes performing psychological evaluations on sexual assault victims, and that "probably 25 per cent, at least, of the people who I—who I see have had a history of sexual mistreatment." (*Id*. at 37-38.)

Plaintiffs assert that "Dr. Robbins' area of expertise is limited to geriatrics, not sexual assault." (Pls.' Br. at 16.) In fact, Dr. Robbins testified that geriatric psychiatry is "one of" his specialties (Robbins Dep. at 13), and that he devotes about 25 – 30 per cent of his time to serving as Medical Director of the geriatric psychiatry unit at Stoughton Hospital. (*See* 1/13/17 Cranley Decl., ¶ 3, Ex. A; *see also*, Robbins Dep. at 19.) Of course, Dr. Robbins also testified to a wide

range of professional accomplishments and responsibilities that do not involve geriatric patients, including the fact that he currently devotes about 40 per cent of his time treating severely mentally ill patients at Rock County mental health center. (Robbins Dep. at 21-22; *see also*, Argument, section I, *supra*, listing some of Dr. Robbins' professional responsibilities.)

Plaintiffs nevertheless apparently wish to argue that a practitioner who devotes part of his professional time to evaluating and treating elderly individuals with a history of sexual abuse is not qualified to evaluate or treat or opine about younger people with a history of sexual abuse. If they wish to attempt to argue to the jury that Dr. Robbins' should not be believed because he devotes part of his practice to helping elderly patients who have been sexually mistreated, they are welcome to pursue that line of questioning. But they should not represent to this Court that Dr. Robbins' practice is limited to geriatrics when they know that is false, and they should not represent Dr. Robbins' treatment of geriatric sexual assault victims as a reason to disqualify him from testifying about younger victims without any basis to argue that experience with the elderly is not transferrable to younger individuals.

Plaintiffs also point out that Dr. Robbins stated that most of his patients in the Stoughton geriatric psychiatry unit who have histories of sexual mistreatment do not come to be evaluated by him solely because of that history. Rather, he stated "[i]t's more common that it's a part of their history and part of why they're having emotional difficulties." (*Id*. at 38.) It appears plaintiffs are suggesting that this experience is not relevant to plaintiffs' situations. Plaintiffs provide no support for this position, which is understandable, since plaintiffs here are also arguing that sexual mistreatment by Christensen is a part of why they are having emotional difficulties. Perhaps plaintiffs are asserting their cases are different because sexual mistreatment is not merely "*part* of why they're having emotional difficulties," but is instead the entire reason.

11

If plaintiffs wish to take that position, despite their lengthy histories of substance abuse (M.J.J. and J.K.J.), mental illness (including depression and an eating disorder) (M.J.J.), loss of custody of children (M.J.J.), homelessness (J.K.J), and suicidal ideation (J.K.J.), they are free to do so at trial. But any suggestion that they believe their sexual assault by Christensen is the cause of all their problems, and not a part of their complicated histories, does not render Dr. Robbins' experience irrelevant or make him any less qualified to offer opinions regarding the forensic evaluation the plaintiffs seek to introduce in support of their claims.

## CONCLUSION

For the foregoing reasons, Polk County requests that the Court deny plaintiffs' motions to bar Dr. Robbins from testifying at trial, and that the Court allow the admission, subject to objection at trial, of all of the opinions disclosed by Dr. Robbins.

Dated this 13th day of January, 2017.

s/ *Paul D. Cranley*
Charles H. Bohl
Paul D. Cranley
Kurt M. Simatic

HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: 414-273-2100
Fax: 414-223-5000
Email: Charles.Bohl@huschblackwell.com

33 East Main Street, Suite 300
Madison, WI 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
Email: paul.cranley@huschblackwell.com

20800 Swenson Drive, Suite 300
Waukesha, Wisconsin 53186
Telephone: 262-956-6200
Fax: 262-956-6210
Email: kurt.simatic@huschblackwell.com
Attorneys for Polk County