IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

J.K.J.,

                               Plaintiff,                          OPINION AND ORDER

     v.

                                                               15-cv-428-wmc

POLK COUNTY and DARRYL L.
CHRISTENSEN,

                              Defendants.

and

M.J.J.,

                                Plaintiff,

     v.

                                                               15-cv-433-wmc

POLK COUNTY and DARRYL L.
CHRISTENSEN,

                              Defendants.

These consolidated cases are set for jury trial, commencing January 30, 2017. In advance of the final pretrial conference, the court rules as follows on the parties' motions *in limine*.

## OPINION

## I. Plaintiffs' Motions in Limine ('428 dkt. #137; '433 dkt. #138)

### A. MIL No. 1: exclude all testimony prohibited by Federal Rule of Evidence 412

On its face, this motion will be granted because it simply, and therefore unnecessarily, seeks enforcement of a federal rule of evidence. Because the parties'

submissions raise questions as to Rule 412's application to the evidence here, the court

will address this motion further.  In relevant part, Rule 412 provides:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> (1) evidence offered to prove that a victim engaged in other sexual behavior; or
>
> (2) evidence offered to prove a victim's sexual predisposition.
>
> (b) Exceptions.
>
> . . .
>
> (2) Civil Cases. In a civil case, the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. The court may admit evidence of a victim's reputation only if the victim has placed it in controversy.

Fed. R. Evid. 412.  The rule also sets forth a procedure for determining whether such

evidence is admissible.   Fed. R. Evid. 412(c) (describing requirement of a motion and

hearing).

In their brief in support of this motion, plaintiffs explain the rule, policy behind

its enactment and the procedure defendants are required to file to seek admission of such

evidence.  Plaintiffs seeks to bar any evidence or argument about their sexual history or

alleged sexual disposition, including sexual behavior, past sexual relationships, manner of

dress or speech and bodily appearance, lifestyle, tattoos or other markings, and any jobs

or professions that defendants would offer to prove alleged sexual predispositions.  (Pl.'s

Br. (dkt. #138) 5.)[1]  In response to the motion, Christensen states that he does not oppose the motion, nor could he on its face.  Accordingly, this motion is GRANTED.

As for Polk County, it represents that it does not intend to offer such evidence, however, it then adds that "depending on plaintiffs' trial testimony, such evidence may become relevant to prove, among other things, the plaintiffs' credibility."  (County's Opp'n (dkt. #182) 2.)  Such a broad reservation of possible uses is not consistent with the Rule, especially when the only example given of a justified use is so fraught with problems as "credibility."  Regardless, any evidence of alleged sexual misconduct by a victim will be excluded unless first offered outside the jury's presence and found by the court to fall outside the Rule.

In obvious anticipation of this approach, the County submits its own motion to admit such evidence under Rule 412(c).  ('428 dkt. #195; '433 dkt. #196.)  The County contends in its motion -- filed at the time *responses* to motions *in limine* were due -- that it may seek to introduce evidence of plaintiff J.K.J. visiting Christensen at the Amery Fire Station on three occasions, as well as her deposition testimony that a sexual interaction during one of those visits was not "unwelcome."  (*Id.* at ¶ 3.)  Because the County's motion was filed late, the court will delay ruling on it pending argument at the final pretrial conference.  Accordingly, that motion is RESERVED.

---

[1] Unless otherwise noted, the citations to docket entries are to the 15-cv-428 docket.

**B.  MIL No. 2: take judicial notice of the PREA and congressional findings**

Plaintiffs next ask this court to take judicial notice of the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.*, and the U.S. Department of Justice's PREA National Standards and related commentary, dated June 20, 212 and codified under 28 C.F.R. § 115.  In response, the County contends that the congressional findings are "legislative facts, not adjudicative facts," and as such do not "relate to the parties, their activities, their properties, their businesses."  (County's Opp'n (dkt. #187) 2-3.)  Unfortunately, neither side elaborates as to what *specific* information is or is not relevant to the issues this jury will be asked to decide.  Instead, plaintiffs refer to them generically, and the County reiterates its argument at summary judgment that compliance with the PREA is not compulsory.  As a result, the court is unable to assess whether any of part of the PREA's guidelines or related commentary for preventing sexual assaults in the prison context may be material to the jury's consideration of plaintiffs' claims, much less *how* the information should be presented.  Accordingly, this motion is RESERVED pending further discussion with the parties at the final pretrial conference as to what exactly plaintiffs seek to introduce to the jury.

**C.  MIL No. 3: find Jail Captain Nargis is a policymaker as it relates to jail operations**

Plaintiffs' third motion *in limine* is a curious one.  Essentially plaintiffs seek a finding of fact on the merits that Nargis was a "policymaker" with respect to *all* aspects of jail operations.  The court already addressed this issue in its summary judgment opinion and order, finding that Nargis was a policymaker with respect to training and

adopting of policies relating to the PREA, but declined to find that he was a policymaker with respect to correctional officer supervision.  (1/3/17 Opinion & Order (dkt. #160) 22-24.)  The court reserved on that issue pending a more complete record as to Deputy Sheriff Moe's role in the supervision of correctional officers.  (*Id.* at 24)  The court sees no basis to reconsider these decisions, although to be fair to plaintiffs, their motion was filed before the court issued its decision on summary judgment.

In the County's response, it regurgitates the arguments made at summary judgment, and notes that the court left the door open for finding Moe a policymaker with respect to supervision of correctional officers.  As such, the court will RESERVE on this motion pending factual proffers and argument at the final pretrial conference.

### D. MIL No. 4: admit evidence during the damages phase that Polk County has insurance and preclude evidence or argument that the verdict will create a burden on Polk County's tax base

In this motion, plaintiffs contend evidence "that Polk County has insurance is relevant to rebut the argument from Polk County that a verdict for the plaintiffs would place a heavy burden on local tax payers."  (Pl.'s Br. (dkt. #138) 14.)  In response, Polk County argues that any reference to insurance coverage would violate Federal Rule of Evidence 411.  The County also argues that such evidence is immaterial to any issue the jury will be asked to decide during the liability phase.  As for damages, the County represents that it "has no intention of making any argument about burdens on local taxpayers."  (County's Opp'n (dkt. #187) 8.)  Accordingly, this motion is DENIED.  If the County opens the door during the damages phase of this trial by referring to, or even

intimating about, the fiscal burden on tax payers, however, plaintiffs may submit evidence of the County's insurance coverage.

### E. MIL No. 5: exclude letter sent from Officer Schaefer to the judge in Christensen's criminal sentencing

Plaintiffs further seek to exclude a letter dated July 16, 2015, from Steve Schaefer to Judge Harrington.  (Bannink Decl., Ex. B (dkt. #143-2).)  In his response to plaintiffs' motions *in limine*, defendant Christensen indicates that he joins in this motion. (Christensen's Opp'n (dkt. #179) 1.)

In the letter, Schaefer describes himself as a recently retired jail sergeant for the Polk County Sheriff's Department, and among other statements about the criminal case, he urges the judge to sentence Christensen to the maximum sentence.   Plaintiffs represent that Judge Harrington was the judge assigned to Christensen's criminal action. Plaintiffs seek to exclude the letter as not relevant under Rule 401, more prejudicial than probative under Rule 403, and inadmissible hearsay under Rule 801, all of which appear to be valid objections.

In response, the County contends that the letter is highly relevant to the core issue of whether the County had notice of a risk of sexual assault by jail correctional officers. Furthermore, the County argues that the letter does not constitute hearsay because it is not being introduced for the truth of the matter asserted, but rather "as evidence the County was not on notice of widespread sexual misconduct, and that such conduct was not condoned or accepted."  (County's Opp'n (dkt. #187) 9.)

6

There are a number of problems with these arguments.  First, Schaefer is not a policymaker -- or at least there has been no argument or evidence to that effect -- and therefore his personal knowledge or lack thereof about the risk of sexual assault by jailers is of marginal relevance to the issue in this lawsuit.  Second, Schaefer explains in the letter that he was surprised by the allegations in the criminal complaint and how such widespread sexual activity could have remained undetected, the relevance of this information -- unless being introduced for the truth of the matter asserted (that Christensen's conduct was undetected) -- appears limited at best.  Third, the letter contains irrelevant and highly prejudicial observations bearing on criminal punishment.

Nevertheless, in its opposition, the County urges the court to reserve ruling on this motion pending Schaefer's testimony at trial.  If anything, the fact that Schaefer will testify at trial further diminishes the need for this letter to be introduced.  Accordingly, this motion is GRANTED as to use of this letter at trial except as impeachment or for purposes of refreshing recollection.

### F.  MIL No. 6: exclude all testimony or other evidence that J.K.J. had sexual relations with Christensen at the Fire Department

Plaintiffs seek to exclude testimony that J.K.J. engaged in sexual relations with Christensen at the Amery Fire Department, where Christensen was the Fire Chief.  This motion essentially seeks to apply plaintiffs' broader motion *in limine* number 1 under Rule 412 to a specific factual example, except that plaintiffs also argue this evidence should be excluded as improper character evidence in violation of Federal Rule of Evidence 404.  In addition to the County's late-filed, counter motion, detailed above,

Christensen opposes this motion on the basis that evidence of a consensual sexual relationship while J.K.J. was not incarcerated is relevant to damages, including punitive damages. (Christensen's Opp'n (dkt. #179) 1-2.) Because the court has already reserved as to the County's related motion, this motion is also RESERVED pending argument at the final pretrial conference.

### G. MIL No. 7: exclude evidence of M.J.J. receiving state benefits

Plaintiffs seek to exclude evidence that M.J.J. is receiving state benefits. Plaintiffs contend that defendant may attempt to introduce evidence to argue that M.J.J. "is a burden on society from receiving such benefits and that her lawsuit is another burden on society." (Pl.'s Br. (dkt. #138) 16.) Plaintiff contends that this evidence should be excluded under Rule 402, 403, 404 and 405. The motion is GRANTED as unopposed.

### H. MIL No. 8: exclude evidence of M.J.J. being the recipient of social services for her children

Plaintiffs explain that M.J.J. does not currently have custody of her children. Plaintiffs are concerned that defendant may attempt to introduce this evidence as further proof that she is a burden on society, or alternatively, if the loss of custody of her children comes out, to prove that she is a bad mother. This motion is also GRANTED as unopposed.

### I. MIL No. 9: admit evidence of Christensen's untruthful character

Plaintiffs seek to introduce evidence that in 2007, Christensen denied sending an email on three separate occasions, which he had in fact sent. Plaintiffs contend that this evidence is relevant and admissible because it calls into question Christensen's credibility

8

and reputation for truthfulness under Rules 401 and 608. Specific conduct *may* be relevant in the court's discretion to impeach general testimony of Christensen's character for truthfulness under narrow circumstances, but certainly not admissible. Fed. R. Civ. P. 608(b).

In response, the County labels the motion as "bizarre" in light of the fact that Christensen has "plainly admitted his sexual misconduct with plaintiffs." (County's Opp'n (dkt. #187) 10.) Moreover, the County contends that evidence of him lying about sending an email is completely irrelevant to the claims at issue in this litigation. (*Id.*) For his part, Christensen contends that his reputation for truthfulness has not been in issue, and therefore, this evidence is not material under Federal Rule of Evidence 608. The court agrees with defendants that the evidence is not relevant, and even if relevant, its use is permissible only after Christensen's truthfulness is in issue. Even so, the court would be disinclined to allow impeachment on this isolated event. Accordingly, this motion is DENIED, without prejudice to plaintiffs renewing this motion if Christensen's truthfulness is attacked.

### J. MIL No. 10: admit testimony regarding Christensen's sexual relationship with co-worker Lynelle Manning

Plaintiffs seek to admit testimony that Christensen and another Polk County correctional officer had a sexual relationship. Plaintiffs contend that this evidence "is needed to show, along with other evidence that Polk County created a culture that was sexually charged and was deliberately indifferent to the possibility of Plaintiffs being sexually assaulted." (Pl.'s Br. (dkt. #138) 18.)

9

In response, the County contends that evidence of a consensual relationship between co-workers is not relevant to plaintiffs' claims, and even if relevant, its probative value is outweighed by the prejudicial effect on defendants.  Christensen seeks to exclude this evidence for the same reasons.  He also argues that the evidence cannot be admitted under Rule 415 because Christensen's sexual relationship with Manning is not a "similar act" as his sexual interactions with plaintiffs.  The court agrees with defendants that the prejudicial effect of a sexual relationship between coworkers outweighs any arguable probative value, especially involving adultery, as this one apparently did.  Even if the evidence could show that the jail culture was generally "sexually charged," such evidence is tangential at most to the core issue of whether the County was deliberately indifferent to the serious risk of sexual assaults of inmates by jail correctional officers.  Accordingly, this motion is DENIED, except to sexual acts committed by Christensen and Manning *at the jail itself*, as to which the court RESERVES pending argument.

### K. MIL No. 11: preclude Dr. Michael Spierer as an expert witness

Plaintiffs seek to exclude Dr. Michael Spierer as an expert.  Plaintiffs explain that Spierer was hired to "review the raw data produced by Mr. Raderstorf," due to conflict issues with the County's disclosed expert, Dr. Robbins.  Polk County did not disclose Spierer as required under Federal Rule of Civil Procedure 26(a)(2), nor does it intend to call Dr. Spierer as an expert.  Rather, Dr. Robbins relied on Spierer's interpretation, incorporating his conclusions into Robbins' expert report, as allowed under Fed. R. Evid. 703.  Accordingly, this motion is DENIED as moot.  The court will take up plaintiffs' separate challenge to *Dr. Robbins'* testimony later in this opinion.

10

**L.  MIL No. 12: find that Christensen was acting under color of state law**

Plaintiffs seek a ruling from this court that Christensen was acting under color of state law when he sexually assaulted plaintiffs.  While this motion might have been a subject of plaintiffs' motion for summary judgment, neither the County nor Christensen opposes it.  Accordingly, the motion is GRANTED as unopposed, and the court will remove this element from the jury instructions.

**M. MIL No. 13: allow evidence and testimony regarding prior instances of sexual misconduct within the Polk County jail (Christensen and Jorgensen)**

Plaintiffs seek to admit evidence of past allegations of sexual misconduct by jail correctional officers.  The first incident concerned Christensen in May of 2004; the second involved another officer Alan Jorgensen in January of 2012.  The court described the allegations and subsequent investigation for both in its summary judgment opinion.  (1/3/17 Opinion & Order (dkt. #160) 15-18.)  Plaintiffs contend that this evidence is relevant to the jury's question of whether the County had notice of the risk of sexual relations between correctional officers and inmates, as well as proving Christensen's opportunity under Rule 404(b) to assault plaintiffs.

As anticipated in plaintiffs' motion, the County contends that these incidents are not sufficiently similar to the allegations at issue in this lawsuit.[2]  While both instances involved sexual harassment, rather than sexual relations, as the court explained in its

---

[2] Christensen also opposes the introduction of the allegations surrounding Jorgensen on the basis that the jurors may attribute Jorgensen's alleged actions to Christensen in determining liability and damages.  While the court will not preclude the introduction of this evidence, Christensen is welcome to submit a curative instruction addressing this possible prejudice, as well as an instruction that any evidence of past sexual misconduct may not be considered for "propensity."

summary judgment ruling, a reasonable jury could infer from this evidence that the County had notice of a risk of sexual assault by jailers and failed to adequately address this risk by modifying its training, adopting sexual assault / harassment prevention policies, and adequately disciplining correctional officers.  (1/3/17 Opinion & Order (dkt. #160) 24-29.)[3]   Defendants' opposition offers no basis to reconsider that holding. Accordingly, this motion is GRANTED.

### N. MIL No. 14: allow evidence of Christensen's disciplinary records

In keeping with their prior motion, plaintiffs similarly seek to admit Christensen's disciplinary records as proof of notice for purposes of demonstrating *Monell* liability and as evidence of opportunity under Rule 404(b).  However, plaintiffs point to no additional incidents in Christensen's disciplinary record that are sufficiently similar to the allegations at issue in this case to warrant admission as to either issue.  As detailed in a footnote in the summary judgment opinion, the six incidents that are addressed span five years (with the last three occurring within six months of the end of his employment) and concern behavior unrelated to the sexual assaults at issue here.  (1/3/17 Opinion & Order (dkt. #160) 26 n.12) 24-29; County's Opp'n (dkt. #189) 6-7.)   Moreover, as the defendants both point out, plaintiffs' attempt to couch this evidence as demonstrating "opportunity" under Rule 404(b) makes no sense given that it is undisputed Christensen

---

[3]  While the court grants the motion on the basis that this evidence is relevant to plaintiffs' *Monell* claims, the court rejects plaintiffs' argument that the evidence is also relevant to proving Christensen's opportunity under Rule 404(b) to assault plaintiffs, given that there is no dispute that the sexual interactions between Christensen and plaintiffs happened.

engaged in sexual conduct with plaintiffs.  Hence, opportunity is also not in dispute, and this motion is DENIED.

**O. MIL Nos. 15-18: exclude testimony of Dr. Kenneth Robbins**

The court will take up together four motions to exclude portions or all of Dr. Kenneth Robbins' expert testimony.   Plaintiffs explain that Dr. Robbins has been retained by the County to rebut their expert's testimony concerning plaintiffs' respective test results using the Minnesota Multiphasic Inventory ("MMPI"), as well as plaintiffs' expert opinion that plaintiffs suffered psychological trauma as a result of Christensen's actions.  Plaintiffs contend that Dr. Robbins' testimony should be excluded because:  (1) he is not qualified to testify about the MMPI; (2) even if qualified, his testimony is unreliable; (3) Robbins' testimony on their expert Raderstorf's testing is not scientific, is unreliable and would confuse the jury and/or be a waste of time; (4) he is unqualified generally because has no experience treating sexual assault victims; and (5) his testimony would misled the jury, citing Rule 403.  (Pl.'s Br. (dkt. #140) 3.)  While most of these criticisms go to weight, rather than admissibility, the court will nevertheless address each in turn.

As a preliminary matter, the district court functions as a "gatekeeper" regarding expert testimony.   Generally speaking, the court must determine whether a party's proffered expert testimony is relevant and reliable.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *see also United States v. Johnsted*, 30 F. Supp. 3d 814, 816 (W.D. Wis. 2013) (expert testimony must be "not only relevant, but reliable").  Although expert testimony is "liberally admissible under the Federal Rules of Evidence,"

*Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 723 (E.D. Wis. 2008), it must

satisfy the following three-part test:

> (1) the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702;
>
> (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert*, 509 U.S. at 592-93; and
>
> (3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702.

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Even with the threshold requirements laid out in Rule 702 and *Daubert*, however,

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction

on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Daubert*, 509 U.S. at 596.  With these general principles in mind,

the court turns to plaintiffs' specific criticisms.

*First*, plaintiffs seek to exclude Robbins' testimony on the MMPI based on his admission during deposition testimony that he is not qualified to interpret the raw data of the MMPI.  (Pls.' Br. (dkt. #140) 7 (quoting Robbins Depo. (dkt. #115) 30).)  In response, the County sets forth Robbins' qualifications, which among other things include being a board certified psychiatrist, member of the clinical faculty at the University of Wisconsin Department of Psychiatry since 1985, and current associate clinical professor psychiatry and behavioral sciences at the Medical College of Wisconsin. With this background, the County argues that Robbins is "imminently qualified to perform forensic psychiatric evaluations [and] to offer opinions regarding the process of performing and documenting a comprehensive, reliable forensic evaluation."  (County's Opp'n (dkt. #188) 4.)

By its response, of course, the County implicitly acknowledges Robbins' short-comings with respect to interpreting raw data from an MMPI test, but rather contends that "this is unnecessary for any of the opinions he offers in this case."  Instead, relating to plaintiffs' *second* criticism -- that his testimony is unreliable because he relies on Dr. Spierer's interpretation of that data -- the County argues that Federal Rule of Evidence 703 permits Robbins to base his opinions, in part, on the letter reports by Dr. Spierer. The court agrees.

Rule 703 provides generally that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Of course, Robbins is not basing his opinion merely on "facts or data," rather on interpretations of

data by Dr. Spierer.   Fortunately, the advisory committee notes to Rule 703 provide guidance:

> In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays.   Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses.   The physician makes life-and-death decisions in reliance upon them.   His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

Fed. R. Evid. 703, advisory committee notes to 1972 proposed rules (citations omitted).

Any uncertainty as to the applicability of this language in interpreting Rule 703 was eliminated by the Seventh Circuit in *Dura Automotive Systems of Indiana v. CTS Corp.* 285 F.3d 609 (7th Cir. 2002), which mainly addressed the limitations of an expert's reliance on other opinions, including the expert in that case, but went on to reject based on Rule 703's advisory committee notes the notion "that the leader of a clinical medical team must be qualified as an expert in every individual discipline encompassed by the team in order to testify to the team's conclusions." *Id.* at 614.

Applying this test here, the court has little trouble concluding that Dr. Robbins is relying on opinions of an expert in the same field, psychiatry, and provided he opines that this is the kind of information he would normally rely upon in providing medical opinions, he may rely on Dr. Spierer's interpretation of data.   This is particularly true since Dr. Robbins is expressing his own independent opinions, rather than merely relying on Dr. Spierer's interpretation of data from an MMPI test.   *Id.* at 615.   Finally, it appears

that plaintiffs have known of Dr. Robbins' reliance on Dr. Spierer's interpretation for some time. They have certainly had an opportunity to depose Dr. Spierer, and the court would even consider plaintiffs' being allowed to subpoena Dr. Spierer for appearance at trial. But failing to pursue those options, Rule 703 allows Dr. Robbins' reliance on the analysis itself, rather than impose the expense of also calling Dr. Spierer to testify at trial.

Plaintiffs are certainly free to challenge whether Robbins' reliance on Spierer's analysis is reasonable; in other words, whether Robbins had a sufficient basis to deem Spierer's analysis reliable. However, the court will not strike Robbins' testimony on this basis. Instead, such a challenge would go the weight the jury may assign Robbins' testimony. *See NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 789 (7th Cir. 2000) (expert used data obtained by plaintiff's hydrologists rather than data he generated himself, creating an issue of weight, not admissibility).

*Third*, and related to the second challenge, plaintiffs challenge Robbins' affirmative testimony that their expert, Raderstorf, was not qualified to perform the MMPI testing. While Robbins acknowledged that he, too, was unqualified to interpret data, his general knowledge and experience of performing a qualified forensic psychological evaluation also provides an adequate basis for him to opine on Raderstorf's qualifications, or lack thereof, to perform MMPI tests.

Plaintiffs further criticize Robbins on the basis that he "has never met with Plaintiffs and is not offering **any** opinion on prognosis, diagnosis, causation, treatment plan, or any other aspect of the Plaintiff's claims." (Pls.' Br. (dkt. #140) 13.) Again, plaintiffs may certainly cross-examine Robbins based on the fact that he did not examine

plaintiffs, but it is plaintiffs who offered Raderstorf's opinions of psychiatric injury consistent with their burden to prove their respective damages claims.  Robbins' role in reviewing Raderstorf's report and criticizing his conclusions is entirely appropriate given his qualifications as an expert.

*Fifth*, plaintiffs finally offer a catch-all, duplicative argument that Robbins' testimony should be excluded under Rule 403.  The court rejects this argument for the same reasons it rejected plaintiffs' other challenges under Rule 702 and *Daubert*.  Robbins' proposed expert opinion testimony appears far more relevant than unfairly prejudicial and is certainly not duplicative or a waste of time.  For all the reasons stated above, plaintiffs' motions *in limine* 15 through 18 are DENIED.

### P.  MIL No. 19: exclude Eugene Atherton's expert testimony

Polk County retained Eugene Atherton to provide an expert opinion on the standard of care provided at the Polk County Jail.  Plaintiffs challenge his ability to express any opinions on best practices for prisons in sexual assaults given his admitted lack of expertise on PREA.  In response, the County acknowledges that Atherton admitted that he was not an expert on PREA, but contends that this does not disqualify Atherton from testifying that the County was "not required to implement PREA guidelines, nor does it prevent him from testifying that the policies, procedures, and practices implemented at the Polk County Jail did not demonstrate deliberate indifferent for the well-being of plaintiffs."  (County's Opp'n (dkt. #190) 6.)  With the exception of opining on the County's obligations with respect to PREA implementation, which is for the court to decide for reasons previously explained, the court agrees with the County.

18

Plaintiffs are free to cross-examine Atherton about his experience and lack of expertise with respect to PREA, as well as furthermore offer their own expert testimony on the PREA as setting a national standard for prevention of sexual assault in the prison setting. Accordingly, this motion is DENIED.

## II. Defendant Polk County's Motions in Limine ('428 dkt. #152; '433 dkt. #153)

### A. MIL No. 1: preclude reference to PREA

In its first motion, the County seeks to exclude reference to PREA. For the reasons previously provided in the court's summary judgment opinion, the court generally rejects this motion. (1/3/17 Opinion & Order (dkt. #160) 9-12, 28.) While the court agrees with the County that there is no private right of action and compliance is not mandatory, PREA is still relevant in establishing a recognized standard for the prevention of sexual assaults in the correctional setting, or at least plaintiffs are free to provide expert testimony to that effect and so argue. As previously explained, the court is also open to adopting a jury instruction explaining what PREA is, that it is not mandatory *and* that a violation of PREA is *not* sufficient to prove liability against the County, as well as the possible relevance of PREA standards to the issues before them. Accordingly, this motion is DENIED, but the court will consider a limiting instruction as to PREA.

### B. MIL No. 2: preclude introduction of evidence regarding former jail officer Alan Jorgensen

Next, the County moves for an order precluding the introduction of evidence regarding former jail officer Alan Jorgensen. This motion is DENIED for the same reason

the court granted plaintiffs' motion *in limine* number 13, and for the reasons previously provided in the court's summary judgment opinion.  Of course, the County is free to argue, and the jury may reasonably conclude, that the Jorgensen allegations, even coupled with the 2004 allegations concerning Christensen, were not sufficient to place the County on notice of a serious risk of sexual assault by a jail correctional officer.  The County may also present evidence of its investigation into the Jorgensen allegations and argue that its response was adequate.  All of this is proper fodder for the jury.

### C.  MIL No. 3: preclude evidence, testimony and argument that Polk County failed to train inmates

The County also seeks to preclude plaintiffs from introducing any evidence or arguing that the County was deliberately indifferent to the risk of sexual assault by failing:  (1) to educate or train inmates adequately on their right to be free from sexual harassment and assault; and (2) to create an appropriate mechanism for filing complaints.  Here, too, the jury may reject this theory, but the court sees no basis for barring it.  *See Harris v. City of Marion, Indiana*, 79 F.3d 56, 58 (7th Cir. 1996) ("[T]he failure to select or implement necessary practices can constitute a 'policy or custom' for purposes of *Monell* § 1983 suit, if that failure causes a constitutional violation.").  As plaintiffs' describe in their opposition, this theory fits within their overarching deliberate indifference claim based on a failure to train, supervise and/or adopt sexual assault prevention policies.  Accordingly, this motion is DENIED.

### D. MIL No. 4: preclude evidence, testimony or argument that Polk County violated 42 U.S.C. § 1986

The County seeks an order to bar plaintiffs from asserting a claim under 42 U.S.C. § 1986, a negligence action for failing to prevent a conspiracy to violate an individual's constitutional rights under 42 U.S.C. § 1985(3). The County contends that there is no cause of action under § 1986 because plaintiffs' do not have a valid claim under § 1985. While this motion would have been better raised in the County's motion for summary judgment, it is certainly not waived. Moreover, plaintiffs do not oppose it. Accordingly, it is GRANTED as unopposed.

### E. MIL No. 5: preclude evidence relating to the fact that Polk County may be covered by insurance

Finally, the County seeks an order barring plaintiffs from presenting evidence that the County is insured by Wisconsin County Mutual Insurance Company consistent with Federal Rule of Evidence 411. This motion is GRANTED for the same reason the court denied plaintiffs' motion *in limine* number 4, absent the County opening the door.


ORDER

IT IS ORDERED that:

1) Plaintiffs' motions *in limine* ('428 dkt. #137; '433 dkt. #138) are GRANTED IN PART, DENIED IN PART AND RESERVED IN PART, as described above in the opinion.

2) Defendant Polk County's motions *in limine* ('428 dkt. #152; '433 dkt. #153) are GRANTED IN PART AND DENIED IN PART, as described above in the opinion.

3) Polk County's motion to admit evidence pursuant to Federal Rule of Evidence 412(c) ('428 dkt. #195; '433 dkt. #196) is RESERVED.

Entered this 20th day of January, 2017.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge