UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

J.K.J.,                                      Case No. 15-CV-428-WMC

        Plaintiff,

  vs.

POLK COUNTY and
DARRYL L. CHRISTENSEN,

        Defendants.

  and

M.J.J.,                                      Case No. 15-CV-433-WMC

        Plaintiff,

  vs.

POLK COUNTY and
DARRYL L. CHRISTENSEN,           Madison, Wisconsin
                                 February 1, 2017
        Defendants.     12:00 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF THIRD DAY OF JURY TRIAL
AFTERNOON SESSION - **INSTRUCTION CONFERENCE**
HELD BEFORE CHIEF JUDGE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiffs:
    Eckberg Lammers, P.C.
    BY:  THOMAS J. WEIDNER
         LIDA M. BANNINK
    1809 Northwestern Avenue
    Stillwater, Minnesota  55082

CHERYL A. SEEMAN, RMR, CRR
Federal Reporter - U.S District Court
120 North Henry Street, Room 410
Madison, Wisconsin  53703
1-608-261-5708

```
 1  APPEARANCES:   (Continued)

 2  For Defendant Polk County:
            Husch Blackwell, LLP
 3          BY:   CHARLES H. BOHL
            555 East Wells Street, Suite 1900
 4          Milwaukee, Wisconsin   53202

 5          Husch Blackwell, LLP
            BY:   PAUL D. CRANLEY
 6          33 East Main Street, Suite 300
            P.O. Box 1379
 7          Madison, Wisconsin   53701-1379

 8          Husch Blackwell, LLP
            BY:   KURT SIMATIC
 9          20800 Swenson Drive, Suite 300
            Waukesha, Wisconsin   53186
10
    For Defendant Darryl L. Christensen:
11          Crivello Carlson, S.C.
            BY:   SARA C. MILLS
12          710 North Plankinton Avenue, Suite 500
            Milwaukee, Wisconsin   53203
13
    Also Present:   Peter Johnson, Polk County Sheriff
14

15                              ***

16

17       (Called to order at 12 p.m.)

18          THE COURT:   I am going to hear from the parties

19  one additional time as to instructions, understanding that

20  the County has not had an opportunity to review or, at

21  least by misplacement of the instructions, lost an

22  opportunity to comment on the final version.  I will add

23  two comments before I hear from each party, beginning with

24  the County.

25       The first is that I am struggling with whether there
```

1  is really any reasonable argument about harm with respect
2  to the claim against Mr. Christensen. It seems to me that
3  his liability turns on the straightforward proposition as
4  to his perception of the potential harm and whether he was
5  deliberately indifferent to plaintiffs' health and safety.
6  I should say "a substantial risk of serious harm." But I
7  don't know that there's any way to argue that these
8  plaintiffs were not harmed by his conduct. And if I
9  remove harm as an element, then that also obviously
10 removes the two paragraphs on harm.
11     I will hear argument from Ms. Mills on that subject.
12 But I don't know how a reasonable jury could conclude that
13 his conduct was not harmful, whether some aspect was
14 arguably not unwelcome within the jail. Even then I don't
15 see an argument that there wasn't harm done to these
16 plaintiffs. But I will hear from Ms. Mills on that
17 subject.
18     As for the County, in reviewing the motion for
19 directed verdict it occurs to me that there may be one
20 change that would be appropriate, notwithstanding what I
21 think is a distinction that is not supported by the law
22 generally as to *Monell* liability as opposed to liability
23 through a policy-maker's direct acts or lack of acts if
24 they had actual knowledge of sexual misconduct by
25 Mr. Christensen, which is not in this case and there's

1  been no evidence of that.
2      But it occurs to me that on page 5 that, in subclause
3  2, perhaps it would be correct under the law to make clear
4  "the plaintiffs' obligation is to prove both that the
5  policy-maker official or officials" -- and I guess it
6  would be here *officials*, so we could eliminate the word
7  *official* -- "were deliberately indifferent to the need for
8  more or different training to avoid likely sexual assault
9  of an inmate by an officer," and then I had written "or
10 that this was obvious to the policy-makers."
11     But the point is a fair one by the County that I
12 think it should be "and that this was obvious to the
13 policy-making officials."  I'm not sure why we capitalize
14 *policy* in that second one, so I would lower case that, but
15 I would change the "or" to "and."  Those two comments are
16 those the Court may need to make.  Aside from the
17 objections that you've preserved, Mr. Bohl or Mr. Cranley,
18 I'd be happy to hear any further objections you have.
19         MR. BOHL:  I'm not entirely sure what I've
20 preserved, so I'll take 20 seconds and say it again.  With
21 regard to numbered paragraph 2 on page 5, I believe you
22 should delete everything after what is now an "and" --
23 "and that that was obvious to policy-making officials."
24 If you don't delete it, I think you need to say "and that
25 it was actually known to policy-making officials."

1          THE COURT:  And I just don't know how you could
2  say that.  The language that you quoted to me in your
3  brief makes clear that it is notice or constructive
4  notice.  Constructive notice is not actual knowledge.  If
5  there was actual knowledge -- the standard is *obvious* and
6  that is the language that I believe appears in the exact
7  language you quoted back to the Court on page 5 of your
8  own motion quoting the Seventh Circuit: the need for
9  training, and I'm paraphrasing, was "plainly obvious" --
10 and that's a quote -- "plainly obvious" to the city
11 policy-makers.  There's no statement about actual
12 knowledge; it's just "plainly obvious."  It's not just a
13 subjective test.  There is constructive notice, which is
14 an objective test.
15         MR. BOHL:  I'm not waiving my objection, but will
16 Your Honor put the word *plainly* in front of *obvious*, "and
17 that this was plainly obvious to policy-making officials"?
18         THE COURT:  I'll consider that.  Anything more
19 from the County?
20         MR. BOHL:  Yes, one last objection.  The third
21 line of paragraph 5, the words "must have known."  I
22 submitted a brief on that.  There's no point in us
23 rearguing it.
24         THE COURT:  I'm sorry.  I've lost you.  On what
25 page are you?

1    MR. BOHL: Page 5, the third line, the end of the
2 third line there is a phrase "must have known." I object
3 to the "must have known." I believe it should be "there
4 was actual knowledge."
5    THE COURT: And I disagree for the same reason.
6 Anything more for the County?
7    MR. BOHL: No, just the word *plainly*, Your Honor.
8    THE COURT: I understand that's your request and
9 I said I would consider it. I'll hear from, since I
10 raised the issue as to harm, I'll hear from Ms. Mills
11 next.
12    MS. MILLS: Your Honor, I think in these kind of
13 cases in general it's an extremely close call. There are,
14 for most cases, when deliberate indifference is found,
15 that that third issue is an extremely close call and
16 oftentimes a very likely tipping in the favor of harm
17 being found. That said, I think it still is a close call
18 and I think it's one for the jury.
19    THE COURT: Well, here's what I'm going to do as
20 a compromise: I'm going to eliminate this element in
21 liability. But if liability is found, I will make part of
22 the damages phase *harm* and *damage* and give this
23 instruction as to thinking about harm and maybe give that
24 as a separate element. Before they could award damages,
25 they have to find harm. But I think it's a distraction to

1  this jury.  I think it is -- I don't know how you could --
2  what would be your argument that there was no harm done by
3  virtue of your client's conduct?
4         MS. MILLS:  Well, the argument would be that,
5  well, it just goes to consent and whether this was
6  something that ultimately caused the harm being alleged.
7         THE COURT:  And I just -- I can't see a
8  reasonable jury concluding that your client's conduct --
9  which, after all, was criminal in nature and was a gross
10 abuse of his office -- did not do at least some harm to
11 these plaintiffs.  But if you insist, you can argue that
12 element as part of the argument on damages.  And so I will
13 give you that opportunity, but it won't be during the
14 liability phase of the trial.  All right.  Anything else
15 for the defendant, Mr. Christensen?
16        MS. MILLS:  No, Your Honor.
17        THE COURT:  Anything more for the plaintiffs?
18        MS. BANNINK:  I have a few things.  As a
19 clarification on the ruling that you just made, would that
20 take out those two paragraphs that you had proposed with
21 regard to --
22        THE COURT:  As I said, I would remove the third
23 element as to Mr. Christensen and I would eliminate those
24 two paragraphs at the top of 4, with the understanding
25 that the defendants will be allowed to argue a lack of

1  harm as part of the damages phase.  So that the jury will
2  first need to decide whether there was harm, and then
3  whether there was damages, notwithstanding the Court's
4  view that no reasonable jury could conclude no harm was
5  done to these plaintiffs.  Anything more for the
6  plaintiffs?
7           MS. BANNINK:  A few things.  First, I think that
8  on page 5, when you took out "official or officials" --
9           THE COURT:  Yes.
10          MS. BANNINK:  -- I think that both of them should
11 stay in there, given that the paragraph --
12          THE COURT:  I don't disagree.  As I think about
13 it, I suppose they could find one, but --
14          MS. BANNINK:  Just Nargis.
15          THE COURT:  -- but not both.  Understood.  Yeah.
16          MS. BANNINK:  And then as to the "or" in
17 paragraph 2 --
18          THE COURT:  Yes.
19          MS. BANNINK:  -- that is consistent with Pattern
20 Jury Instruction 7.21.
21          THE COURT:  And I'm aware of that.  My real
22 concern is whether they're right, that instruction is
23 consistent with Seventh Circuit case law, and I'm not sure
24 it is correct.
25          MS. BANNINK:  And I haven't had the chance to

1  research that.  I can do that over the lunch hour.
2          THE COURT:  That's fine and I would consider your
3  argument on that.  I will try to be back in the courtroom
4  at 1:30.  If you have some authority to confirm that,
5  you're also welcome to make any argument you wish during
6  that time.  You're also welcome to make any argument at
7  that time as to the addition of the "plainly obvious."
8  That was the suggestion made by the County.  I have not
9  ruled on its inclusion.
10         MS. BANNINK:  Which was also in paragraph --
11         THE COURT:  The same paragraph.
12         MS. BANNINK:  -- 2.
13         THE COURT:  After where I was proposing to change
14 to "and," it would read, "and that this was plainly
15 obvious to policy-making official or officials."
16         MR. WEIDNER:  Your Honor, with regard to that, it
17 seems redundant.  What is obvious is plain and it seems
18 completely unnecessary.
19         THE COURT:  I am not disagreeing.  And since it's
20 not in the pattern instruction, I might default against
21 including it.  But I'll hear from both sides when we
22 reconvene and before the jury comes out.
23     Once I finalize these instructions, they will be read
24 to the jury before closing arguments.  They will be
25 displayed on the overhead so that the jury can follow

1  along, because I find that's helpful for their absorbing
2  the instructions before you make your arguments.
3        And then we will proceed with closing arguments for
4  both sides.  Do you have a rough idea of the length of
5  your closing?
6            MR. WEIDNER:  Roughly -- well, consider a half
7  hour.  That's as rough as I can get.
8            THE COURT:  That's fine.  And something similar
9  for the County?
10           MR. BOHL:  Or less.
11           THE COURT:  All right.
12           MS. MILLS:  Less.
13           THE COURT:  All right.  Very good.  Then we'll
14 certainly be giving the final deliberation instructions to
15 the jury and proceeding to deliberations on liability this
16 afternoon.  And at that time we will take up the damages
17 instruction, which I will revise over the lunch hour to
18 include to moving this harm issue into that instruction.
19 And we'll take that up at the break as well as any other
20 issues that may remain for purposes of your damages case.
21 Yes.
22           MS. BANNINK:  One additional point of
23 clarification as to their preparation for closing
24 instructions: with the removal of that element 3 as well
25 as the *consent*, will defendant Christensen's counsel be

1  able to argue -- continue to argue consent?
2          THE COURT:  I don't know what its relevance would
3  be, so no.  The relevant arguments for this portion of the
4  case will be as to her client's -- as to "plaintiffs
5  having been incarcerated under conditions that posed a
6  substantial risk of serious harm to her health or safety,"
7  which will dovetail to the County and as to
8  Mr. Christensen being deliberately indifferent to
9  plaintiffs' health or safety.  Anything more for the
10 plaintiffs then?
11         MS. BANNINK:  Nothing else.  Thank you.
12         THE COURT:  Anything more for the County
13 defendant?
14         MR. CRANLEY:  We do have our Rule 50 motion, Your
15 Honor, renewing our directed verdict motion.  And, also,
16 the Court previously invited us to remind you of our
17 governmental immunity under Section 893.80, which we could
18 also raise at this time or after lunch, if you want to
19 hear it, or by briefing it.
20         THE COURT:  It probably makes sense to brief it
21 at this stage because I'm going to let the jury decide it.
22 But the immunity that you're talking about is the cap on
23 damages or something more that you think applies here?
24         MR. CRANLEY:  Discretionary immunity.
25         THE COURT:  For me to exercise?

1           MR. CRANLEY:  For the -- that makes the
2  government immune from liability rising out of its
3  discretionary conduct.
4           THE COURT:  Yeah.  I think it would make sense to
5  brief that at this point.  I'm going to let the jury
6  decide this if you want to pursue that.
7           MR. CRANLEY:  At this point I want to just make
8  sure it's preserved.
9           THE COURT:  Understood. All right. Anything
10 more then for Mr. Christensen at this time?
11          MS. MILLS:  No, Your Honor.
12          THE COURT:  All right.  I will see you back in
13 this courtroom at 1:30.  I am moving to another courtroom
14 for sentencing, so you don't need to move anything.
15          MR. WEIDNER:  Just because I need to make it
16 clear, there won't be an argument for consent in the
17 liability phase?
18          THE COURT:  That's correct.
19          MR. WEIDNER:  Thank you, Your Honor.
20          THE COURT:  I guess, since everyone keeps
21 bringing this up, I want to make clear why I'm ruling that
22 way.  I do not think a reasonable jury could find that.
23 But to preserve this for the possibility of any appeal, I
24 am going to allow the defendants to make that argument as
25 part of the damages phase with the understanding that were

1  they to prevail on no harm, I might well direct a verdict
2  as to liability, but then defendants could make an
3  argument to the Seventh Circuit that I got that wrong.
4  But I don't want it to -- I don't want that issue to
5  infect the liability determinations by the jury otherwise,
6  which is why I've separated it out.
7      And with that, we will take our bleak and reconvene
8  at 1:30.  Thank you.
9      (Lunch recess at 12:15 p.m.)
10                          ***

1    I, CHERYL A. SEEMAN, Certified Realtime and Merit
2  Reporter, in and for the State of Wisconsin, certify that
3  the foregoing is a true and accurate record of the
4  proceedings held on the 1st day of February, 2017, before
5  the Honorable William M. Conley, Chief Judge of the
6  Western District of Wisconsin, in my presence and reduced
7  to writing in accordance with my stenographic notes made
8  at said time and place.
9  Dated this 8th day of February, 2017.

15                              /s/
16                         Cheryl A. Seeman, RMR, CRR
                           Federal Court Reporter

23  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means unless
24  under the direct control and/or direction of the
    certifying reporter.
25