```
                  UNITED STATES DISTRICT COURT

             FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

J.K.J.,                              Case No. 15-CV-428-WMC

           Plaintiff,

     vs.

POLK COUNTY and
DARRYL L. CHRISTENSEN,

           Defendants.

     and

M.J.J.,                              Case No. 15-CV-433-WMC

           Plaintiff,

     vs.

POLK COUNTY and
DARRYL L. CHRISTENSEN,               Madison, Wisconsin
                                     February 2, 2017
           Defendants.               5:03 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

   STENOGRAPHIC TRANSCRIPT OF FOURTH DAY OF JURY TRIAL
             AFTERNOON SESSION - **EXCERPT**
       HELD BEFORE CHIEF JUDGE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiffs:
      Eckberg Lammers, P.C.
      BY:  THOMAS J. WEIDNER
           LIDA M. BANNINK
      1809 Northwestern Avenue
      Stillwater, Minnesota  55082

            CHERYL A. SEEMAN, RMR, CRR
        Federal Reporter - U.S District Court
          120 North Henry Street, Room 410
            Madison, Wisconsin  53703
                 1-608-261-5708
```

```
 1  APPEARANCES:   (Continued)

 2  For Defendant Polk County:
            Husch Blackwell, LLP
 3          BY:  CHARLES H. BOHL
            555 East Wells Street, Suite 1900
 4          Milwaukee, Wisconsin  53202

 5          Husch Blackwell, LLP
            BY:  PAUL D. CRANLEY
 6          33 East Main Street, Suite 300
            P.O. Box 1379
 7          Madison, Wisconsin  53701-1379

 8          Husch Blackwell, LLP
            BY:  KURT SIMATIC
 9          20800 Swenson Drive, Suite 300
            Waukesha, Wisconsin  53186
10
    For Defendant Darryl L. Christensen:
11          Crivello Carlson, S.C.
            BY:  SARA C. MILLS
12          710 North Plankinton Avenue, Suite 500
            Milwaukee, Wisconsin  53203
13
    Also Present:  Peter Johnson, Polk County Sheriff
14

15                              ***

16

17       (Called to order at 5:03 p.m.)

18           THE COURT:  I would be remiss not to make an

19  observation, which is that I've never understood why this

20  case went to trial.  I understand that the County thinks

21  it has a legitimate legal issue as to its responsibility

22  under the law.  But on a moral basis, the position of the

23  County is bankrupt.

24       These individuals were harmed, seriously harmed, in

25  the County's care.  And I don't know why they haven't had,
```

1  paid for by the County, the treatment that they needed.
2  Maybe you've offered that, I don't want to know, but this
3  just reinforces all of that.  I am stunned that this is
4  where we are.
5      I want to emphasize for the plaintiffs, and I say
6  this for their counsel as well, I don't know what therapy
7  has been undertaken.  But to put the plaintiffs through
8  this is mainly on the defendants, that it is -- having
9  seen the other side of this in criminal cases, it has the
10 potential to be a positive experience and you should be
11 very proud of yourselves for standing up and having your
12 voices heard.  You should be very proud.  And it can be a
13 positive step towards recovery, it absolutely can be.
14     But whatever happens in the rest of this case -- and
15 we've got half the jury in tears in empathy, so clearly
16 there's going to be a substantial award for pain and
17 suffering.  I just would be shocked if that didn't happen.
18 But I guess you want to find out, so you will.
19     But whatever happens in the case, after the
20 catharsis -- and I hope it's a positive one, I hope it
21 let's out some of the emotion -- you both have addiction
22 issues that's not your fault.  Some people are diabetics.
23 We have an epidemic of addiction.  We know that people who
24 use it early in life are more susceptible, we know that
25 people with mental health issues are more susceptible, and

1  we know that people with their own self-image issues --
2  and we all have some of those; some are worse than
3  others -- are more susceptible.  You sort of hit all of
4  those things and then been badly abused by someone who
5  violated a public trust the way a priest or a minister
6  violates a public trust, the way a baseball coach violates
7  a public trust.  You were vulnerable individuals on every
8  level.
9       This was not your fault.  This was in no way your
10 fault.  And I just -- I guess I'm saying to plaintiffs:
11 First, they should be in counseling.  They should be going
12 to counseling after today to have a discussion about
13 what's happened.  You need to talk.  You need to be around
14 the right people.  You need to be processing this in a way
15 that can make this a healthy experience, because there's
16 only two ways to go with this situation: you either fall
17 back -- and you know how far back you can fall -- or you
18 start to process and start to take the steps that you can
19 take.  People have come back from much worse, but it's a
20 challenge.
21      And I'm very concerned that this has not been
22 ultimately good for the plaintiffs, even though -- even
23 though it was probably necessary to drive home a message.
24 And apparently the -- well, I understand the County's
25 position as a matter of law.  But as a matter of outcomes

1  here, I don't understand it, and so that's my second
2  point.
3      I don't know why it hasn't found a resolution.  I
4  can't imagine WCMIC really wants to go down this road to a
5  very large verdict and then appeals to the Seventh
6  Circuit, which will only increase exposure for all
7  counties, because this is like the *Penn State* case.  This
8  is one of those: the more you hear, the more you know this
9  was wrong.  It's not like *Penn State* in that there were
10 specific instances of people knowing, but not many people
11 knew at Penn State either.  And this will become -- I
12 would be very surprised, at least for the state of
13 Wisconsin, that this doesn't become a rallying cry for
14 more legislation.
15     And in fairness to the County, part of that cry
16 should be funding.  There should have been cameras in that
17 area, maximum or medium; or at least there should have
18 been some way for random staffing, a sergeant or another
19 officer, to periodically, without prediction, have access
20 to the bubble rather than the practice you adopted.  But
21 all of that requires money, so I'm not discounting that.
22     I'm just saying, this is a royal mess.  And I did not
23 step in, but I'm very concerned that the plaintiffs
24 realize this is not your fault.  And what you did is
25 heroic, whether the County recognizes it or not, and it

1  can have a positive impact.  And I want you to build on
2  that message regardless of what happens in this case going
3  forward.
4      I'll hear if there's anything more for the plaintiffs
5  tonight.
6          MR. WEIDNER:  No, Your Honor.
7          THE COURT:  Anything more for the County?
8          MR. BOHL:  No, Your Honor.
9          THE COURT:  Anything more for Mr. Christensen?
10         MS. MILLS:  No, Your Honor.
11         THE COURT:  I have asked the court mediator --
12 who is our part-time magistrate judge, our full-time
13 clerk, and among the better mediators in the state of
14 Wisconsin -- to come in the back of the courtroom.  I
15 suspect there's no appetite to have any further
16 discussions.  I can't imagine why.  You know, there are
17 all kinds of ways you could address this -- with agreeing
18 to pay for any counseling that's required, agreeing to pay
19 a specific sum -- putting an end to this -- what I think
20 will become an increasing nightmare for Polk County,
21 because it's going to get more press.
22     When this verdict gets entered, it's all going to be
23 replayed again.  And after that you're going to spend more
24 money and WCMIC is going to create a lightning rod for
25 other counties.  I just don't get it, but that's me.  If

1 you want to talk with Mr. Christensen -- I'm not going to
2 get involved in settlement discussions -- he's here to
3 speak with you.  If you have no interest in that, I will
4 see you tomorrow morning at 8:30.  We are adjourned.
5       MR. WEIDNER:  Thank you, Your Honor.
6   (Adjourned at 5:12 p.m.)
7             ***
8     I, CHERYL A. SEEMAN, Certified Realtime and Merit
9 Reporter, in and for the State of Wisconsin, certify that
10 the foregoing is a true and accurate record of the
11 proceedings held on the 2nd day of February, 2017, before
12 the Honorable William M. Conley, Chief Judge of the
13 Western District of Wisconsin, in my presence and reduced
14 to writing in accordance with my stenographic notes made
15 at said time and place.
16 Dated this 8th day of February, 2017.
17
18                   /s/
19                 Cheryl A. Seeman, RMR, CRR
                Federal Court Reporter
20
21
22
23 The foregoing certification of this transcript does not
  apply to any reproduction of the same by any means unless
24 under the direct control and/or direction of the
  certifying reporter.
25