J.K.J.,

                    Plaintiff,                         OPINION AND ORDER

          v.                                          15-cv-428-wmc

POLK COUNTY and DARRYL L.
CHRISTENSEN,

                    Defendants.

and

M.J.J.,

                    Plaintiff,

          v.
                                                      15-cv-433-wmc

POLK COUNTY and DARRYL L.
CHRISTENSEN,

                    Defendants.

---

These two cases proceeded to a consolidated jury trial on plaintiffs J.K.J. and M.J.J.'s respective claims that a former Polk County Jailer, defendant Darryl L. Christensen, sexually assaulted them while they were incarcerated in the Polk County Jail and that defendant Polk County acted with deliberate indifference to the serious risk of sexual assault of inmates by jail employees, both in violation of the Eighth Amendment of the United States Constitution. Plaintiffs also asserted state law negligence claims against the County. The jury found in plaintiffs' favor on all claims ('428 dkt. #246; '433 dkt. #247) and awarded each plaintiff $2,000,000 in compensatory damages against both defendants,

as well as $3,750,000 in punitive damages against Christensen ('428 dkt. #250; '433 dkt. #251).

Before the court are a number of post-trial motions. The County seeks judgment as a matter of law under Federal Rule of Civil Procedure 50(b) with respect to plaintiffs' state law negligence claims on the basis of immunity under Wis. Stat. § 893.80. ('428 dkt. #245; '433 dkt. #246.) In addition, the County and Christensen each filed motions for judgment as a matter of law or, in the alternative, for a new trial under Rule 59 with respect to the jury's findings of liability on plaintiffs' Eighth Amendment claims. (County's Mot. ('428 dkt. #268; '433 dkt. #269); Christensen's Mot. ('428 dkt. #272; '433 dkt. #273).) The court agrees with the County that plaintiffs' negligence claims turn on discretionary duties, for which the County is immune. Since the jury also found the County violated plaintiffs' constitutional rights, entry of judgment against plaintiffs on their negligence claims is largely a Pyrrhic victory. Except for those negligence claims, however, both defendants' motions will be denied in their entirety for the reasons that follow. Finally, at the direction of the court, plaintiffs' counsel submitted their request for attorneys' fees and costs under 42 U.S.C. § 1988, and defendants offered no opposition to the requested amount. Finding plaintiffs' request reasonable and well-documented, the court will award the fees and costs set forth below.

## OPINION

This court may grant judgment to a non-prevailing party as a matter of law under Fed. R. Civ. P. 50(a) where there is no "legally sufficient evidentiary basis" to uphold the

jury's verdict on that issue. In reviewing a Rule 50 motion, the court will "examine the evidence presented, combined with any reasonably drawn inferences, and determine whether the combination sufficiently supports the verdict when viewed in the light most favorable to the non-moving party" -- the plaintiffs. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). Alternatively, although the difference is a nuanced one, the court may grant defendants motion for a new trial under Fed. R. Civ. P. 59(a) "only if the jury's verdict is against the manifest weight of the evidence." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006) (citing *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003)). To meet this standard, defendants must demonstrate that no rational jury could have rendered a verdict against them. *See King*, 447 F.3d at 534 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004)). In making this evaluation, the court must again view the evidence in a light most favorable to plaintiffs, leaving issues of credibility and weight of evidence to the jury. *King,* 447 F.3d at 534. "The court must sustain the verdict where a 'reasonable basis' exists in the record to support the outcome." *Id.* (quoting *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)).

## I. Defendant Polk County's Motion for Judgment as a Matter of Law on State Law Negligence Claim

Defendant Polk County contends that it is entitled to immunity on plaintiffs' state law claims of negligent training and supervision. Specifically, the County argues that the conduct underlying these claims was discretionary in nature, falling within the immunity provision of Wisconsin Statute § 893.80(4). That provision provides in pertinent part:

(4) No suit may be brought against any . . . governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such . . . subdivision or agency . . . or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Wis. Stat. § 893.80(4).

Courts have generally construed quasi-judicial and quasi-legislative functions as "activities that involve the exercise of 'discretion.'" *Scot v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶ 16, 262 Wis. 2d 127, 663 N.W.2d 715; *see also Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 21, 253 Wis. 2d 323, 646 N.W. 2d 314 (holding generally that Wis. Stat. § 893.80(4) provides immunity for "any act that involves the exercise of discretion and judgment"). In contrast to an act that involves discretion and judgment, a ministerial duty is a duty that is:

absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

*Lister v. Bd. of Regents of Univ. Wis. Sys.*, 72 Wis. 2d 282, 301, 240 N.W.2d 610, 622 (1976).

In opposition to defendant's motion, plaintiffs contend that the County is not entitled to immunity because the "known and compelling danger exception applies." (Pl.'s Opp'n (dkt. #267) 2 (citing *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977)).)[1]

---

[1] Unless otherwise noted, the docket entries are to Case No. 15-cv-428.

In *Cords*, the plaintiffs were injured when they fell into a deep gorge while hiking at night on a hazardous portion of a trail in Parfrey's Glen, a state-owned nature preserve. After reviewing the facts involved in plaintiffs' fall and injuries, the court concluded "that the duty to either place warning signs or advise superiors of the conditions is, on the facts here, a duty so clear and so absolute that it falls within the definition of a ministerial duty." *Id.* at 542, 249 N.W.2d at 680.

Critically, in *Cords*, not only was the danger known and clear, but the required response to that danger was equally certain. As the Wisconsin Supreme Court explained in a case cited by plaintiffs, "[t]o qualify as ministerial, the time, mode, and occasion for *performance* of the duty must be so certain that discretion is essentially eliminated." *Lodl*, 2002 WI 71, at ¶ 40 (emphasis added) (reversing application of known and compelling danger exception after finding decision to control traffic manually was discretionary); *see also Voss ex rel. Harrison v. Elkhorn Area Sch. Dist.*, 2006 WI App 234, ¶ 20, 297 Wis. 2d 389, 724 N.W.2d 420 (applying known and compelling danger exception where "only option was to put an end to" student exercise of wearing "fatal vision goggles"); *Pries v. McMillon*, 2010 WI 63, ¶ 34, 326 Wis. 2d 37 784 N.W.2d 648 (applying ministerial duty exception to Wis. Stat. § 893.80(4) where the "language in the written instructions . . . has the requisite specificity and definition of the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion").

In finding a constitutional violation by the County here, the jury necessarily determined that "one or more of [the County's] policy-making officials knew of a substantial risk of harm, and that the official or officials consciously disregarded this risk

by failing to take reasonable measures to deal with it." (Closing Instr. (dkt. #243) 4.) However, the appropriate response to that danger still required the exercise of discretion, thus bringing it within the scope of § 893.80(4) and outside of the boundaries of the known and compelling danger exception. In their opposition brief, plaintiffs contend that the need for different and additional training was clear, but the concept of "different and additional" training, unlike the requirement to train at all -- or to erect warning signs or stop a discrete, dangerous activity or follow explicit instructions -- necessarily required the exercise of discretion. For this reason, the court will grant the County's motion for judgment as a matter of law, finding the County entitled to immunity for plaintiffs' negligence claims under Wis. Stat. § 893.80(4).[2]

## II. Defendants' Motions for Judgment as a Matter of Law on Eighth Amendment Claims

Defendants filed separate motions for judgment as a matter of law or for a new trial on plaintiffs' Eighth Amendment claims, although their motions raise overlapping arguments. As such, the court will address the motions together, addressing each argument separately.

### A. County's Deliberate Indifference

In challenging the jury's finding of deliberate indifference, the County *first* argues that plaintiffs failed to show that it had the requisite knowledge. Specifically, the County

---

[2] Of course, as evidence mounts of the substantial risks of these assaults in jail and prison settings, *and* a consensus builds as to the *minimum* training and supervision necessary to manage those risks, government entities may eventually lose this immunity. Moreover, as noted earlier, the practical effect of this holding is immaterial in light of the jury's award of damages to plaintiffs for the same injuries based on the County's violation of their constitutional rights.

argues that plaintiffs failed to offer proof of a pattern of prior constitutional violations. As plaintiffs point out in response, the court *agreed* with defendants that plaintiffs failed to put forth sufficient evidence to support finding a pattern of constitutional violations known to policy-makers, and as a result, the court both precluded plaintiffs from so arguing and excluded this basis of liability from the jury instructions, leaving plaintiffs to argue only that the "risk of the inadequacy of the training, supervision, and/or adoption of policies [was] plainly obvious." (Trial Tr. (dkt. #259) 5-9 (final jury instruction conference, explaining change, removing pattern language); Closing Instr. (dkt. #243) 4-5 (describing knowledge of risk component of deliberate indifference claim).)

*Second*, in a challenge more rooted in the actual record, the County argues that plaintiffs failed to prove that the substantial risk of harm and the inadequacy of the training, supervision and/or adoption of policies were "plainly obvious." The jury was instructed that to find deliberate indifference, plaintiffs must prove that a substantial risk of harm from inadequate training, supervisor or policies was plainly obvious to one or more of the County's policy-making officials. (Closing Instr. (dkt. #243) 4-5.) Plaintiffs submitted evidence consistent with that burden at summary judgment and again at trial by showing that Jail Captain Scott Nargis was aware of sexual comments by correctional officers to inmates and other female employees as a result of investigating Christensen as far back as 2002 and investigating another former correctional officer Art Jorgensen in 2012. Plaintiffs argued, and the jury apparently found, this knowledge placed Nargis on notice as to the need for further or different training, as well as for implementation of PREA-like training, notice and supervision policies. Moreover, Nargis generally

7

acknowledged his awareness of "tier talk," from which a reasonable jury could conclude that the jail officials turned a blind eye, and perhaps even fostered, a culture where inappropriate sexual comments were accepted as the norm. Finally, the jury heard testimony and received evidence about the Jail's February 2014 PREA training -- the only PREA specific training offered to jail employees -- from which the jury reasonably could conclude that the administration downplayed the importance of preventing sexual assault and harassment within the jail. Although not overwhelming evidence, this circumstantial evidence forms a legally sufficient evidentiary basis for the jury's finding it was more probable than not that Nargis and others within the County Jail administration had knowledge of the substantial risks of sexual assaults of jailers on inmates, but acted with deliberate indifference to the need for better training, supervision and policies.

*Third*, the County challenges the jury's finding that its deliberate indifference *caused* plaintiffs' injuries. Here, too, the court finds that there was a legally sufficient evidence basis to support the jury's finding it more probable than not that if the County had provided adequate notice and training to correctional officers *and* inmates on what constitutes sexual harassment and abuse, and how to report it, plaintiffs may not have been sexually assaulted and harassed, or at minimum that adequate supervision policies would have prevented Christensen from feeling emboldened enough to repeatedly make lewd comments over the jail intercom about female inmate's attire, much less leave his post in the jail's bubble to assault inmates sexually. Furthermore, the jury reasonably could have concluded that increased or different supervision may have thwarted Christensen's rampant acts of sexual abuse. Indeed, as described by the victims, it seems quite likely that

the sheer audacity of Christensen's repeated acts, done with actual power over their daily lives and with apparent impunity, would have overcome any hope that filing a complaint would have produced a positive outcome.

Fourth and finally, the County complains that the jury verdict "turns *Monell* into a standard of *respondeat superior* liability." (County's Opening Br. (dkt. #269) 23.) To the contrary, the jury instructions on plaintiffs' claims of liability against the County were entirely consistent with the standard under *Monell*. Because the court finds a legally sufficient evidentiary basis for the jury's findings as to each of the deliberate indifference and *Monell* elements, the court rejects any suggestion that the jurors applied a less rigorous standard in rendering their verdict.

### B. Christensen's Deliberate Indifference

Defendant Christensen also challenges the jury's finding of liability on plaintiffs' deliberate indifference claims asserted against him based on a lack of evidence to support the subjective prong of that claim. Specifically, Christensen contends that there was insufficient evidence from which a reasonable jury could find that he was subjectively aware of the substantial risk of harm to plaintiffs. Consistent with the law, the jury was instructed that to find that Christensen was "deliberately indifferent," they must find that "he actually knew of a substantial risk of harm *and* that he consciously disregarded this risk through his actions." (Closing Instr. (dkt. #243) 3.) *See also Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) ("The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard.").

9

In support of his motion, Christensen contends that the following trial testimony falls short of admitting this element of the claim:

> Q. You knew, sir, didn't you, that you were putting both [plaintiffs] at risk by doing this, didn't you?
>
> A. Yes, sir.
>
> Q. And the risk of harm, correct?
>
> A. I don't -- what are you referring to as harm?
>
> Q. That it was not positive for them, correct?
>
> A. Correct.

(Trial Tr. (dkt. #258) 51-52.)

The problems with this argument are myriad. As an initial matter, a reasonable jury would have *construed* these concessions as admissions, particularly after judging Christensen's credibility on the stand. Even more important, plaintiffs were not obligated to elicit an unqualified admission by Christensen for the jury to find the subjective element satisfied. Indeed, such an admission -- even the concession quoted above -- is sadly rare. Regardless, along with conceding that his actions were "not positive" for plaintiffs, he further acknowledged that his sexual contacts with inmates were for his own personal gratification and while having unsupervised power over the victims as their jailer. (*Id.* at 63; *see also* Trial Tr. (dkt. #262) 40-43.) Most importantly, plaintiffs *themselves* testified that they did not consent or welcome Christensen's sexual contact, thus providing additional support for a finding that Christensen knew of the harm his actions could cause. (Trial Tr. (dkt. #262) 75-78, 139-48.) As courts have explained, "[w]here no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged

conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). Here, the court finds much more was put into evidence to support the jury's finding that Christensen actually knew of a substantial risk of harm posed by his actions.[3]

### C. Treatment of Injury Requirement

Both defendants challenge the court's decision to find as a matter of law that Christensen's sexual assaults caused plaintiffs' injury. To begin, this challenge disregards the fact that all parties largely ignored the issue of injury, and the related question of consent, in their respective pretrial filings despite the court's raising its concern both before and during trial. In particular, during the final conference on the instructions in the first phase of trial, the court pressed this very issue with counsel for Christensen, asking "whether there is really any reasonable argument about harm with respect to the claim against Mr. Christensen." (Trial Tr. (dkt. #264) 119.) In response, his counsel argued that this "is still is a close call and I think it's one for the jury," noting that the injury element relates to the issue of consent. (*Id.* at 123.) As a compromise, the court opted to remove the element from the first phase of trial, and include the requirement in the second phase should the jury answer the other liability special verdict questions in plaintiffs' favor.

---

[3] Defendants' reference to one of the victims having engaged in "voluntary" sexual acts with Christensen after being released from jail as evidence that the contacts between that victim and Christensen while she was an inmate and he a jailer fails to acknowledge what both their testimony proved was by then a complicated relationship at best, and at worst a twisted one. Regardless, the jury had ample evidence to weigh the importance of these later encounters on whether Christensen knew of the risk of harm his actions as jailer were having on his victims.

(*Id.*)  Neither party objected to the court's decision to move this injury element to the second phase of trial.

After considering the jury's verdict on the first phase of trial and the trial plan for the second phase of trial, the court directly asked whether *either* defendant was planning on pursuing an argument based on a lack of injury or harm:

> THE COURT: . . . And that brings me to my second concern and that is I just want to confirm, is the County going to actually argue that there was no harm here by Mr. Christensen's conduct?
>
> MR. CRANLEY [Counsel for County]: I don't think so, no.
>
> THE COURT: Is that really something you want to argue to this jury at this stage?
>
> MS. MILLS [Counsel for Christensen]: No, Your Honor.
>
> THE COURT: All right.  So I'm not going to give the harm instruction.  It just seems pointless.  And I appreciate the defense counsels' candor.  By virtue of their verdict it's clear they found harm, even though that was not expressly asked as to the constitutional claim against Mr. Christensen, which brings me then to the two instructions.

(Trial Tr. ('428 dkt. #265) 10-11.)

In short, *neither* defendant preserved an objection to the removal of the injury element from the jury instructions in the first phase of the trial, nor to the court's ultimate removal of that element from the second phase, and for an obvious reason:  there was never any real argument that the victims here were injured by Christensen's sexual assaults or by the County's deliberate indifference to their substantial risk of harm, assuming the jury found that both the assaults and the indifference had been proven.  Moreover, defendants' counsel were savvy enough to realize that arguing otherwise might so inflame the jury that

is could impact the size of its damage award. Regardless, defendants both consented to the court's proposal to move the injury element in the claims against them to the second phase of trial and to the ultimate decision to take that issue away from the jury altogether.[4]

### D. PREA Focus

As it did in its summary judgment and other pretrial submissions, the County again challenges the court's treatment of the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq*. While there is no private right of action under PREA, as the court explained in its opinion and order denying defendant's motion in limine, "PREA is still relevant in establishing a recognized standard for the prevention of sexual assaults in the correctional setting, or at least plaintiffs are free to provide expert testimony to that effect and so argue." (1/20/17 Op. & Order (dkt. #210) 19.) In so ruling, moreover, the court expressly invited the County to offer a jury instruction "explaining what PREA is, that it is not mandatory and that a violation of PREA is not sufficient to prove liability against the County, as well as the possible relevance of PREA standards to the issues before them." (*Id.*) Consistent with this ruling, the court ultimately instructed the jury:

> Finally, you have heard evidence about whether the County's conduct was consistent with various standards including Wisconsin Regulations of County Jails and the Prison Rape Elimination Act or "PREA". While you may consider any of

---

[4] Even if the objection had been preserved, the court reasonably concluded that no reasonable jury could find that plaintiffs were not injured given plaintiffs' testimony about the harm caused by Christensen's actions, and the jury's earlier finding that Christensen and the County acted with deliberate indifference to the substantial risk of that harm as confirmed by the jury's sizable compensatory jury award, largely based on evidence of their own need for ongoing mental health treatment. *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("Sexual offenses forcible or not are unlikely to cause so little harm as to be adjudged de minimis, that is, too trivial to justify the provision of a legal remedy. They tend rather to cause significant distress and often lasting psychological harm.").

these standards in your deliberations, keep in mind that the question you are being asked to decide is whether the County was deliberately indifferent to plaintiffs' constitutional rights, not whether the County failed to comply with Wisconsin regulations, PREA or any other set of standards. In particular, PREA standards, adopted in 2012, are not mandatory for county jails, nor is the failure to comply by itself a basis to find the County liable.

(Trial Tr. (dkt. #259) 19-20.) The court sees no error in the instruction or in the jury's possible consideration of the County's failure to embrace PREA in the face of known risks in deciding whether it acted with deliberate indifference to plaintiffs' constitutional rights, any more than there was error in allowing the County to argue that its reliance on compliance with other Wisconsin County standards or initial, statewide training of jailers undermined plaintiffs' claims that the County's administrators acted with deliberate indifference of the risk of rogue jailers to inmate's under their supervision.

### E. Jorgenson Evidence

The County next contends that the court erred in allowing testimony and other evidence of alleged sexual misconduct by another officer Art Jorgenson. While the court agreed with the County that there was insufficient evidence of a pattern of constitutional violations -- and the court removed that language from the notice instruction as described above (*see infra* Opinion § II.A) -- evidence of Jorgenson's misconduct (coupled with other evidence of the use of sexually explicit language on the part of officers and other jail personnel with and about inmates) was nonetheless relevant to whether the risk of substantial harm was so obvious as to place the County on notice for purposes of plaintiffs' *Monell* claim, or at least a reasonable jury could so find. Contrary to the County's

argument, Jorgenson need not have engaged in the *same* conduct as Christensen for this evidence to be relevant. Specifically, evidence that he touched inmates in a sexual nature, including touching an inmate on the bottom, was relevant to whether there was a sexualized culture in the jail, as well as the larger question of the County's awareness of a substantial risk of harm. Finally, even if this evidence was somehow *unfairly* prejudicial, the County has not articulated -- and the court cannot find -- a reason to hold that the probative value of Jorgenson's past misconduct is "substantially outweighed" by unfair prejudice as required for exclusion under Federal Rule of Evidence 403. *See United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) ("Recognizing that most relevant evidence is, by its very nature, prejudicial, we have emphasized that evidence must be unfairly prejudicial to require exclusion." (internal citations and quotation marks omitted)).

## III.  DAMAGE CHALLENGES

### A. Compensatory Award

Defendants raise two challenges with respect to the jury's award of compensatory damages. *First*, the County contends that the court erred in not posing two special verdict questions on compensatory damages and not requiring some sort of allocation of damages between Christensen and the County. As the court previously explained, this challenge flies in the face of the Seventh Circuit's guidance in *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010). (*See* Trial Tr. (dkt. #266) 17-20.) In *Thomas*, the court found error with a special verdict form that asked the jury to "enter damages for both denial of medical care (against the individual defendants) and policy and practice

(against the County and the Sheriff), both of which resulted in the same injury." *Id.* at 311. As the *Thomas* court explained, "because the defendants were jointly and severally liable, [] allocating damages between the parties for the single indivisible injury alleged in this case was improper." *Id.* (citing *Transcraft, Inc. v. Galvin, Stalmack, Kirschner & Clark*, 39 F.3d 812, 821 (7th Cir.1994). The County's attempt to distinguish its request from that at issue in *Thomas* is entirely unpersuasive. Here, the County sought a special verdict form asking for separate damages awards for the *same* injury, just as in *Thomas*. Having failed both at trial and in its post-trial submissions to point to any evidence that would differentiate injuries caused by Christensen with those caused by the County's failure to stop them, the County's request for the submission of a special verdict form asking for separate compensation damage awards against each defendant has no more merit than it did at trial.

*Second*, Christensen argues that the award of identical compensatory damages to each plaintiff "lack a rational relationship with the evidence contained in the record." (Christensen's Opening Br. (dkt. #273) 21.) In support of this argument, Christensen directs the court to *Cygnar v. City of Chicago*, 865 F.2d 827, 848 (7th Cir. 1989), in which the Seventh Circuit affirmed the district court's award of a new trial on the issue of damages with the option of remittitur, finding that the compensatory damages award did not bear a "reasonable relation to actual injury sustained." *Id.* at 848. In *Cygnar*, as here, the jury awarded the same amount of compensatory damages to each of the plaintiffs, but the Seventh Circuit did not rely on that fact in granting a new trial. Rather, as the district court explained, the "sharp variances among [the plaintiffs] in any asserted economic

harm" suggests the jury awarded the same damages because the "entire award must have been based on 'intangible' harm." *Id.* In other words, as the Seventh Circuit agreed, there was nothing inherently suspect about the jury's award of the same damages amount to each of the plaintiffs.

Still, Christensen presses that "[b]ecause the amount awarded to each Plaintiff as compensatory damages is identical, despite the distinct and unique facts each Plaintiff's claim and alleged damages," identical awards here lack a rational explanation. (Christensen's Opening Br. (dkt. #273) 21.) While Christensen provides a meandering and lengthy overview of each plaintiffs' testimony of their personal history, defendant fails to explain why those differences would necessarily translate into different damages awards. Indeed, the plaintiffs' own testimony and that of their expert provides a legally sufficient evidentiary basis for the jury's identical awards, and like the plaintiffs in *Cygnar*, is best explained by the jury having to undertake the difficult task of assigning a monetary value to psychological damages that, as was testified, will likely require both plaintiffs to undergo years of mental health therapy. As such, the court rejects this basis for a new trial as well.

### B. Punitive Award

The jury similarly awarded both plaintiffs punitive damages against defendant Christensen on the basis that the evidence does not support a finding of an "evil motive," and the awards lack a "reasonable relationship" to the harm suffered. (Christensen's Opening Br. (dkt. #273) 23-29.) As for the *first* argument, there was more than ample evidence to find an evil intent and motive on Christensen's part, but such a finding is not

required for an award of punitive damages.  Rather, as the jury was instructed, a finding of "reckless disregard of plaintiff's rights" forms a sufficient basis for an award:

> You may assess punitive damages only if you find that his conduct was malicious or in reckless disregard of plaintiff's rights.  Conduct is malicious if it is accompanied by ill or spite, or is done for the purpose of injuring plaintiff.  Conduct is in reckless disregard of plaintiff's rights if, under the circumstances, it reflects complete indifference to plaintiff's safety or rights.

(Damages Instr. (dkt. #248) 2.)  *See also Erwin v. Cty. of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989) ("A jury may award punitive damages against persons in § 1983 actions when it finds conduct motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others." (citing *Smith v. Wade*, 461 U.S. 30, 45–49 (1983)).

Here, the same evidence supporting the jury's finding of deliberate indifference on the part of Christensen provides ample support for a finding of reckless disregard of plaintiffs' rights.  In fact, the evidence was overwhelming that Christensen took advantage of his disproportionate position of power as a jailer and plaintiffs' position as prisoners to sexually assault them for his own gratification.  A reasonable jury could -- and, indeed, did -- credit plaintiffs' testimony that they neither consented nor otherwise welcomed Christensen's sexual conduct.  As such, the court finds a legally sufficient evidentiary basis for the jury's decision to award punitive damages.

Christensen's *second* challenge has even less merit.  In reviewing the reasonableness of the amount of the punitive damages award, the court is directed to consider the following three guideposts:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). As described above, a reasonable jury could find that Christensen's conduct was exceptionally reprehensible, having engaged in repeated sexual assaults of plaintiffs over a significant period of time, without any apparent recognition of the power dynamic at play or their lack of consent, all for his own personal gratification.

As for the second guidepost, the ratio between the punitive damages award and the compensatory damages award is less than 2 to 1. While "few awards exceeding a single-digit ration between punitive and compensatory damages will satisfy due process," *State Farm*, 538 U.S. at 425, the 2:1 ratio here certainly supports a finding of a reasonable relationship between the punitive and compensatory awards. *See BMW*, 517 U.S. at 581 ("[E]ven though a punitive damages award of more than 4 times the amount of compensatory damages might be close to the line, it did not cross the line into the area of constitutional impropriety.") (internal citations and quotation marks omitted).

Finally, with respect to the third guidepost -- considering awards in similar cases -- Christensen fails to direct the court to *any* cases reflecting punitive damages award significantly less than that awarded here. The court's own review reveals that the award is at least *comparable* to those recently awarded by a jury in a similar sexual assault cases under § 1983. *See Martin v. Cty. of Milwaukee*, No. 14-CV-200-JPS, 2017 WL 4326512, at *4

(E.D. Wis. Sept. 28, 2017) (denying defendant's Rule 59 motion challenging punitive damages of $5 million).  Accordingly, the jury's awards were reasonable and comport with due process requirements.

## IV. Award of Attorneys' Fees and Costs

Finally, following the jury's verdict in plaintiffs' favor, the court directed plaintiffs' counsel to submit its request for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), which they did.  Plaintiffs seek reimbursement of actual fees totaling $470,695.00 and costs totaling $69,127.62.   (Bannink Decl. (dkt. #261) ¶¶ 6, 7.) Plaintiffs' request is well-documented.  The submitted time entries are detailed and reflect reasonable amounts of time for case-related activities.  (*Id.*, Ex. C (dkt. #261-3).  Moreover, the hourly rates reflect counsel's market rates, ranging from $100 to $325, and also appear to be reasonable.  (*Id.*, Exs. F, G (dkt. ##261-6, 261-7).)  Plaintiffs' costs are also all related to these cases and again appear reasonable.  (*Id.*, Ex. D (dkt. #261-4).)  While the court invited defendants' response to plaintiffs' counsel's request (2/3/17 Order (dkt. #249)), neither defendants submitted a response, apparently conceding the reasonableness of plaintiffs' requests.  For all these reasons, the court will award plaintiffs attorneys' fees and costs in the amount of $539,822.62.

ORDER

IS IT ORDERED that:

1) Defendant Polk County's motion for judgment as a matter of law on plaintiffs' state law negligence claim on basis of governmental immunity ('428 dkt. #245;

'433 dkt. #246) is GRANTED.  Judgment is entered in Polk County's favor on plaintiffs' state law negligence claims.

2) Defendant Polk County's motion for judgment as a matter of law or in the alternative for a new trial ('428 dkt. #268; '433 dkt. #269) is DENIED.

3) Defendant Darryl L. Christensen's motion for new trial ('428 dkt. #272; '433 dkt. #273) is DENIED.

4) Plaintiffs are awarded collectively $539,822.62 in total attorneys' fees and costs for both cases pursuant to 42 U.S.C. § 1988(b) to be allocated equitably as plaintiffs and their counsel shall agree.

5) The clerk of court is directed to enter judgments in each case consistent with this order and the jury's verdicts.

Entered this 5th day of February, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge